

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2017 DEC 19  PM 4: 33**

CLERK

BY_____
DEPUTY CLERK

---

MIGRANT JUSTICE and MATT
CAMERON,

               *Plaintiffs,*

      v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, UNITED
STATES CUSTOMS AND BORDER
PROTECTION, and UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

              *Defendants.*

No. 2:17-cv-197

**AMENDED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF FOR
VIOLATION OF THE
FREEDOM OF INFORMATION
ACT, 5 U.S.C. § 552 et seq.**

## INTRODUCTION

    1.    Plaintiffs seek to enhance the public understanding of the critical issues of First

Amendment rights to freedom of speech and association, and whether federal government

agencies are infringing on the exercise of those rights.

    2.    Migrant Justice is a community-based non-profit organization of Vermont dairy

farmworkers and their families that organizes to protect dairy workers' civil, labor, and human

rights.  Vermont dairy workers, a mostly immigrant workforce, routinely face substandard labor

and housing conditions; geographic, linguistic, and cultural isolation; sixty to eighty hour

workweeks; and extremely low pay as the most exploitable rung of a complex supply chain.

    3.    In recent years, Migrant Justice and its members have engaged in high profile

campaigns to defend the rights of immigrant workers, to hold immigration enforcement agencies

accountable, and to advocate for more humane immigration policies.  Migrant Justice has been

honored with numerous awards for its work defending and advancing civil, labor, and human rights.

4.      Migrant Justice fears that its successes in defending human, labor, and civil rights have made the organization and its members targets of retaliation and this apparent retaliation has in turn interfered with and chilled members' rights to associate with the organization and speak publicly on the issues for which it advocates.  Members worry that exercising their First Amendment rights by coming to Migrant Justice meetings or speaking out will incur unwarranted attention from immigration enforcement agencies.

5.      Since April 2016, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") have arrested several Migrant Justice members.  The timing and place of these arrests, comments made by immigration officers during the arrests, and other actions by immigration enforcement agencies have led the organization to suspect ongoing interference with its activities and that the arrests are retaliatory and have improperly targeted Migrant Justice and its members.

6.      On April 26, 2017, and July 17, 2017, Migrant Justice, in conjunction with the American Civil Liberties Union Foundation of Vermont ("ACLU-VT") and Matt Cameron, an attorney representing many of the arrested Migrant Justice members in their immigration proceedings (collectively, the "Requesters"), filed two Freedom of Information Act ("FOIA") requests (the "Requests"), 5 U.S.C. § 552, *et seq*., with ICE, CBP, and the U.S. Department of Homeland Security ("DHS") (collectively, "Defendants") seeking records concerning the seemingly retaliatory targeting, surveillance, and immigration enforcement against Migrant Justice members for exercise of their First Amendment rights by associating with Migrant Justice and/or advocating for workers' civil, labor, and human rights.  Specifically, the Requests seek information in possession of the Defendants related to: Migrant Justice and the Milk with

2

Dignity campaign; the Migrant Justice members arrested; communications between Defendants and Vermont state and local law enforcement about Migrant Justice, the Milk with Dignity campaign, and Migrant Justice members; communications between Defendants and Vermont dairy farms about Migrant Justice, the Milk with Dignity campaign, and Migrant Justice members; and communications related to the Requests themselves.

7.      Defendants have constructively or improperly denied Plaintiffs' Requests and Plaintiffs are entitled to immediate processing of the Requests and timely release of records.

8.      Consequently, Plaintiffs file this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, for declaratory, injunctive, and other appropriate relief to compel the release of agency records requested by Plaintiffs from Defendants DHS, CBP, and ICE.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331; 5 U.S.C. § 552(a)(4)(A)(vii), (4)(B), and (6)(E)(iii); and 5 U.S.C. §§ 701-706.

10.     Venue is proper within this judicial district because Plaintiff Migrant Justice resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. §§ 1391(e) and 1402(a).

## PARTIES

11.     Plaintiff Migrant Justice is a community-based membership organization of Vermont dairy farm workers and their families that organizes to protect dairy workers' civil, labor, and human rights.  Founded in 2009 in the wake of the death of a young dairy worker, Migrant Justice is led by migrant farmworkers and their families.  Through monthly assemblies and other processes, members set priorities for the organization and design campaigns.  Over the last few years, Migrant Justice has engaged in several high profile public campaigns around

3

immigrants' rights, including access to driver's licenses for all Vermont residents[1] and for

policies limiting police interaction with immigration enforcement,[2] and the Milk with Dignity

campaign to implement human rights standards in the dairy industry.[3]  Migrant Justice has also

engaged in high profile work to support members arrested by Defendants,[4] around immigration

policy,[5] and to expose ICE and CBP abuses of civil and human rights.[6]  Plaintiffs, along with the

ACLU-VT, filed two FOIA requests with each of the Defendants seeking records related to

Migrant Justice and to immigration enforcement actions taken against members of Migrant

Justice.

      12.    Plaintiff Matt Cameron is an immigration attorney practicing in Boston,

---

[1] *See, e.g.*, Nat Rudarakanchana, Few obstacles seen to allowing migrant workers to have driver's licenses, VT Digger (Oct. 4, 2012), https://vtdigger.org/2012/10/04/few-obstacles-seen-to-allowing-migrant-workers-to-have-drivers-licenses/#WbjSaiiGOUk; Kathryn Flagg, With Promise of Driver's Licenses, Migrant Farmworkers Hope for the Best, Seven Days (June 5, 2013), https://www.sevendaysvt.com/OffMessage/archives/2013/06/05/with-promise-of-drivers-licenses-migrant-farmworkers-hope-for-the-best.
[2] *See, e.g.*, Morgan True, Discrimination case highlights police bias toward immigrants, advocates say, VT Digger (Dec. 18, 2015), https://vtdigger.org/2015/12/18/discrimination-case-highlights-police-bias-toward-immigrants-advocates-say/#.WbjUzyiGOUk.
[3] *See, e.g.*, Milk with Dignity, Migrant Justice, https://migrantjustice.net/milk-with-dignity (last visited Sept. 13, 2017); Sarah Olsen, Ben & Jerry's agrees to negotiate 'Milk With Dignity' agreement, VT Digger (June 21, 2015), https://vtdigger.org/2015/06/21/ben-jerrys-agrees-to-negotiate-milk-with-dignity-agreement/#.WbjVyyiGOUk.
[4] *See, e.g.*, Protesters Decry Farmworkers' Arrest after Ben & Jerry's March, Burlington Free Press (June 19, 2017), http://www.burlingtonfreepress.com/story/news/local/vermont/2017/06/19/border-patrol-arrests-2-immigrants-east-franklin/408333001/; Elizabeth Murray & Dan D'Ambrosio, Released Migrant Justice Organizers Speak out at BTV Rally, Burlington Free Press (Mar. 28, 2017), http://www.burlingtonfreepress.com/story/news/local/2017/03/28/aclu-ice-arrests-jeff-sessions-defunding-threats-migrant-justice-rally-burlington/99704610/; Abby Isaacs, Hundreds March against Recent Immigration Arrests, NBC5 (Mar. 18, 2017), http://www.mynbc5.com/article/hundreds-march-against-recent-immigration-arrests/9152152; Alexandra Leslie, Supporters March to Get Migrant Justice Leader Released, My Champlain Valley (Oct. 1, 2016), http://www.mychamplainvalley.com/news/supporters-march-to-get-migrant-justice-leader-released/590642037; Megan Carpenter, Rallies Continue Against Deporting Victor Diaz, My Champlain Valley (May 1, 2016), http://www.mychamplainvalley.com/news/rallies-continue-against-deporting-victor-diaz/445732123.
[5] *See, e.g.*, Jess Aloe, Vermont Cities Wrestle with Sanctuary State Rules, Burlington Free Press (Dec. 18, 2016), http://www.burlingtonfreepress.com/story/news/2016/12/18/vermont-cities-wrestle-sanctuary-state-rules/95337958/; Steve Zind, New Policy Helps Clarify Police Role In Immigration Enforcement, Vermont Public Radio (June 17, 2016), http://digital.vpr.net/post/new-policy-helps-clarify-police-role-immigration-enforcement#stream/0; Laura Krantz, Lawmakers Share Personal Stories in Debate over Bias-Free Policing, VT Digger (May 1, 2014), https://vtdigger.org/2014/05/01/lawmakers-share-personal-stories-debate-bias-free-policing/#.WcFdz9OGNBw.
[6] *See, e.g.*, Sam Knight, In Trump Era, a Pattern of Deportation as Retaliation Is Emerging, District Sentinel (Mar. 22, 2017), http://www.truth-out.org/news/item/39937-pattern-of-deportation-as-retaliation-emerging-in-trump-era; Katie Jickling, Vermont's Congressional Delegation Joins the Criticism of ICE Arrests, Seven Days (Mar. 20, 2017), https://www.sevendaysvt.com/OffMessage/archives/2017/03/20/vermont-congressional-delegation-joins-the-criticism-of-ice-arrests.

Massachusetts and represents six of the Migrant Justice members mentioned in the FOIA Requests. His representation of these individuals is pro bono.

13.     Defendant DHS is a Department in the Executive Branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). Defendant DHS is tasked with overseeing, *inter alia*, immigration enforcement, border security, and immigration and citizenship benefits.

14.     Defendant ICE is a component of DHS that enforces immigration and customs laws, is involved in the detention and removal of immigrants, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

15.     Defendant CBP is a component of DHS tasked with managing the U.S. border, protecting the border, and facilitating lawful international travel and trade, and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### Targeted Immigration Arrests of Migrant Justice Members

16.     Since April 2016, DHS components, including ICE and CBP, have arrested at least seven prominent Migrant Justice members in what appears to be retaliation for their outspoken advocacy of workers' civil, labor, and human rights, and their association with Migrant Justice.

17.     On April 21, 2016, ICE arrested Jose Victor Garcia Diaz outside a Mexican cultural event in Stowe, Vermont. Mr. Garcia Diaz is a public spokesperson for Migrant Justice's Milk with Dignity campaign. The day before his arrest, he had returned from a gathering of the Food Chain Workers Alliance in Los Angeles, California. Mr. Garcia Diaz represented Vermont farmworkers at the meeting in an effort to build a unified movement for respect for human rights in food supply chains. His immigration removal proceedings are ongoing.

18.     On September 22, 2016, ICE arrested Miguel Alfredo Alcudia Gamas. Mr.

5

Alcudia Gamas is also a public spokesperson for Migrant Justice's Milk with Dignity campaign. When ICE arrested Mr. Alcudia Gamas, ICE officers made statements implying that they were targeting a fellow Migrant Justice leader, Jose Enrique Balcazar Sanchez. His immigration removal proceedings are ongoing.

19.    On March 15, 2017, ICE arrested Cesar Alexis Carrillo Sanchez on his way to a court proceeding at which a pending criminal charge was to be, and ultimately was, dismissed.

20.    On March 17, 2017, the day after Migrant Justice announced an escalation of its Milk with Dignity campaign with respect to Ben & Jerry's, ICE arrested Jose Enrique Balcazar Sanchez shortly after he left a meeting at Migrant Justice's office. Mr. Balcazar Sanchez is one of the principal architects of the Milk with Dignity campaign. He has been a very visible representative of Migrant Justice and publicly promoted policies to limit ICE's entanglement with local law enforcement. Over the past few years, Mr. Balcazar Sanchez has served as one of Migrant Justice's primary spokespeople in its campaigns for driver's licenses and for a fair and impartial policing policy. He served on a task force established to advise the Vermont Attorney General on immigration issues,[7] which resulted in guidance for Vermont cities and towns to limit their role in immigration law enforcement.[8]  His immigration removal proceedings are ongoing.

21.    On March 17, 2017, ICE also arrested Zully Victoria Palacios Rodriguez, who was a passenger in Mr. Balcazar Sanchez's car. Ms. Palacios Rodriguez is a key Migrant Justice organizer. Just prior to her arrest, she had also just left Migrant Justice's offices. Her immigration removal proceedings are ongoing.

---

[7] *See* Pat Bradley, Task Force Appointed by Vermont AG to Assess Immigration Issues and State Powers, WAMC (Jan. 27, 2017), http://wamc.org/post/task-force-appointed-vermont-ag-assess-immigration-issues-and-state-powers.
[8] Thomas J. Donovan Jr., Vermont Attorney General, Guidance to Vermont Cities & Towns Regarding Immigration Enforcement, March 2017,
http://ago.vermont.gov/assets/files/Consumer/Guidance%20to%20VT%20Cities%20and%20Towns%20re%20Immigration%20Enforcement.pdf.

6

22.     On June 17, 2017, CBP arrested Yesenia Hernandez Ramos and Esau Peche
Ventura.  Ms. Hernandez Ramos and Mr. Peche Ventura had participated in a march for the Milk
with Dignity campaign earlier in the day.  Each of their immigration removal proceedings are
ongoing.

23.     Each individual named in paragraphs 17 through 24 22 were members of Migrant
Justice at the time of their arrest.

24.     Migrant Justice is concerned that these arrests are a part of Defendants' efforts to
target Migrant Justice members for their association with the organization and activities speaking
and organizing for the civil, labor, and human rights of dairy workers and their families.  The
apparent targeting of Migrant Justice and its members has chilled and deterred members'
participation and association with Migrant Justice.  Migrant Justice saw significant fear among
workers of being associated with the organization and of DHS and its sub-components seeing
workers meeting with Migrant Justice representatives.  After the arrests, the organization fears
that people who need assistance may no longer be calling the organization out of fear that being
associated with it will put them at risk for immigration enforcement.

### Plaintiffs' FOIA Requests

*The April FOIA Request*

25.     On April 26, 2017, the Requesters sent their first FOIA Request ("April FOIA
Request") to DHS, CBP, and ICE pursuant to 5 U.S.C. § 552, *et seq.  See* **Exhibit A** (privacy
waivers excluded).

26.     Plaintiffs' April FOIA Request seeks Records from April 1, 2015, until the time
that a responsive Records search is conducted, pertaining to DHS and its components'
immigration enforcement actions in the state of Vermont including, in summary: records relating
to Migrant Justice or the Milk with Dignity Campaign; records relating to a named list of specific

individuals affiliated with Migrant Justice or their attorney; records relating to communications between Vermont state or local law enforcement and Defendants regarding immigration enforcement and the named individuals; records relating to communications between Vermont dairy farms and other agricultural operations and Defendants referring to immigration enforcement; records containing a list of key terms, such as "organizer," "farmworker," and "dairy"; and records related to the processing of the April FOIA Request.

27.     Plaintiffs' April FOIA Request seeks expedited processing under 5 U.S.C. § 522(a)(6)(E)(i) and 6 C.F.R. § 5.5(e)(1)(i)-(ii),[9] which provide for expediting processing of requests for records in cases where a compelling need exists.

28.     Requesters Migrant Justice and the ACLU-VT are primarily engaged in disseminating information. Expedited processing is appropriate because Plaintiffs' need for the requested information is compelling and urgent due to the risk that Defendants may continue to undertake enforcement actions targeting individuals in Vermont based on the exercise of their First Amendment rights. Additionally, six of the Migrant Justice members listed in the Requests face ongoing immigration removal proceedings and risk imminent deportation. Any information about their targeting and arrests is needed to prepare for their defense and to permit them to fully exercise their due process rights in Immigration Court.

29.     The public has an urgent interest in protecting First Amendment rights to freedom of speech and association and in understanding Defendants' immigration enforcement actions, particularly the targeting of individuals associated with organizations that protect immigrant rights or who exercise their rights to speak out. Information regarding retaliatory targeting for immigration enforcement based on First Amendment activity is crucial for public debate.

---

[9] The April FOIA Request's citation to 6 C.F.R. § 5.5(d)(1)(i)-(ii) was a typo.  The correct citation, to which the April FOIA Request referred in substance, is to 6 C.F.R. § 5.5(e)(1)(i)-(ii).

30.     Plaintiffs' April FOIA Request also seeks a fee waiver and a waiver of processing (search and review) fees on the grounds that disclosure of the records is in the public interest because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the Requesters' commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(iii); 6 C.F.R. § 5.11(d)(1), (k)(1), (k)(2).  Migrant Justice and the ACLU-VT are non-profit entities and have no commercial interest in the records requested, which are crucial to the public's understanding of Defendants' operations.  Migrant Justice and the ACLU-VT also qualify for a fee waiver as representatives of the news media.

*The July FOIA Request*

31.     On July 17, 2017, Requesters sent their second FOIA Request (the "July FOIA Request") to DHS, CBP, and ICE pursuant to 5 U.S.C. § 552, *et seq*.  *See* **Exhibit B** (privacy waivers excluded).

32.     Plaintiffs' July FOIA Request seeks records pertaining to DHS and its components' immigration enforcement actions in the state of Vermont including, in summary: records relating to three additional Migrant Justice members who have been arrested; records relating to Migrant Justice or the Milk with Dignity Campaign from September 1, 2011, through December 31, 2011, and from January 1, 2015, through March 31, 2015; and records relating to the processing of the July FOIA Request.

33.     As with the April FOIA Request, Requesters seek expedited processing of their request pursuant to 5 U.S.C. § 522(a)(6)(E)(i); 6 C.F.R. § 5.5(e)(1)(i)-(ii); and request that Defendants waive or reduce the fees charged, 5 U.S.C. § 552(a)(4)(A)(ii)-(iii); 6 C.F.R. § 5.11(d)(1), (k)(1), (k)(2).  Requesters sought expedited processing and a fee waiver on the same grounds as cited above in paragraphs 27-30.  For the same reasons described above, expedited processing and a fee waiver are similarly appropriate for the July FOIA Request.

**Agency Responses**

34.     On April 26, 2017, Requesters sent the April FOIA Request via certified U.S. mail to Defendants DHS, ICE, and CBP, and through electronic mail to DHS and ICE.  On July 17, 2017, Requesters sent their July FOIA Request to the same Defendants through the same means.

35.     Each Defendant was required to make a determination on the request for expedited processing within ten days of receiving each of Plaintiffs' Requests.  *See* 5 U.S.C. § 552(a)(6)(E)(ii).

36.     Each Defendant was required to respond in writing within 20 business days after receiving each FOIA request and notify Requesters whether or not the Defendant intended to comply with the request, 5 U.S.C. § 552(a)(6)(A)(i), or, in "unusual circumstances," could extend the time for making such a determination by up to ten working days, 5 U.S.C. § 552(a)(6)(B).

37.     Each Defendant has failed to timely respond to Plaintiffs' April FOIA Request and/or July FOIA Request.  Defendants have also constructively or improperly denied Plaintiffs' requests for expedited processing and fee waivers.

*Department of Homeland Security*

38.     The post office verification shows delivery of the mailed copy of the April FOIA Request to the DHS mail room on May 1, 2017.  *See* **Exhibit C at 1-2.**

39.     As of the date of this Complaint, Requesters have not received any acknowledgment or response from DHS regarding the April FOIA Request, including the requests for expedited processing and for a fee waiver.

40.     The post office verification shows delivery of the mailed copy of the July FOIA Request to the DHS mail room on July 21, 2017.  *See* **Exhibit D at 1-2.**

41.     On July 27, 2017, Requesters received a letter acknowledging the July FOIA

Request from DHS via electronic mail. *See* **Exhibit D at 3-4.** The July FOIA Request was assigned Reference Number 2017-HQFO-01065.

42.     In its letter, DHS stated that it had "determined that your request is too broad in scope or did not specifically identify the records which you are seeking . . . . Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the DHS component or office you believe created and/or controls the record" (emphasis in original).

43.     DHS asked that Requesters resubmit their request "containing a reasonable description of the records you are seeking." DHS advised Requesters that their request would be administratively closed if they did not respond to DHS within 30 days.

44.     On August 10, 2017, Requesters timely sent their response to DHS's request for clarification by email and certified U.S. mail. *See* **Exhibit D at 5-7.** Requesters noted that the request reasonably described the records sought, but nevertheless limited the first item—records regarding two particular Migrant Justice members—to records between January 1, 2015, through the time DHS conducts an adequate search. Requesters also clarified that, because they had sent identical FOIA requests to CBP and ICE, they were not requesting that DHS conduct a duplicative query of those components and instead were requesting that DHS search for responsive records that were in the custody or control of, or were sent or received by, individuals at the Department level.

45.     On August 14, 2017, Requesters received an email from DHS stating that DHS does "not have a central index to search for names here at HQ only the component offices have databases, including I & A." *See* **Exhibit D at 8-9**.

46.     On August 22, 2017, Requesters received an additional letter by email from DHS reiterating that DHS does not maintain a central index of records about individuals and asking

11

Requesters to resubmit the request with a reasonable description of the records sought. *See* **Exhibit D at 10-12**. DHS stated that "[t]his is not a denial of your request" and noted that upon receipt of a "perfected request," Requesters would be advised of the status.

47.      On September 14, Requesters responded by email to DHS correcting what they believed to be misapprehensions about the July FOIA Request and stating that they believed that the July FOIA Request reasonably described the records sought and that they considered the July FOIA Request to have been perfected, at the latest, by August 10, 2017. *See* **Exhibit D at 13-15.**

48.      On September 18, 2017, Maura Busch, Government Information Specialist in the DHS Privacy Office, confirmed receipt of this clarification by email and requested a telephone conversation about the July FOIA Request. *See* **Exhibit D at 16-17.**

49.      Ms. Busch and counsel for the Requestors spoke by telephone on September 19, 2017. Ms. Busch stated that DHS needed to know which offices or individuals at Headquarters would be most likely to have responsive records and that she would send a sample request showing how such a search could be constructed.

50.      On September 20, 2017, Requesters received an electronic message from Ms. Busch stating, "Until I speak with our FOIA counterparts regarding your request for information cited in **item two** of your request, it is premature to draft any sort of CIO email search," and "I reached out to ICE and our CRCL office today to find out if they are aware of any offices **here at HQ** had any involvement with that group or that campaign referenced in your request (the dates go back to 2011 and 2015) as well as whether any civil rights **complaints** were filed with the CRCL Compliance Office." *See* **Exhibit D at 18-20.**

51.      On September 21, 2017, Requesters received an electronic message from Ms. Busch with a description of a request for records regarding ICE enforcement activities from a different requester. *See* **Exhibit D at 21.**

52.     On September 28, 2017, Requesters received a final response from DHS denying

the July FOIA Request.  In its denial letter, DHS stated that it conducted a search of files in the

Office of Civil Rights and Civil Liberties and a search of the Enterprise Correspondence

Tracking system and did not locate any responsive records.  *See* **Exhibit D at 22-24.**

53.     On October 6, 2017, Requesters filed an administrative appeal of this final

response, contesting the adequacy of DHS's search and its failure to respond to the requests for

expedited processing and a fee waiver.  *See* **Exhibit D, at 25-28** (exhibits excluded).  The post

office verification shows delivery of the appeal to the DHS mailroom on October 16, 2017.  *See*

**Exhibit D, at 29-30**.

54.     As of the date of this complaint, DHS has not responded to Requesters' appeal.

*Immigration and Customs Enforcement*

55.     On April 26, 2017, Requesters received an automated electronic response from

ICE indicating that ICE had received the emailed April FOIA Request that same day.  *See*

**Exhibit E at 1**.

56.     On April 27, 2017, Requesters received an acknowledgement email from ICE.

*See* **Exhibit E at 2-3**.  The April FOIA Request was assigned Case Number 2017-ICFO-25680.

57.     In its acknowledgement letter, ICE denied Requesters' expedited processing and

fee waiver requests.

58.     In denying Requesters' expedited processing request, ICE included no findings

but instead recited the requirements for granting expedited processing and labeled the request

"conclusory."

59.     This denial appears to have been issued without review of the relevant facts and

legal authority supporting the request for expedited processing.  The denial letter includes the

instruction "ADD ONE OF THE FOLLOWING REASONS" (bold and underline omitted)

13

followed by two paragraphs between which the reviewer was seemingly supposed to choose. Instead, the reviewer left the instruction and both largely repetitive paragraphs in the text.

60.     This denial also mistakenly stated that the purpose of the FOIA request was to inform the public about "Vermont diary" [sic] or "Vermont dairy," rather than, as explicitly stated in the April FOIA Request, to inform the public about immigration enforcement actions that appear to be targeted retaliation against Migrant Justice members' advocacy for civil and human rights.

61.     In denying Requesters' fee waiver request, ICE recited the six requirements for granting a fee waiver and, without any explanation or additional analysis, labeled the request "deficient" for failing to satisfy three out of the six factors.

62.     The purportedly unsatisfied factors were whether: (1) "the contribution to public understanding of government operations or activities will be 'significant'"; (2) "the requester has a commercial interest that would be furthered by the requested disclosure"; and (3) "the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor."

63.     The fee waiver denial did not address Requesters' independent basis for a fee waiver or limitation as representatives of the news media.

64.     On May 23, 2017, Requesters timely sent a letter appealing ICE's denial of expedited processing and a fee waiver by certified U.S. mail. *See* **Exhibit E at 4-9**.

65.     The post office verification shows delivery of requesters' appeal to ICE's mail room on May 30, 2017. *See* **Exhibit E at 10-13**.

66.     In their appeal, Requesters challenged the denial of both expediting processing and the fee waiver.

67.     With regard to expedited processing, Requesters explained that ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals in Vermont based on their political beliefs and activities.  Additionally, six of the individuals listed in the FOIA requests face ongoing removal proceedings and the current risk of deportation, and information about their targeting and arrest is needed to prepare their defense and permit them to fully exercise their due process rights in Immigration Court.  ICE's actions in the state generally, and with respect to the targeted individuals in particular, are matters of critical importance to Vermonters.

68.     With regard to the fee waiver, Requesters explained how their analysis and dissemination of the records would "help the public understand the nature and extent of ICE immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws."  Requesters further explained that the requested disclosure would not further any commercial interest and so, by definition, is not primarily in their commercial interest.

69.     As of the date of this Complaint, ICE has not responded to Requesters' appeal.

70.     On June 8, 2017, Requesters received an email from ICE stating that it had "determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency."  *See* **Exhibit E at 14-15**.  ICE asked that Requesters resubmit their request "containing a reasonable description of the records you are seeking."

71.     ICE advised Requesters that their request would be administratively closed if they did not respond to ICE within ten days.

72.     Less than 10 days later, on June 16, 2017, Requesters sent a response to ICE indicating that they would respond to ICE's request for clarification within the 30 businesses

15

days required by 6 C.F.R. § 5.3(c) and that they expected their request would not be administratively closed before that time. *See* **Exhibit E at 16-17**.

73.     Requesters received an automated confirmation of ICE's receipt of the June 16 email that same day. *See* **Exhibit E at 18**.

74.     On June 23, 2017, Requesters sent their response to ICE's request for clarification by electronic mail. *See* **Exhibit E at 19-24**.

75.     Requesters noted that ICE's request for clarification failed to "inform the requester what additional information is needed or why the request is otherwise insufficient," as required by 6 C.F.R. § 5.3(b).

76.     Requesters nevertheless endeavored to provide additional clarification. In particular, Requesters withdrew Item #3 from the April FOIA Request; clarified that Items #4 and #5 sought records in the custody or control of, or sent or received by, ICE offices and/or ICE officials in the State of Vermont or in the ICE Enforcement and Removal Operations Boston field office; and withdrew certain terms from Item #5.

77.     Requesters received an automated confirmation of ICE's receipt of the June 23 email that same day. *See* **Exhibit E at 25**.

78.     As of the date of this Complaint, Requesters have received no further communication from ICE regarding their April FOIA Request.

79.     On July 17, 2017, Requesters received an automated electronic response from ICE indicating that ICE had received their emailed July FOIA Request. *See* **Exhibit F.**

80.     As of the date of this Complaint, ICE has not responded to the requests for expedited processing and for a fee waiver, nor has it responded substantively to the July FOIA Request.

*Customs and Border Patrol*

16

81.    The post office verification shows delivery of the April FOIA Request to the CBP Mail Room on May 1, 2017. *See* **Exhibit G at 1-2**.

82.    On May 5, 2017, Requesters received an electronic message confirming CBP's receipt of the April FOIA Request.  Their request was assigned Tracking Number CBP-2017-054785. *See* **Exhibit G at 3**.

83.    On September 11, 2017, Requesters received an electronic message stating that the request was reassigned Tracking Number CBP-OFO-2017-054785 and that such changes are "normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it." "OFO" stands for the CBP Office of Field Operations. *See* **Exhibit G at 4**.

84.    On September 27, 2017, Requesters received two electronic messages from the FOIA Officer for CBP in the Area Port of St. Albans, Vermont.  The first message requested clarification of various items and an explanation of "why you need information on" certain of the individual subjects of the April FOIA Request, and the second message requested Privacy Waivers for three individual subjects of that request. *See* **Exhibit G at 5-6.**

85.    On September 29, 2017, Requesters responded to CBP's message and provided the requested information. *See* **Exhibit G at 7-8.**

86.    As of the date of this Complaint, CBP has not responded to the requests for expedited processing and for a fee waiver, nor has it responded substantively to the April FOIA Request.

87.    The post office verification shows delivery of the July FOIA Request to the CBP mail room on July 21, 2017. *See* **Exhibit H at 1-2**.

88.    On August 2, 2017, Requesters received an electronic message confirming CBP's receipt of the July FOIA Request. *See* **Exhibit H at 3**.  This request was assigned Tracking

Number CBP-2017-077128.

89.     Later that same day, Requesters received a second electronic message stating CBP had changed the Tracking Number of the July FOIA Request to CBP-OIIL-2017-077128.  *See* **Exhibit H at 4**.  "OIIL" stands for CBP's Office of Intelligence and Investigative Liaison.

90.     Later still that same day, Requesters received a third electronic message from CBP acknowledging receipt of the July FOIA Request and indicating that "the average time to process a FOIA request related to 'travel/border incidents' is a minimum of 3-6 months."  *See* **Exhibit H at 5-7**.  In this message, CBP referred to, but did not expressly invoke, the statutory ten-day extension permitted in "unusual circumstances" by 5 U.S.C. § 552(a)(6)(B).

91.     On August 17, 2017, Requesters received an electronic message stating that CBP had changed the Tracking Number of the July FOIA Request back to CBP-2017-077128. *See* **Exhibit H at 8**.

92.     On September 19, 2017, Requesters received a final response from CBP via email stating that CBP had "conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request . . . . [and was] unable to locate or identify any responsive records, based upon the information you provided in your request."  In this message, CBP described the July FOIA Request as requesting only records related to Migrant Justice and the Milk with Dignity Campaign and made no mention of the requests for records related to three additional Migrant Justice members who had been arrested and records related to the processing of the July FOIA Request. *See* **Exhibit H at 9**.

93.     On October 6, 2017, Requesters filed an administrative appeal of this final response, contesting the adequacy of CBP's search, its failure to search for all items in the July FOIA Request, and its failure to respond to the requests for expedited processing and a fee waiver.  *See* **Exhibit H at 10-13** (exhibits excluded).  The post office verification shows delivery

18

of the appeal to the CBP mailroom on October 16, 2017. *See* **Exhibit H, at 14-15**.

94. As of the date of this Complaint, CBP has not responded to Requesters' appeal.

## FIRST CLAIM FOR RELIEF

### Violation of FOIA for Failure to Disclose and
### Release Records Responsive to Plaintiffs' Requests

95. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1

through 94 as if repeated and incorporated herein.

96. Defendants have unlawfully withheld records requested by Plaintiffs pursuant to 5

U.S.C. § 552.

97. Defendants were each obligated under 5 U.S.C. § 552(a)(3) to conduct a

reasonable search for records responsive to Plaintiffs' requests and to issue a determination

concerning Plaintiffs' requests within the time period set forth in 5 U.S.C. § 552(a)(6) – 20

working days, to be extended by no more than 10 working days in the event that the agency

finds the existence of "unusual circumstances." Plaintiffs' April FOIA Request to

Defendants CBP, ICE, and DHS and their July FOIA Request to Defendant ICE have been

pending for more than 20 days without response. Defendants DHS and CBP conducted

searches in response to Plaintiffs' July FOIA Request, but failed to adequately search for

responsive records.

98. By failing to conduct a reasonable search for records responsive to Plaintiffs'

FOIA requests detailed in paragraph 97 and to disclose responsive records, Defendants

violated 5 U.S.C. §§ 552(a)(3)(A), (a)(3)(C), and (a)(6)(A), as well as the regulations

promulgated thereunder.

99. Defendants failed to make a determination concerning Plaintiffs' April and July

Requests for documents within the statutory time period, which constitutes a constructive

denial of Plaintiffs' requests, or improperly denied Plaintiffs' requests.  Plaintiffs are deemed to have exhausted their administrative remedies with respect to each Defendant.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

100.   Defendants have violated FOIA by failing to produce any and all non-exempt records responsive to Plaintiff's April and July FOIA Requests within the 20-day time period set forth in 5 U.S.C. § 552(a)(6)(A)(i).

## SECOND CLAIM FOR RELIEF

### Defendants Improperly Denied or Have Not Responded to Plaintiffs' Requests for Expedited Processing

101.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 100 as if repeated and incorporated herein.

102.   Defendants DHS and CBP have not responded to Plaintiffs' request for expedited processing of the April FOIA Request.  Defendants have  not responded to or have constructively denied Plaintiffs' request for expedited processing of the July FOIA Request.

103.   Defendant ICE improperly denied Plaintiffs' request for expedited processing of the April FOIA Request.  Plaintiffs administratively appealed Defendant ICE's denial of their April request for expedited processing and Defendants DHS and CBP's failure to respond to their July request for expedited processing.

104.   Plaintiffs have exhausted their administrative remedies with respect to Defendants' expedited processing of the April and July FOIA Requests.

105.   Defendants have violated Plaintiffs' right to expedited processing under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations, 6 C.F.R. § 5.5(e) with respect to Plaintiffs' April and July FOIA Requests.

## THIRD CLAIM FOR RELIEF

### Defendants Improperly Denied or Have Not Responded to
### Plaintiffs' Request for a Fee Waiver

106.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 105 as if repeated and incorporated herein.

107.    Defendants DHS and CBP have not responded to Plaintiffs' request for a fee waiver for the April FOIA Request. Defendantshave not responded to or have constructively denied Plaintiffs' request for a fee waiver for the July FOIA Request.

108.    Defendant ICE improperly denied Plaintiffs' request for a fee waiver for the April FOIA Request. Plaintiffs administratively appealed Defendant ICE's denial of its April request for a fee waiver and Defendants' DHS and CBP's failure to respond to its July request for a fee waiver.

109.    Plaintiffs have exhausted their administrative remedies with respect to a fee waiver from Defendants.

110.    Defendants have violated Plaintiffs' right to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and Defendants' own regulations, 6 C.F.R. § 5.11(k), for Plaintiffs' April and July FOIA Requests.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1)    Declare that Defendants violated FOIA by failing to determine whether to comply with the Requests within 20 business days and notify Plaintiffs of their decision; by unlawfully withholding the requested records; by constructively or improperly denying the requests for expedited processing; and by failing to respond to or improperly denying the requests for a fee waiver;

2)    Order Defendants to conduct a search of any and all responsive records to

21

Plaintiffs' April and July FOIA Requests and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiffs' FOIA requests, including production of "FOIA Search Staffing Sheets" for all searchers;

3)      Enjoin Defendants from assessing fees or costs for the processing of the FOIA Requests;

4)      Award costs and reasonable attorneys' fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

5)      Grant other such relief as this Court may deem just and proper.

Respectfully submitted,

Date:  December 19, 2017
       Burlington, Vermont

Lia Ernst (Bar No. 5488)
ACLU FOUNDATION OF VERMONT
P.O. Box 277
Montpelier, VT 05601
Tel: (802) 223-6304
lernst@acluvt.org

Joshua Stehlik (appearing *pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
stehlik@nilc.org

Claudia Wilner*
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, New York 10001-6860
Tel: (212) 633-6967
Fax: (212) 633-6371
wilner@nclej.org

22

\* *Pro Hac Vice Application Pending*

*Counsel for Plaintiffs*