UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MIGRANT JUSTICE and MATT CAMERON, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> *Defendants.* | No. 2:17-cv————-197 <br><br><br> AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552, et seq. |

## INTRODUCTION

1.      Plaintiffs seek to enhance the public understanding of the critical issues of First Amendment rights to freedom of speech and association, and whether federal government agencies are infringing on the exercise of those rights.

2.      Migrant Justice is a community-based non-profit organization of Vermont dairy farmworkers and their families that organizes to protect dairy workers' civil, labor, and human rights.  Vermont dairy workers, a mostly immigrant workforce, routinely face substandard labor and housing conditions; geographic, linguistic, and cultural isolation; sixty to eighty hour workweeks; and extremely low pay as the most exploitable rung of a complex supply chain.

3.      In recent years, Migrant Justice and its members have engaged in high profile campaigns to defend the rights of immigrant workers, to hold immigration enforcement agencies accountable, and to advocate for more humane immigration policies.  Migrant Justice has been

honored with numerous awards for its work defending and advancing civil, labor, and human rights.

4.       Migrant Justice fears that its successes in defending human, labor, and civil rights have made the organization and its members targets of retaliation and this apparent retaliation has in turn interfered with and chilled members' rights to associate with the organization and speak publicly on the issues for which it advocates. Members worry that exercising their First Amendment rights by coming to Migrant Justice meetings or speaking out will incur unwarranted attention from immigration enforcement agencies.

5.       Since April 2016, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") have arrested several Migrant Justice members. The timing and place of these arrests, comments made by immigration officers during the arrests, and other actions by immigration enforcement agencies have led the organization to suspect ongoing interference with its activities and that the arrests are retaliatory and have improperly targeted Migrant Justice and its members.

6.       On April 26, 2017, and July 17, 2017, Migrant Justice, in conjunction with the American Civil Liberties Union Foundation of Vermont ("ACLU-VT") and Matt Cameron, an attorney representing many of the arrested Migrant Justice members in their immigration proceedings (collectively, the "Requesters"), filed two Freedom of Information Act ("FOIA") requests (the "Requests"), 5 U.S.C. § 552, *et seq*., with ICE, CBP, and the U.S. Department of Homeland Security ("DHS") (collectively, "Defendants") seeking records concerning the seemingly retaliatory targeting, surveillance, and immigration enforcement against Migrant Justice members for exercise of their First Amendment rights by associating with Migrant Justice and/or advocating for workers' civil, labor, and human rights. Specifically, the Requests seek information in possession of the Defendants related to: Migrant Justice and the Milk with

2

Dignity campaign; the Migrant Justice members arrested; communications between Defendants and Vermont state and local law enforcement about Migrant Justice, the Milk with Dignity campaign, and Migrant Justice members; communications between Defendants and Vermont dairy farms about Migrant Justice, the Milk with Dignity campaign, and Migrant Justice members; and communications related to the Requests themselves.

7.     Defendants have constructively or improperly denied Plaintiffs' Requests and Plaintiffs are entitled to immediate processing of the Requests and timely release of records.

8.     Consequently, Plaintiffs file this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, for declaratory, injunctive, and other appropriate relief to compel the release of agency records requested by Plaintiffs from Defendants DHS, CBP, and ICE.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331; 5 U.S.C. § 552(a)(4)(A)(vii), (4)(B), and (6)(E)(iii); and 5 U.S.C. §§ 701-706.

10.     Venue is proper within this judicial district because Plaintiff Migrant Justice resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. §§ 1391(e) and 1402(a).

## PARTIES

11.     Plaintiff Migrant Justice is a community-based membership organization of Vermont dairy farm workers and their families that organizes to protect dairy workers' civil, labor, and human rights.  Founded in 2009 in the wake of the death of a young dairy worker, Migrant Justice is led by migrant farmworkers and their families.  Through monthly assemblies and other processes, members set priorities for the organization and design campaigns.  Over the last few years, Migrant Justice has engaged in several high profile public campaigns around

3

immigrants' rights, including access to driver's licenses for all Vermont residents[1] and for

policies limiting police interaction with immigration enforcement,[2] and the Milk with Dignity

campaign to implement human rights standards in the dairy industry.[3] Migrant Justice has also

engaged in high profile work to support members arrested by Defendants,[4] around immigration

policy,[5] and to expose ICE and CBP abuses of civil and human rights.[6] Plaintiffs, along with the

ACLU-VT, filed two FOIA requests with each of the Defendants seeking records related to

Migrant Justice and to immigration enforcement actions taken against members of Migrant

Justice.

      12.     Plaintiff Matt Cameron is an immigration attorney practicing in Boston,

---

[1] *See, e.g.*, Nat Rudarakanchana, Few obstacles seen to allowing migrant workers to have driver's licenses, VT Digger (Oct. 4, 2012), https://vtdigger.org/2012/10/04/few-obstacles-seen-to-allowing-migrant-workers-to-have-drivers-licenses/#WbjSaiiGOUk; Kathryn Flagg, With Promise of Driver's Licenses, Migrant Farmworkers Hope for the Best, Seven Days (June 5, 2013), https://www.sevendaysvt.com/OffMessage/archives/2013/06/05/with-promise-of-drivers-licenses-migrant-farmworkers-hope-for-the-best.
[2] *See, e.g.*, Morgan True, Discrimination case highlights police bias toward immigrants, advocates say, VT Digger (Dec. 18, 2015), https://vtdigger.org/2015/12/18/discrimination-case-highlights-police-bias-toward-immigrants-advocates-say/#.WbjUzyiGOUk.
[3] *See, e.g.*, Milk with Dignity, Migrant Justice, https://migrantjustice.net/milk-with-dignity (last visited Sept. 13, 2017); Sarah Olsen, Ben & Jerry's agrees to negotiate 'Milk With Dignity' agreement, VT Digger (June 21, 2015), https://vtdigger.org/2015/06/21/ben-jerrys-agrees-to-negotiate-milk-with-dignity-agreement/#.WbjVyyiGOUk.
[4] *See, e.g.*, Protesters Decry Farmworkers' Arrest after Ben & Jerry's March, Burlington Free Press (June 19, 2017), http://www.burlingtonfreepress.com/story/news/local/vermont/2017/06/19/border-patrol-arrests-2-immigrants-east-franklin/408333001/; Elizabeth Murray & Dan D'Ambrosio, Released Migrant Justice Organizers Speak out at BTV Rally, Burlington Free Press (Mar. 28, 2017), http://www.burlingtonfreepress.com/story/news/local/2017/03/28/aclu-ice-arrests-jeff-sessions-defunding-threats-migrant-justice-rally-burlington/99704610/; Abby Isaacs, Hundreds March against Recent Immigration Arrests, NBC5 (Mar. 18, 2017), http://www.mynbc5.com/article/hundreds-march-against-recent-immigration-arrests/9152152; Alexandra Leslie, Supporters March to Get Migrant Justice Leader Released, My Champlain Valley (Oct. 1, 2016), http://www.mychamplainvalley.com/news/supporters-march-to-get-migrant-justice-leader-released/590642037; Megan Carpenter, Rallies Continue Against Deporting Victor Diaz, My Champlain Valley (May 1, 2016), http://www.mychamplainvalley.com/news/rallies-continue-against-deporting-victor-diaz/445732123.
[5] *See, e.g.*, Jess Aloe, Vermont Cities Wrestle with Sanctuary State Rules, Burlington Free Press (Dec. 18, 2016), http://www.burlingtonfreepress.com/story/news/2016/12/18/vermont-cities-wrestle-sanctuary-state-rules/95337958/; Steve Zind, New Policy Helps Clarify Police Role In Immigration Enforcement, Vermont Public Radio (June 17, 2016), http://digital.vpr.net/post/new-policy-helps-clarify-police-role-immigration-enforcement#stream/0; Laura Krantz, Lawmakers Share Personal Stories in Debate over Bias-Free Policing, VT Digger (May 1, 2014), https://vtdigger.org/2014/05/01/lawmakers-share-personal-stories-debate-bias-free-policing/#.WcFdz9OGNBw.
[6] *See, e.g.*, Sam Knight, In Trump Era, a Pattern of Deportation as Retaliation Is Emerging, District Sentinel (Mar. 22, 2017), http://www.truth-out.org/news/item/39937-pattern-of-deportation-as-retaliation-emerging-in-trump-era; Katie Jickling, Vermont's Congressional Delegation Joins the Criticism of ICE Arrests, Seven Days (Mar. 20, 2017), https://www.sevendaysvt.com/OffMessage/archives/2017/03/20/vermont-congressional-delegation-joins-the-criticism-of-ice-arrests.

Massachusetts and represents six of the Migrant Justice members mentioned in the FOIA

Requests.  His representation of these individuals is pro bono.

13.     Defendant DHS is a Department in the Executive Branch of the U.S. government

and is an agency within the meaning of 5 U.S.C. § 552(f)(1).  Defendant DHS is tasked with

overseeing, *inter alia*, immigration enforcement, border security, and immigration and

citizenship benefits.

14.     Defendant ICE is a component of DHS that enforces immigration and customs

laws, is involved in the detention and removal of immigrants, and is an agency within the

meaning of 5 U.S.C. § 552(f)(1).

15.     Defendant CBP is a component of DHS tasked with managing the U.S. border,

protecting the border, and facilitating lawful international travel and trade, and is an agency

within the meaning of 5 U.S.C. § 552(f)(1).

### STATEMENT OF FACTS

#### Targeted Immigration Arrests of Migrant Justice Members

16.     Since April 2016, DHS components, including ICE and CBP, have arrested at least

seven prominent Migrant Justice members in what appears to be retaliation for their outspoken

advocacy of workers' civil, labor, and human rights, and their association with Migrant Justice.

17.     On April 21, 2016, ICE arrested Jose Victor Garcia Diaz outside a Mexican

cultural event in Stowe, Vermont.  Mr. Garcia Diaz is a public spokesperson for Migrant Justice's

Milk with Dignity campaign.  The day before his arrest, he had returned from a gathering of the

Food Chain Workers Alliance in Los Angeles, California.  Mr. Garcia Diaz represented Vermont

farmworkers at the meeting in an effort to build a unified movement for respect for human rights

in food supply chains.  His immigration removal proceedings are ongoing.

18.     On September 22, 2016, ICE arrested Miguel Alfredo Alcudia Gamas.  Mr.

Alcudia Gamas is also a public spokesperson for Migrant Justice's Milk with Dignity campaign. When ICE arrested Mr. Alcudia Gamas, ICE officers made statements implying that they were targeting a fellow Migrant Justice leader, Jose Enrique Balcazar Sanchez. His immigration removal proceedings are ongoing.

19.    On March 15, 2017, ICE arrested Cesar Alexis Carrillo Sanchez on his way to a court proceeding at which a pending criminal charge was to be, and ultimately was, dismissed.

20.    On March 17, 2017, the day after Migrant Justice announced an escalation of its Milk with Dignity campaign with respect to Ben & Jerry's, ICE arrested Jose Enrique Balcazar Sanchez shortly after he left a meeting at Migrant Justice's office. Mr. Balcazar Sanchez is one of the principal architects of the Milk with Dignity campaign. He has been a very visible representative of Migrant Justice and publicly promoted policies to limit ICE's entanglement with local law enforcement. Over the past few years, Mr. Balcazar Sanchez has served as one of Migrant Justice's primary spokespeople in its campaigns for driver's licenses and for a fair and impartial policing policy. He served on a task force established to advise the Vermont Attorney General on immigration issues,[7] which resulted in guidance for Vermont cities and towns to limit their role in immigration law enforcement.[8] His immigration removal proceedings are ongoing.

21.    On March 17, 2017, ICE also arrested Zully Victoria Palacios Rodriguez, who was a passenger in Mr. Balcazar Sanchez's car. Ms. Palacios Rodriguez is a key Migrant Justice organizer. Just prior to her arrest, she had also just left Migrant Justice's offices. Her immigration removal proceedings are ongoing.

---

[7] *See* Pat Bradley, *Task Force Appointed by Vermont AG to Assess Immigration Issues and State Powers*, WAMC (Jan. 27, 2017), http://wamc.org/post/task-force-appointed-vermont-ag-assess-immigration-issues-and-state-powers.
[8] Thomas J. Donovan Jr., Vermont Attorney General, *Guidance to Vermont Cities & Towns Regarding Immigration Enforcement*, March 2017, http://ago.vermont.gov/assets/files/Consumer/Guidance%20to%20VT%20Cities%20and%20Towns%20re%20Immigration%20Enforcement.pdf.

6

22.     On June 17, 2017, CBP arrested Yesenia Hernandez Ramos and Esau Peche Ventura.  Ms. Hernandez Ramos and Mr. Peche Ventura had participated in a march for the Milk with Dignity campaign earlier in the day.  Each of their immigration removal proceedings are ongoing.

23.     Each individual named in paragraphs 17 ~~17~~ through ~~22~~ 24- 22 ~~is a member~~were members of Migrant Justice at the time of their arrest.

24.     Migrant Justice is concerned that these arrests are a part of Defendants' efforts to target Migrant Justice members for their association with the organization and activities speaking and organizing for the civil, labor, and human rights of dairy workers and their families.  The apparent targeting of Migrant Justice and its members has chilled and deterred members' participation and association with Migrant Justice.  Migrant Justice saw significant fear among workers of being associated with the organization and of DHS and its sub-components seeing workers meeting with Migrant Justice representatives.  After the arrests, the organization fears that people who need assistance may no longer be calling the organization out of fear that being associated with it will put them at risk for immigration enforcement.

**Plaintiffs' FOIA Requests**

*The April FOIA Request*

25.     On April 26, 2017, the Requesters sent their first FOIA Request ("April FOIA Request") to DHS, CBP, and ICE pursuant to 5 U.S.C. § 552, *et seq.  See* **Exhibit A** (privacy waivers excluded).

26.     Plaintiffs' April FOIA Request seeks Records from April 1, 2015, until the time that a responsive Records search is conducted, pertaining to DHS and its components' immigration enforcement actions in the state of Vermont including, in summary: records relating to Migrant Justice or the Milk with Dignity Campaign; records relating to a named list of specific

individuals affiliated with Migrant Justice or their attorney; records relating to communications between Vermont state or local law enforcement and Defendants regarding immigration enforcement and the named individuals; records relating to communications between Vermont dairy farms and other agricultural operations and Defendants referring to immigration enforcement; records containing a list of key terms, such as "organizer," "farmworker," and "dairy"; and records related to the processing of the April FOIA Request.

27.     Plaintiffs' April FOIA Request seeks expedited processing under 5 U.S.C. § 522(a)(6)(E)(i) and 6 C.F.R. § 5.5(e)(1)(i)-(ii),[9] which provide for expediting processing of requests for records in cases where a compelling need exists.

28.     Requesters Migrant Justice and the ACLU-VT are primarily engaged in disseminating information.  Expedited processing is appropriate because Plaintiffs' need for the requested information is compelling and urgent due to the risk that Defendants may continue to undertake enforcement actions targeting individuals in Vermont based on the exercise of their First Amendment rights.  Additionally, six of the Migrant Justice members listed in the Requests face ongoing immigration removal proceedings and risk imminent deportation.  Any information about their targeting and arrests is needed to prepare for their defense and to permit them to fully exercise their due process rights in Immigration Court.

29.     The public has an urgent interest in protecting First Amendment rights to freedom of speech and association and in understanding Defendants' immigration enforcement actions, particularly the targeting of individuals associated with organizations that protect immigrant rights or who exercise their rights to speak out.  Information regarding retaliatory targeting for immigration enforcement based on First Amendment activity is crucial for public debate.

---

[9] The April FOIA Request's citation to 6 C.F.R. § 5.5(d)(1)(i)-(ii) was a typo.  The correct citation, to which the April FOIA Request referred in substance, is to 6 C.F.R. § 5.5(e)(1)(i)-(ii).

30.    Plaintiffs' April FOIA Request also seeks a fee waiver and a waiver of processing

(search and review) fees on the grounds that disclosure of the records is in the public interest

because disclosure is "likely to contribute significantly to public understanding of the operations

or activities of the government" and is not in the Requesters' commercial interest.  *See* 5 U.S.C.

§ 552(a)(4)(A)(ii)(II)-(iii); 6 C.F.R. § 5.11(d)(1), (k)(1), (k)(2).  Migrant Justice and the ACLU-

VT are non-profit entities and have no commercial interest in the records requested, which are

crucial to the public's understanding of Defendants' operations.  Migrant Justice and the ACLU-

VT also qualify for a fee waiver as representatives of the news media.

*The July FOIA Request*

31.    On July 17, 2017, Requesters sent their second FOIA Request (the "July FOIA

Request") to DHS, CBP, and ICE pursuant to 5 U.S.C. § 552, *et seq.*  *See* **Exhibit B** (privacy

waivers excluded).

32.    Plaintiffs' July FOIA Request seeks records pertaining to DHS and its

components' immigration enforcement actions in the state of Vermont including, in summary:

records relating to three additional Migrant Justice members who have been arrested; records

relating to Migrant Justice or the Milk with Dignity Campaign from September 1, 2011, through

December 31, 2011, and from January 1, 2015, through March 31, 2015; and records relating to

the processing of the July FOIA Request.

33.    As with the April FOIA Request, Requesters seek expedited processing of their

request pursuant to 5 U.S.C. § 522(a)(6)(E)(i); 6 C.F.R. § 5.5(e)(1)(i)-(ii); and request that

Defendants waive or reduce the fees charged, 5 U.S.C. § 552(a)(4)(A)(ii)-(iii); 6 C.F.R.

§ 5.11(d)(1), (k)(1), (k)(2).  Requesters sought expedited processing and a fee waiver on the

same grounds as cited above in paragraphs 27-30.  For the same reasons described above,

expedited processing and a fee waiver are similarly appropriate for the July FOIA Request.

**Agency Responses**

34.     On April 26, 2017, Requesters sent the April FOIA Request via certified U.S. mail to Defendants DHS, ICE, and CBP, and through electronic mail to DHS and ICE.  On July 17, 2017, Requesters sent their July FOIA Request to the same Defendants through the same means.

35.     Each Defendant was required to make a determination on the request for expedited processing within ten days of receiving each of Plaintiffs' Requests.  *See* 5 U.S.C. § 552(a)(6)(E)(ii).

36.     Each Defendant was required to respond in writing within 20 business days after receiving each FOIA request and notify Requesters whether or not the Defendant intended to comply with the request, 5 U.S.C. § 552(a)(6)(A)(i), or, in "unusual circumstances," could extend the time for making such a determination by up to ten working days, 5 U.S.C. § 552(a)(6)(B).

37.     Each Defendant has failed to timely respond to Plaintiffs' April FOIA Request and/or July FOIA Request.  Defendants have also constructively or improperly denied Plaintiffs' requests for expedited processing and fee waivers.

*Department of Homeland Security*

38.     The post office verification shows delivery of the mailed copy of the April FOIA Request to the DHS mail room on May 1, 2017.  *See* **Exhibit C at 1-2**.

39.     As of the date of this Complaint, Requesters have not received any acknowledgment or response from DHS regarding the April FOIA Request, including the requests for expedited processing and for a fee waiver.

40.     The post office verification shows delivery of the mailed copy of the July FOIA Request to the DHS mail room on July 21, 2017.  *See* **Exhibit D at 1-2**.

41.     On July 27, 2017, Requesters received a letter acknowledging the July FOIA

Request from DHS via electronic mail. *See* **Exhibit D at 3-4.** The July FOIA Request was assigned Reference Number 2017-HQFO-01065.

42. In its letter, DHS stated that it had "determined that your request is too broad in scope or did not specifically identify the records which you are seeking . . . . Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the DHS component or office you believe created and/or controls the record" (emphasis in original).

43. DHS asked that Requesters resubmit their request "containing a reasonable description of the records you are seeking." DHS advised Requesters that their request would be administratively closed if they did not respond to DHS within 30 days.

44. On August 10, 2017, Requesters timely sent their response to DHS's request for clarification by email and certified U.S. mail. *See* **Exhibit D at 5-7.** Requesters noted that the request reasonably described the records sought, but nevertheless limited the first item—records regarding two particular Migrant Justice members—to records between January 1, 2015, through the time DHS conducts an adequate search. Requesters also clarified that, because they had sent identical FOIA requests to CBP and ICE, they were not requesting that DHS conduct a duplicative query of those components and instead were requesting that DHS search for responsive records that were in the custody or control of, or were sent or received by, individuals at the Department level.

45. On August 14, 2017, Requesters received an email from DHS stating that DHS does "not have a central index to search for names here at HQ only the component offices have databases, including I & A." *See* **Exhibit D at 8-9.**

46. On August 22, 2017, Requesters received an additional letter by email from DHS reiterating that DHS does not maintain a central index of records about individuals and asking

Requesters to resubmit the request with a reasonable description of the records sought. *See* **Exhibit D at 10-12**. DHS stated that "[t]his is not a denial of your request" and noted that upon receipt of a "perfected request," Requesters would be advised of the status.

47.     On September 14, Requesters responded by email to DHS correcting what they believed to be misapprehensions about the July FOIA Request and stating that they believed that the July FOIA Request reasonably described the records sought and that they considered the July FOIA Request to have been perfected, at the latest, by August 10, 2017. *See* **Exhibit D at 13-15.**

48.     On September 18, 2017, Maura Busch, Government Information Specialist in the DHS Privacy Office, confirmed receipt of this clarification by email and requested a telephone conversation about the July FOIA Request. *See* **Exhibit D at 16-17.**

49.     Ms. Busch and counsel for the Requestors spoke by telephone on September 19, 2017. Ms. Busch stated that DHS needed to know which offices or individuals at Headquarters would be most likely to have responsive records and that she would send a sample request showing how such a search could be constructed.

50.     On September 20, 2017, Requesters received an electronic message from Ms. Busch stating, "Until I speak with our FOIA counterparts regarding your request for information cited in **item two** of your request, it is premature to draft any sort of CIO email search," and "I reached out to ICE and our CRCL office today to find out if they are aware of any offices **here at HQ** had any involvement with that group or that campaign referenced in your request (the dates go back to 2011 and 2015) as well as whether any civil rights **complaints** were filed with the CRCL Compliance Office." *See* **Exhibit D at 18-20.**

51.     On September 21, 2017, Requesters received an electronic message from Ms. Busch with a description of a request for records regarding ICE enforcement activities from a different requester. *See* **Exhibit D at 21.**

52.     On September 28, 2017, Requesters received a final response from DHS denying the July FOIA Request.  In its denial letter, DHS stated that it conducted a search of files in the Office of Civil Rights and Civil Liberties and a search of the Enterprise Correspondence Tracking system and did not locate any responsive records.  *See* **Exhibit D at 22-24.**

53.     On October 6, 2017, Requesters filed an administrative appeal of this final response, contesting the adequacy of DHS's search and its failure to respond to the requests for expedited processing and a fee waiver.  *See* **Exhibit D, at 25-28** (exhibits excluded).  The post office verification shows delivery of the appeal to the DHS mailroom on October 16, 2017.  *See* **Exhibit D, at 29-30.**

54.     As of the date of this complaint, DHS has not responded to Requesters' appeal.

*Immigration and Customs Enforcement*

55.     On April 26, 2017, Requesters received an automated electronic response from ICE indicating that ICE had received the emailed April FOIA Request that same day.  *See* **Exhibit E at 1**.

56.     On April 27, 2017, Requesters received an acknowledgement email from ICE. *See* **Exhibit E at 2-3**.  The April FOIA Request was assigned Case Number 2017-ICFO-25680.

57.     In its acknowledgement letter, ICE denied Requesters' expedited processing and fee waiver requests.

58.     In denying Requesters' expedited processing request, ICE included no findings but instead recited the requirements for granting expedited processing and labeled the request "conclusory."

59.     This denial appears to have been issued without review of the relevant facts and legal authority supporting the request for expedited processing.  The denial letter includes the instruction "ADD ONE OF THE FOLLOWING REASONS" (bold and underline omitted)

13

followed by two paragraphs between which the reviewer was seemingly supposed to choose. Instead, the reviewer left the instruction and both largely repetitive paragraphs in the text.

60.     This denial also mistakenly stated that the purpose of the FOIA request was to inform the public about "Vermont diary" [sic] or "Vermont dairy," rather than, as explicitly stated in the April FOIA Request, to inform the public about immigration enforcement actions that appear to be targeted retaliation against Migrant Justice members' advocacy for civil and human rights.

61.     In denying Requesters' fee waiver request, ICE recited the six requirements for granting a fee waiver and, without any explanation or additional analysis, labeled the request "deficient" for failing to satisfy three out of the six factors.

62.     The purportedly unsatisfied factors were whether: (1) "the contribution to public understanding of government operations or activities will be 'significant'"; (2) "the requester has a commercial interest that would be furthered by the requested disclosure"; and (3) "the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor."

63.     The fee waiver denial did not address Requesters' independent basis for a fee waiver or limitation as representatives of the news media.

64.     On May 23, 2017, Requesters timely sent a letter appealing ICE's denial of expedited processing and a fee waiver by certified U.S. mail. *See* **Exhibit E at 4-9**.

65.     The post office verification shows delivery of requesters' appeal to ICE's mail room on May 30, 2017. *See* **Exhibit E at 10-13**.

66.     In their appeal, Requesters challenged the denial of both expediting processing and the fee waiver.

67.     With regard to expedited processing, Requesters explained that ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals in Vermont based on their political beliefs and activities.  Additionally, six of the individuals listed in the FOIA requests face ongoing removal proceedings and the current risk of deportation, and information about their targeting and arrest is needed to prepare their defense and permit them to fully exercise their due process rights in Immigration Court.  ICE's actions in the state generally, and with respect to the targeted individuals in particular, are matters of critical importance to Vermonters.

68.     With regard to the fee waiver, Requesters explained how their analysis and dissemination of the records would "help the public understand the nature and extent of ICE immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws."  Requesters further explained that the requested disclosure would not further any commercial interest and so, by definition, is not primarily in their commercial interest.

69.     As of the date of this Complaint, ICE has not responded to Requesters' appeal.

70.     On June 8, 2017, Requesters received an email from ICE stating that it had "determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency."  *See* **Exhibit E at 14-15**.  ICE asked that Requesters resubmit their request "containing a reasonable description of the records you are seeking."

71.     ICE advised Requesters that their request would be administratively closed if they did not respond to ICE within ten days.

72.     Less than 10 days later, on June 16, 2017, Requesters sent a response to ICE indicating that they would respond to ICE's request for clarification within the 30 businesses

days required by 6 C.F.R. § 5.3(c) and that they expected their request would not be administratively closed before that time. *See* **Exhibit E at 16-17**.

73.     Requesters received an automated confirmation of ICE's receipt of the June 16 email that same day. *See* **Exhibit E at 18**.

74.     On June 23, 2017, Requesters sent their response to ICE's request for clarification by electronic mail. *See* **Exhibit E at 19-24**.

75.     Requesters noted that ICE's request for clarification failed to "inform the requester what additional information is needed or why the request is otherwise insufficient," as required by 6 C.F.R. § 5.3(b).

76.     Requesters nevertheless endeavored to provide additional clarification. In particular, Requesters withdrew Item #3 from the April FOIA Request; clarified that Items #4 and #5 sought records in the custody or control of, or sent or received by, ICE offices and/or ICE officials in the State of Vermont or in the ICE Enforcement and Removal Operations Boston field office; and withdrew certain terms from Item #5.

77.     Requesters received an automated confirmation of ICE's receipt of the June 23 email that same day. *See* **Exhibit E at 25**.

78.     As of the date of this Complaint, Requesters have received no further communication from ICE regarding their April FOIA Request.

79.     On July 17, 2017, Requesters received an automated electronic response from ICE indicating that ICE had received their emailed July FOIA Request. *See* **Exhibit F**.

80.     As of the date of this Complaint, ICE has not responded to the requests for expedited processing and for a fee waiver, nor has it responded substantively to the July FOIA Request.

*Customs and Border Patrol*

81.     The post office verification shows delivery of the April FOIA Request to the CBP
Mail Room on May 1, 2017.  *See* **Exhibit G at 1-2**.

82.     On May 5, 2017, Requesters received an electronic message confirming CBP's
receipt of the April FOIA Request.  Their request was assigned Tracking Number CBP-2017-
054785.  *See* **Exhibit G at 3**.

83.     On September 11, 2017, Requesters received an electronic message stating that
the request was reassigned Tracking Number CBP-OFO-2017-054785 and that such changes are
"normally due to the request being transferred to another agency (for example, EPA to Dept. of
Commerce) or to a sub-agency to process it."  "OFO" stands for the CBP Office of Field
Operations.  *See* **Exhibit G at 4**.

84.     On September 27, 2017, Requesters received two electronic messages from the
FOIA Officer for CBP in the Area Port of St. Albans, Vermont.  The first message requested
clarification of various items and an explanation of "why you need information on" certain of the
individual subjects of the April FOIA Request, and the second message requested Privacy
Waivers for three individual subjects of that request.  *See* **Exhibit G at 5-6.**

85.     On September 29, 2017, Requesters responded to CBP's message and provided
the requested information.  *See* **Exhibit G at 7-8.**

86.     As of the date of this Complaint, CBP has not responded to the requests for
expedited processing and for a fee waiver, nor has it responded substantively to the April FOIA
Request.

87.     The post office verification shows delivery of the July FOIA Request to the CBP
mail room on July 21, 2017.  *See* **Exhibit H at 1-2**.

88.     On August 2, 2017, Requesters received an electronic message confirming CBP's
receipt of the July FOIA Request. *See* **Exhibit H at 3**.  This request was assigned Tracking

Number CBP-2017-077128.

89.     Later that same day, Requesters received a second electronic message stating CBP had changed the Tracking Number of the July FOIA Request to CBP-OIIL-2017-077128. *See* **Exhibit H at 4**. "OIIL" stands for CBP's Office of Intelligence and Investigative Liaison.

90.     Later still that same day, Requesters received a third electronic message from CBP acknowledging receipt of the July FOIA Request and indicating that "the average time to process a FOIA request related to 'travel/border incidents' is a minimum of 3-6 months." *See* **Exhibit H at 5-7**. In this message, CBP referred to, but did not expressly invoke, the statutory ten-day extension permitted in "unusual circumstances" by 5 U.S.C. § 552(a)(6)(B).

91.     On August 17, 2017, Requesters received an electronic message stating that CBP had changed the Tracking Number of the July FOIA Request back to CBP-2017-077128. *See* **Exhibit H at 8.**

92.     On September 19, 2017, Requesters received a final response from CBP via email stating that CBP had "conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request . . . . [and was] unable to locate or identify any responsive records, based upon the information you provided in your request." In this message, CBP described the July FOIA Request as requesting only records related to Migrant Justice and the Milk with Dignity Campaign and made no mention of the requests for records related to three additional Migrant Justice members who had been arrested and records related to the processing of the July FOIA Request. *See* **Exhibit H at 9.**

93.     On October 6, 2017, Requesters filed an administrative appeal of this final response, contesting the adequacy of CBP's search, its failure to search for all items in the July FOIA Request, and its failure to respond to the requests for expedited processing and a fee waiver. *See* **Exhibit H at 10-13** (exhibits excluded).  The post office verification shows delivery

of the appeal to the CBP mailroom on October 16, 2017.  *See* **Exhibit H, at 14-15**.

94.     As of the date of this Complaint, CBP has not responded to Requesters' appeal.

## FIRST CLAIM FOR RELIEF

### Violation of FOIA for Failure to Disclose and
### Release Records Responsive to Plaintiffs' Requests

95.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 94 as if repeated and incorporated herein.

96.     Defendants have unlawfully withheld records requested by Plaintiffs pursuant to 5 U.S.C. § 552.

97.     Defendants were each obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to Plaintiffs' requests and to issue a determination concerning Plaintiffs' requests within the time period set forth in 5 U.S.C. § 552(a)(6) – 20 working days, to be extended by no more than 10 working days in the event that the agency finds the existence of "unusual circumstances."  Plaintiffs' April FOIA Request to Defendants CBP, ICE, and DHS and their July FOIA Request to Defendant ICE have been pending for more than 20 days without response.  Defendants DHS and CBP conducted searches in response to Plaintiffs' July FOIA Request, but failed to adequately search for responsive records.

98.     By failing to conduct a reasonable search for records responsive to Plaintiffs' FOIA requests detailed in paragraph 97 and to disclose responsive records, Defendants violated 5 U.S.C. §§ 552(a)(3)(A), (a)(3)(C), and (a)(6)(A), as well as the regulations promulgated thereunder.

99.     Defendants' failureDefendants failed to make a determination concerning Plaintiffs' requestsApril and July Requests for documents detailed in paragraph 97 within the

statutory time period, which constitutes a constructive denial of Plaintiffs' requests, ~~and~~or improperly denied Plaintiffs' requests.   Plaintiffs are deemed to have exhausted their administrative remedies with respect to each Defendant. *See* 5 U.S.C. § 552(a)(6)(C)(i).

100.   Defendants have violated FOIA by failing to produce any and all non-exempt records responsive to Plaintiff's ~~FOIA requests detailed in paragraph 97~~April and July FOIA Requests within the 20-day time period set forth in 5 U.S.C. § 552(a)(6)(A)(i).

## SECOND CLAIM FOR RELIEF

### Defendants Improperly Denied or Have Not Responded to Plaintiffs' Requests for Expedited Processing

101.   Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 100 as if repeated and incorporated herein.

102.   Defendants DHS and CBP have not responded to Plaintiffs' request for expedited processing of the April FOIA Request.  ~~Defendant ICE has~~Defendants have  not responded to or have constructively denied Plaintiffs' request for expedited processing of the July FOIA Request.

103.   Defendant ICE improperly denied Plaintiffs' request for expedited processing of the April FOIA Request.  Plaintiffs administratively appealed Defendant ICE's denial of ~~its~~their April request for expedited processing. and Defendants DHS and CBP's failure to respond to their July request for expedited processing.

104.   Plaintiffs have exhausted their administrative remedies with respect to Defendants' expedited processing of the April ~~FOIA Request~~ and ~~Defendant ICE's expedited processing of the~~ July FOIA ~~Request~~Requests.

105.   Defendants have violated Plaintiffs' right to expedited processing under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations, 6 C.F.R. § 5.5~~(e).~~) with respect to Plaintiffs' April ~~FOIA Request to Defendants CBP, ICE,~~ and ~~DHS; and their~~ July FOIA ~~Request to~~

20

~~Defendant ICE.~~Requests.

### THIRD CLAIM FOR RELIEF

**Defendants Improperly Denied or Have Not Responded to
Plaintiffs' Request for a Fee Waiver**

106.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1

through  105 as if repeated and incorporated herein.

107.    Defendants DHS and CBP have not responded to Plaintiffs' request for a fee

waiver for the April FOIA Request.  ~~Defendant ICE has~~Defendantshave not responded to or have

constructively denied Plaintiffs' request for a fee waiver for the July FOIA Request.

108.    Defendant ICE improperly denied Plaintiffs' request for a fee waiver for the April

FOIA Request.  Plaintiffs administratively appealed Defendant ICE's denial of its April request

for a fee waiver~~.~~ and Defendants' DHS and CBP's failure to respond to its July request for a fee

waiver.

109.    Plaintiffs have exhausted their administrative remedies with respect to a fee

waiver from Defendants ~~DHS, ICE, and CBP for the April FOIA Request and from Defendant~~

~~ICE for the July FOIA Request.~~.

110.    Defendants have violated Plaintiffs' right to a fee waiver under 5 U.S.C.

§ 552(a)(4)(A)(iii) and Defendants' own regulations, 6 C.F.R. § 5.11(k), for Plaintiffs' April

~~FOIA Request to Defendants CBP, ICE,~~ and ~~DHS; and their~~ July FOIA ~~Request to Defendant~~

~~ICE~~Requests.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1)      Declare that Defendants violated FOIA by failing to determine whether to

comply with the Requests within 20 business days and notify Plaintiffs of their decision;

by unlawfully withholding the requested records; by constructively or improperly

denying the requests for expedited processing; and by failing to respond to or improperly

denying the ~~request~~requests for a fee waiver;

      2)    Order Defendants to conduct a search of any and all responsive records to

Plaintiffs' April and July FOIA Requests and demonstrate that it employed search

methods reasonably likely to lead to the discovery of records responsive to Plaintiffs'

FOIA requests, including production of "FOIA Search Staffing Sheets" for all searchers;

      3)    Enjoin Defendants from assessing fees or costs for the processing of the

FOIA Requests;

      4)    Award costs and reasonable attorneys' fees incurred in this action as

provided by 5 U.S.C. § 552(a)(4)(E); and

      5)    Grant other such relief as this Court may deem just and proper.


Respectfully submitted,

Date: ~~October 11~~December 19, 2017
Burlington, Vermont

Lia Ernst (Bar No. 5488)
ACLU FOUNDATION OF VERMONT
P.O. Box 277
Montpelier, VT 05601
Tel: (802) 223-6304
lernst@acluvt.org

Joshua Stehlik* (appearing *pro hac vice*)
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
stehlik@nilc.org

Claudia Wilner*

NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, New York 10001-6860
Tel: (212) 633-6967
Fax: (212) 633-6371
wilner@nclej.org

* *Pro Hac Vice ~~Applications Forthcoming~~Application Pending*

*Counsel for Plaintiffs*

## Exhibit List

| Exhibit A | April FOIA Request to Defendants DHS, CBP, and ICE |
|-----------|---------------------------------------------------|
| Exhibit B | July FOIA Request to Defendants DHS, CBP, and ICE |
| Exhibit C | Correspondence with Defendant DHS regarding April FOIA Request<br>• Pages 1-2: May 1, 2017 post office verification |
| Exhibit D | Correspondence with Defendant DHS regarding July FOIA Request<br>• Pages 1-2: July 21, 2017 post office verification<br>• Pages 3-4: July 27, 2017 email from Defendant DHS<br>• Pages 5-7: August 10, 2017 clarification letter from Requesters to Defendant DHS<br>• Pages 8-9: August 14, 2017 response from Defendant DHS<br>• Pages 10-12: August 22, 2017 response from Defendant DHS<br>• Pages 13-15: September 14, 2017 letter from Requesters to Defendant DHS<br>• Pages 16-17: September 18, 2017 email from Defendant DHS<br>• Pages 18-20: September 20, 2017 email from Defendant DHS<br>• Page 21: September 21, 2017 email from Defendant DHS<br>• Pages 22-24: September 28, 2017 final disposition letter from Defendant DHS<br>• Pages 25-28: Requesters' appeal<br>• Pages 29-30: October 16, 2017 post office verification |
| Exhibit E | Correspondence with Defendant ICE regarding April FOIA Request<br>• Page 1: April 26, 2017 email from Defendant ICE<br>• Pages 2-3: April 27, 2017 email from Defendant ICE<br>• Pages 4-9: May 23, 2017 Requesters' response to Defendant ICE<br>• Pages 10-13: May 30, 2017 post office verification<br>• Pages 14-15: June 8, 2017 email from Defendant ICE<br>• Pages 16-17: June 16, 2017 email from Requesters to Defendant ICE<br>• Page 18: June 16, 2017 automatic response from Defendant ICE<br>• Pages 19-24: June 23, 2017 email from Requesters to Defendant ICE<br>• Page 25: June 23, 2017 automatic response from Defendant ICE |
| Exhibit F | Correspondence with Defendant ICE regarding July FOIA Request<br>• Page 1: July 17, 2017 automatic response from Defendant ICE |
| Exhibit G | Correspondence with Defendant CBP regarding April FOIA Request<br>• Pages 1-2: May 1, 2017 post office verification<br>• Page 3: May 5, 2017 automatic response from Defendant CBP<br>• Page 4: September 11, 2017 email from Defendant CBP<br>• Pages 5-6: September 27, 2017 emails from Defendant CBP<br>• Pages 7-8: September 29, 2017 Requesters response to Defendant CBP |
| Exhibit H | Correspondence with Defendant CBP regarding July FOIA Request<br>• Pages 1-2: July 21, 2017 post office verification<br>• Page 3: August 2, 2017 confirmation email from Defendant CBP<br>• Page 4: August 2, 2017 email from Defendant CBP changing tracking number<br>• Pages 5-7: August 2, 2017 email from Defendant CBP acknowledging July FOIA request<br>• Page 8: August 17, 2017 email from Defendant CBP changing tracking number back to original<br>• Page 9: final disposition from Defendant CBP<br>• Pages 10-13: Requesters' appeal<br>• Pages 14-15: October 16, 2017 post office verification |

# Exhibit A

## April FOIA Request to Defendants DHS, CBP, and ICE



**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION of VERMONT**

April 26, 2017

Jonathan Cantor
Acting Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Drive, SW, Building 410
Stop – 0665
Washington, DC 20528-0655
Email: foia@dhs.gov
*VIA ELECTRONIC AND CERTIFIED U.S. MAIL*

Catrina Pavlik-Keenan
FOIA Officer
Freedom of Information Act Office
U.S. Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
E-mail: ice-foia@dhs.gov
*VIA ELECTRONIC AND CERTIFIED U.S. MAIL*

Sabrina Burroughs
FOIA Officer/Public Liaison
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW, Room 3.3D
Washington, D.C. 20229
*VIA CERTIFIED U.S. MAIL*

### Re: Freedom of Information Act Request / Expedited Processing Requested

To Whom This May Concern:

This letter is a request for records ("Request") made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the relevant implementing regulations, *see* 6 C.F.R. § 5 *et seq.* (Department of Homeland Security, Disclosure of Records and

1

Information). The Request is submitted by Migrant Justice, the American Civil Liberties Union Foundation of Vermont, and Matt Cameron (collectively, "Requesters").[1]

Requesters seek the disclosure of records related to ICE and Border Patrol enforcement operations in Vermont.

## BACKGROUND

Migrant Justice is a community-based organization made up of Vermont dairy farm workers and their families that advocates for human rights and food justice.[2] One of Migrant Justice's most prominent campaigns is "Milk with Dignity," a program to improve conditions in the dairy industry through commitments from major food corporations to implement supply chain codes of conduct.[3] Ben & Jerry's signed a commitment to join the Milk with Dignity program in 2015, but so far has not followed through on this commitment.[4] On March 16, 2017, Migrant Justice announced a re-escalation of its Milk with Dignity campaign targeting Ben & Jerry's, including a multi-state speaking tour and culminating in a March for Dignity on May Day.[5]

Since April of 2016, Immigration and Customs Enforcement ("ICE") has arrested at least five prominent Migrant Justice members in what, to all appearances, is a campaign of retaliation for their outspoken advocacy for workers' human, labor, and civil rights.

Jose Victor "Victor" Garcia-Diaz is a member of Migrant Justice's farmworker coordinating committee, a current dairy worker, and a public spokesperson for Migrant Justice's Milk with Dignity campaign. Victor was arrested on Thursday, April 21, 2016, by ICE outside a Mexican cultural event in Stowe, Vermont. He had returned the day before from a national gathering of the Food Chain Workers Alliance in Los Angeles, representing Vermont farmworkers in an effort to build a unified movement for fair food.[6] Victor's removal proceedings are ongoing.

---

[1] The American Civil Liberties Union Foundation ("ACLU") is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes the ACLU's members to lobby their legislators.

[2] *See* Migrant Justice, *About Migrant Justice*, https://migrantjustice.net/about.

[3] *See* Migrant Justice, *Milk with Dignity!*, https://migrantjustice.net/milk-with-dignity.

[4] *Id.*

[5] Migrant Justice, *VT Dairy Workers Announce Northeast Milk with Dignity Speaking Tour*, Mar. 16, 2017, https://migrantjustice.net/news/vt-dairy-workers-announce-northeast-milk-with-dignity-speaking-tour.

[6] *See* Alicia Freese, *After DUI, Deportation? What Awaits Migrant Justice Activist Victor Diaz*, SEVEN DAYS, May 11, 2016, *available at* http://www.sevendaysvt.com/vermont/after-a-dui-deportation-what-awaits-migrant-activist-victor-diaz/Content?oid=3349198; Joel Banner Baird, *Vermont migrant activist freed by judge*, BURLINGTON FREE

2

Miguel Alfredo Alcudia-Gamas is a member of Migrant Justice's farmworker coordinating committee, a recent dairy worker, and a public spokesperson for Migrant Justice's Milk with Dignity campaign.[7] Miguel was arrested by ICE in September 2016. During Miguel's arrest, ICE agents told him that his "friend Enrique (see below) would be next." Miguel has no criminal record.[8]

Cesar Alexis "Alex" Carrillo-Sanchez is a member of Migrant Justice and a former dairy worker. He has participated in the Milk with Dignity campaign. On March 15, 2017, ICE arrested Alex as he was en route to a court proceeding at which a pending criminal charge was to be, and ultimately was, dismissed.[9] Alex's removal proceedings are ongoing.

Jose Enrique "Kike" Balcazar-Sanchez is a spokesperson for Migrant Justice, a former dairy worker, and a leader of the organization. He has been one of Migrant Justice's primary spokespeople over the last few years in its campaigns for driver's licenses and for a fair and impartial policing policy, and is one of the principle architects of Milk with Dignity. Kike served on the Vermont Attorney General's immigration task force representing immigrant farmworkers and helping to craft a guidance manual for Vermont cities and towns regarding their role in immigration law enforcement. On March 17, 2017, the day after Migrant Justice announced a re-escalation of its Milk with Dignity campaign targeting Ben & Jerry's, ICE arrested Kike shortly

---

PRESS, May 4, 2016, *available at* http://www.burlingtonfreepress.com/story/news/2016/05/04/vermont-migrant-activist-freed-judge/83933086/; Taylor Dobbs, *Advocacy Group Calls For Release Of Detained Migrant Activist*, VT. PUB. RADIO, Apr. 22, 2016, *available at* http://digital.vpr.net/post/advocacy-group-calls-release-detained-migrant-activist#stream/0; Steven Greenhouse, *Farm Labor Groups Make Progress on Wages and Working Conditions*, N.Y. TIMES, July 3, 2015, *available at* https://www.nytimes.com/2015/07/04/business/economy/farm-labor-groups-make-progress-on-wages-and-working-conditions.html?_r=0.

[7] *See* Migrant Justice, *Free VT Human Rights Leader Miguel Alcudia*, https://migrantjustice.net/civicrm/petition/sign?sid=9.

[8] *See* Kathleen Masterson, *Despite Federal Guidelines, Indiscriminate Immigration Arrests Still Occur in Vermont*, VT. PUB. RADIO, Dec. 21, 2016, *available at* http://digital.vpr.net/post/despite-federal-guidelines-indiscriminate-immigration-arrests-still-occur-vermont#stream/0; Sarah Betancourt, *In Boston, Federal Judge Holds One Vermont Immigrant Activist, Releases Two Others*, LATINO USA, Mar. 28, 2017, *available at* http://latinousa.org/2017/03/28/boston-federal-judge-holds-vermont-immigrant-activist/; Paul Heintz, *Fear on the Farm: Trump's Immigration Crackdown Threatens Vermont's Dairy Industry*, SEVEN DAYS, Feb. 15, 2017, *available at* http://www.sevendaysvt.com/vermont/fear-on-the-farm-trumps-immigration-crackdown-threatens-vermonts-dairy-industry/Content?oid=4031604.

[9] *See* Kathleen Masterson, *ICE Agents Arrest Dairy Worker En Route To Burlington Courthouse*, VT. PUB. RADIO, Mar. 16, 2017, *available at* http://digital.vpr.net/post/ice-agents-arrest-dairy-worker-en-route-burlington-courthouse#stream/0; Mark Davis, *ICE Arrests Immigrant Worker Outside Burlington Courthouse*, SEVEN DAYS, Mar. 16, 2017, *available at* http://www.sevendaysvt.com/OffMessage/archives/2017/03/16/ice-arrests-migrant-worker-outside-burlington-courthouse; Morgan True, *ICE Detains Two More Migrant Justice Activists*, VTDIGGER, Mar. 17, 2017, *available at* https://vtdigger.org/2017/03/17/ice-detains-two-migrant-justice-activists/; Yara Simón, *Were These Vermont-Based Immigrants Detained by ICE as Retaliation for Their Activism?*, REMEZCLA (Mar. 24, 2017), http://remezcla.com/culture/vermont-based-immigrants-detained-ice-retaliation-activism/; Jess Aloe, *Dismissed charge. Still jailed. Here's why.*, BURLINGTON FREE PRESS, Mar. 30, 2017, *available at* http://www.burlingtonfreepress.com/story/news/2017/03/30/migrant-justice-activists-dui-arrest-scrutinized/99820244/; Betancourt, *supra* note 8.

3

after he left an organizing meeting at the Migrant Justice office. Kike has no criminal history.[10] Kike's removal proceedings are ongoing.

Zully Victoria Palacios-Rodriguez is an active Migrant Justice member/organizer, especially in the women's group. She was arrested with Kike (above) on March 17, 2017. She has no criminal history.[11] Zully's removal proceedings are ongoing.

## REQUESTERS

The ACLU is a national, non-partisan organization of more than a million members, countless additional activists and supporters, and fifty-three affiliates nationwide. The ACLU is dedicated to the defense of civil rights and civil liberties and to holding the government accountable to principles of due process and of the U.S. Constitution in general. The ACLU of Vermont is one of the ACLU's local affiliates.

Migrant Justice is a community-based organization made up of dairy farm workers and their families across Vermont. It was founded in 2009 and is structured around a farmworker coordinating committee of leaders who are dairy workers or immediate family members thereof. Migrant Justice holds monthly membership assemblies. Through these assemblies and the coordinating committee, Migrant Justice sets priorities and designs campaigns. Migrant Justice's three highest profile campaigns to date have focused on winning Vermont driver's licenses for all Vermont residents, protecting Vermont communities by limiting state and local law enforcement officers' role in federal immigration enforcement, and securing binding agreements from large sellers of dairy products to require their supply chains to comply with human rights codes of conduct for dairy workers' housing and working conditions.

Matt Cameron is an attorney practicing immigration law in Boston, Massachusetts. He represents all five of the individual Migrant Justice members whose arrests were described above in their ongoing removal proceedings. His representation of three of these individuals is entirely pro bono.

## DEFINITIONS

"Records"—all records or communications preserved in electronic or written form, including but not limited to: text communications between phones or other electronic devices (including but not limited to communications sent via SMS or other text, Blackberry Messenger,

---

[10] *See* Kathleen Masterson & Rebecca Sananes, *Federal Judge Releases Two Vermont Migrant Activists, Third Remains Detained*, VT. PUB. RADIO, Mar. 27, 2017, *available at* http://digital.vpr.net/post/federal-judge-releases-two-vermont-migrant-activists-third-remains-detained#stream/0; Betancourt, *supra* note 8; Simón, *supra* note 9; Migrant Justice, *supra* note 5; Milton J. Valencia, *Vermont activists set to post bond on immigration charges*, BOS. GLOBE, Mar. 28, 2107, *available at* https://www.bostonglobe.com/metro/2017/03/27/vermont-activists-set-post-bond-immigration-charges/eIcbvNUSCoXJqI4SQDeU5I/story.html; True, *supra* note 9.

[11] *See* True, *supra* note 9; Betancourt, *supra* note 8; Simón, *supra* note 9; Valencia, *supra* note 10.

4

iMessage, WhatsApp, Facebook, Signal, Gchat, Twitter direct message, or similar form of communication), including those sent through personal devices or accounts; e-mails (including those in personal accounts); images, video, and audio, including that recorded on cell phones; voicemail messages; social-media posts; minutes or notes of meetings and phone calls; faxes; documents; data; correspondence; letters; messages; notes; contracts or agreements; memoranda of understanding; files; forms, including but not limited to I-205 forms, I-213 forms, and I-247 or I-247-related forms; logs; records; guidance; guidelines; formal and informal presentations; evaluations; audits; investigations; reviews; studies; reports; critiques; analyses; internal memoranda; legal opinions; orders; directives; instructions; training materials; criteria; standards; specifications; rules; instructions; manuals; advisories; bulletins; alerts; updates; reports; protocols; procedures; policies; or other communications.

"DHS" includes any sub-agency within the Department of Homeland Security, including Immigration and Customs Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Border Patrol.

## RECORDS REQUESTED

Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies, to include:

1. All Records mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

2. All Records mentioning, referencing, relating to, or referring to Miguel Alfredo Alcudia-Gamas, Jose Enrique "Kike" Balcazar Sanchez, Matthew "Matt" Cameron, Maria Gracia "Marita" Canedo, Cesar Alexis "Alex" Carrillo Sanchez, Jose Victor R. "Victor" Garcia Diaz, William "Will" Lambek, Abel Luna, Brendan O'Neill, Zully Victoria Palacios Rodriguez, or Arturo Ruiz.

3. All communications with, to, or from any Vermont state or local law enforcement agency—including but not limited to Vermont Department of Motor Vehicles and Vermont Department of Corrections—mentioning, referencing, or referring to immigration enforcement, or to the investigation, arrest, or detention of any individual named in (3) above, and all Records pertaining to any such communications.

4. All Records mentioning, referencing, relating to, or referring to any communications relating to immigration enforcement with Vermont dairy farms and other dairy/agricultural operations or their owners, including, but not limited to, Ben & Jerry's, the St. Albans Cooperative, and Cabot Creamery/Agrimark.

5

5. All Records in the possession of DHS and its sub-agencies in Vermont containing one or more of the following words or terms: "organizer," "activist," "farm," "farmworker," "dairy," "milk," "union," "protest," "campaign," "sensitive location," "court," "courthouse," "school," "church," "hospital," "legislature," "governor," "S. 79," "sanctuary," "detainer," "executive order," "informant," or "concerned citizen."

6. All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request.

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records.

## FORMAT OF PRODUCTION

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that responsive documents be provided electronically in native format (i.e. Excel spreadsheets in Excel). We request that any responsive documents for which native format production is impossible be provided electronically in text-searchable, static-image format (PDF), in the best image quality in the agencies' possession. Please provide the requested documents in the following format:

- Saved on a CD, CD-ROM, or DVD;
- Each record in a separately saved file;
- Emails should include date and time stamps and author and recipient information, including BCC and any other hidden fields, and "parent-child" relationships should be maintained, meaning that the requester must be able to identify the attachments with emails;
- With any other metadata preserved.

## REQUEST FOR EXPEDITED PROCESSING

Requesters seek Track 1 expedited processing for this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E)(i) ("Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need . . . .").

A "compelling need" exists when "a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); *see also* 6 C.F.R. § 5.5(d)(1)(i). Without expedited disclosure of the requested records, ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals in Vermont based on their political beliefs and activities, including labor organizers; collaborate with local law enforcement agencies or other state entities in unconstitutional seizures; and threaten individuals with false or misleading information regarding those individuals' legal rights. Further, the individuals listed

6

above face ongoing removal proceedings and the current risk of deportation, and information about their targeting and arrests is needed to prepare for their defense and to permit them to fully exercise their due process rights in Immigration Court. There is thus a "compelling need" for the requested records.

A compelling need can also be demonstrated, "with respect to a request made by a person primarily engaged in disseminating information," by an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5 (d)(1)(ii).

Dissemination of information to the public about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes a continuously updated blog, newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials that are broadly disseminated to the public.[12] Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee through the ACLU's public education department and website.

The ACLU's national website (www.aclu.org) and the site run by the ACLU of Vermont (www.acluvt.org) address civil rights and civil liberties issues in depth, provide features on civil rights and civil liberties issues in the news, and contain many thousands of documents relating to the issues on which the ACLU is focused. These websites also include features highlighting information obtained through the FOIA process.[13]

---

[12] *See, e.g.*, Dan Gillmor, *In Praise of the Almost-Journalists*, SLATE, Mar. 28, 2014, *available at* http://slate.me/1jg5YXx (describing ACLU's efforts to broadly disseminate important civil-rights-related news stories).

[13] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," https://www.thetorturedatabase.org, a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation. *See also, e.g.*, Targeted Killing FOIA Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database?f[0]=field_related_content%3A50449; FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process, https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; FBI Documents Reveal New Information on Baltimore Surveillance Flights, https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; ACLU v. DOJ – FOIA Case for Records Relating to Killing of Three U.S. Citizens, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; ACLU v. Department of Defense: Accountability for Torture, https://www.aclu.org/cases/aclu-v-department-defense; Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling, https://www.aclu.org/mappingthefbi; Bagram FOIA, https://www.aclu.org/cases/bagram-foia; CSRT FOIA, https://www.aclu.org/national-security/csrt-foia; ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request, http://www.aclu.org/safefree/nsaspying/30022res20060207.html; PATRIOT FOIA, https://www.aclu.org/other/patriot-foia?redirect=patriot-foia; NSL Documents Released by DOD, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

In addition, the ACLU publishes a magazine at least twice a year that reports on and analyzes civil liberties-related current events; this publication is distributed to more than one million people. The ACLU also disseminates electronic civil liberties bulletins to more than 1.5 million subscribers (both ACLU members and non-members) by e-mail. Both of these newsletters often include descriptions and analyses of information obtained from the government through FOIA, as well as information about cases, governmental policies, pending legislation, abuses of constitutional rights, and polling data. *Cf. Elec. Privacy Info. Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5, 13–14 (D.D.C. 2003) (finding the Electronic Privacy Information Center to be a representative of the news media under Department of Defense regulations because it published a "bi-weekly electronic newsletter that is distributed to over 15,000 readers" about "court cases and legal challenges, government policies, legislation, civil rights, surveys and polls, legislation, privacy abuses, international issues, and trends and technological advancements").

The ACLU also regularly publishes books, "Know Your Rights" publications, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and governmental policies that implicate civil rights and liberties. These materials are specifically designed to be educational and widely disseminated to the public. *See Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 11 (finding the Electronic Privacy Information Center to be a news-media requester because of its publication and distribution of seven books on privacy, technology, and civil liberties). The ACLU further disseminates information to the public via social media platforms such as Facebook and Twitter.

Depending on the results of this request, the ACLU plans to disseminate the information it receives to the public through these kinds of publications in these kinds of channels. The ACLU is therefore an organization "primarily engaged in disseminating information" within the meaning of the statute and the relevant regulations—as has been previously recognized in FOIA litigation between the ACLU and the Department of Justice. *See, e.g., ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)).

Migrant Justice similarly is primarily engaged in the dissemination of information to communities of workers, immigrants, and the public at large. This is accomplished through regular meetings of Migrant Justice's farmworker coordinating committee, monthly meetings of Migrant Justice's membership, the publication of an electronic newsletter and a printed newsletter, regular posts on Migrant Justice's blog and website (www.migrantjustice.net), and frequent communication with elected officials and with the news media.[14] The dissemination of information is fundamental to Migrant Justice's organizing model.[15] The five leaders of Migrant

---

[14] *See, e.g.*, Migrant Justice, *In the News*, https://migrantjustice.net/node/135.

[15] *See, e.g.*, Migrant Justice, *About Migrant Justice*, https://migrantjustice.net/about ("We gather the farmworker community to discuss and analyze shared problems and to envision collective solutions. Through this ongoing investment in leadership development, members deepen their skills in community education and organizing for long-term systemic change.").

8

Justice listed in this request currently face ongoing removal proceedings in Immigration Court and need access to their records to participate in their cases.

Matt Cameron also needs the records urgently for his representation of Mr. Alcudia-Gamas, Mr. Balcazar-Sanchez, Mr. Carrillo-Sanchez, Mr. Garcia-Diaz, and Ms. Palacios-Rodriguez. A full understanding of the records in their cases is essential to providing them with the representation to which they are legally entitled. Mr. Cameron is providing this representation pro bono in three cases and at reduced fees in two cases.

Moreover, this request concerns actual or alleged federal government activity that is a matter of current exigency. As discussed above, there have been numerous reports of DHS immigration enforcement actions in Vermont in recent weeks and months.[16]

For all of the foregoing reasons, expedited processing of this Request is warranted and should be granted.

Requesters hereby certify that the foregoing is true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi); 6 C.F.R. § 5.5(d)(3).

## REQUEST FOR A WAIVER OR LIMITATION OF SEARCH AND REVIEW FEES

Requesters further seek a waiver of processing (search and review) fees because disclosure of these records is in the public interest and because the ACLU qualifies as a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."); 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged "for requests by educational institutions . . . or representatives of the news media"); *id.* § 5.11(k)(1) ("Records responsive to a request will be furnished without charge or at a charge reduced below that established under paragraph (c) of this section where a component determines, based on all available information, that the requester has demonstrated that (i) disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government;

---

[16] *See supra* notes 6-11; *see also, e.g.*, Elizabeth Hewitt, *DMV Changing Application Process After Discrimination Case*, VTDIGGER, Aug. 29, 2016, *available at* https://vtdigger.org/2016/08/29/dmv-changing-application-process-discrimination-case/; Mark Davis, *DMV Settled Jordanian National's Discrimination Complaint*, SEVEN DAYS, Aug. 30, 2016, *available at* http://www.sevendaysvt.com/OffMessage/archives/2016/08/30/dmv-settles-jordanian-nationals-discrimination-complaint; Paul Heintz, *Vermont DMV, State Police Play Nice With ICE*, SEVEN DAYS, Apr. 5, 2017, *available at* http://m.sevendaysvt.com/vermont/vermont-dmv-state-police-play-nice-with-ice/Content?oid=4953143; Elizabeth Hewitt, *Senate Panel Presses DMV on ICE Contacts*, VTDIGGER, Apr. 12, 2017, *available at* https://vtdigger.org/2017/04/12/dmv-contact-ice-ongoing-commissioner-says/; Kathleen Masterson, *As More Asylum-Seekers Flee To Canada, Taxi Rides To The Border Raise Red Flags*, VT. PUB. RADIO, Mar. 2, 2017, *available at* http://digital.vpr.net/post/more-asylum-seekers-flee-canada-taxi-rides-border-raise-red-flags#stream/0.

9

and (ii) disclosure of the information is not primarily in the commercial interest of the requester."). As discussed below, federal agencies routinely grant such fee waivers for FOIA requests made by the ACLU for these reasons.

At a minimum, should a total fee waiver be denied, "fees should be limited to reasonable standard charges for document duplication" because the ACLU is a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

**A. Release of the requested records is in the public interest.**

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "public understanding," that is, "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)–(iv). Each of these considerations is satisfied here.

First, the records requested pertain directly to the operations and activities of the federal government (specifically, DHS and its sub-agencies, including ICE, CBP, and Border Patrol).

Second, this Request is "likely to contribute" to an understanding of government operations or activities, specifically by helping the public determine the nature and extent of DHS immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws. To the extent that agencies of the federal government are engaged in an effort to suppress the free speech of persons and organizations who advocate for fair and safe working conditions in agricultural industries, such information will be of great interest to the public.

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject" of how DHS is conducting immigration enforcement actions in Vermont. Among other things, Migrant Justice and the ACLU intend to publish responsive records and analyze specific documents to raise public awareness of DHS activities in Vermont.

Finally, disclosure will contribute "significantly" to the public understanding of DHS activities in Vermont. As noted, the question of DHS immigration enforcement activity in Vermont has garnered significant and sustained public and media attention, yet much remains unknown about this critical human rights issue. Migrant Justice's membership and base of allies include many of the persons most significantly concerned about and interested in DHS activities in Vermont.

Requesters have thus established, "with reasonable specificity[,] that [their] request pertains to operations of the government," and "the informative value of a request depends not

10

on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 107–109 (D.D.C. 2006).

**B. Disclosure of the information requested is not in Requesters' commercial interest.**

Disclosure of the information requested is not in the Requesters' commercial interest. Any information obtained as a result of this FOIA request will be made available to the public at no cost.

**C. The ACLU and Migrant Justice qualify as representatives of the news media.**

The ACLU and Migrant Justice meet the statutory and regulatory definitions of a "representative of the news media" because each is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also, e.g.*, *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). The ACLU and Migrant Justice are "representative[s] of the news media" for the same reasons that they are "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").[17] Various federal courts have held that the ACLU is a "representative of the news media." *See, e.g.*, *Serv. Women's Action Network v. Dep't of Defense*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011). Migrant Justice similarly gathers information and uses editorial and organizational skills to turn raw materials into informative presentations and written materials for its membership and

---

[17] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU. In June 2011, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request submitted in December 2008. The Department of Justice granted a fee waiver to the ACLU with regard to the same FOIA request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The Department of Justice did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

11

allies and for the public at large. As discussed above, Migrant Justice disseminates an electronic newsletter, publishes regular informative posts to the public, and shares information with news media.

For the foregoing reasons, a fee waiver or limitation should be granted. A fee waiver would also fulfill Congress's legislative intent in amending FOIA, namely to ensure that the Act is liberally construed in favor of granting waivers for noncommercial requesters and to effectuate disclosure of documents of public importance. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act" (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992))).

Should a total waiver be denied, fees should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II). In the event a fee waiver or reduction of costs is denied, please notify us in advance if the anticipated costs associated with this Request exceed $100.00.

\*\*\*

Pursuant to the applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(d)(4).

We further expect your reply to the Request itself within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We reserve the right to appeal a decision to withhold any information or to deny expedited processing or a waiver of fees.

Please furnish all responsive records to:

Lia Ernst
Jay Diaz
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601
lernst@acluvt.org
jdiaz@acluvt.org
(802) 223-6304

Should you need to communicate with us regarding this request, please contact us by email at the addresses above.

12

Thank you in advance for your assistance.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont

Jay Diaz
Staff Attorney
ACLU Foundation of Vermont

13

# Exhibit B

## July FOIA Request to Defendants DHS, CBP, and ICE



July 17, 2017

Jonathan Cantor
Acting Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Drive, SW, Building 410
Stop – 0665
Washington, D.C. 20528-0655
Email: foia@dhs.gov
*VIA ELECTRONIC AND CERTIFIED U.S. MAIL*

Catrina Pavlik-Keenan
FOIA Officer
Freedom of Information Act Office
U.S. Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
E-mail: ice-foia@dhs.gov
*VIA ELECTRONIC AND CERTIFIED U.S. MAIL*

Sabrina Burroughs
FOIA Officer/Public Liaison
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW, Room 3.3D
Washington, D.C. 20229
*VIA CERTIFIED U.S. MAIL*

### Re: *Freedom of Information Act Request / Expedited Processing Requested*

To Whom This May Concern:

This letter is a request for records ("Request") made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the relevant implementing regulations, *see* 6 C.F.R. § 5 *et seq.* (Department of Homeland Security, Disclosure of Records and Information). The Request is submitted by Migrant Justice, the American Civil Liberties Union Foundation of Vermont, and Matt Cameron (collectively, "Requesters").

Requesters seek the disclosure of records related to the arrests and detentions of three individuals in Vermont.

## BACKGROUND

Migrant Justice is a community-based organization made up of Vermont dairy farm workers and their families that advocates for human rights and food justice.[1]

One of Migrant Justice's most prominent campaigns is "Milk with Dignity," a program to improve conditions in the dairy industry through commitments from major food corporations to implement supply chain codes of conduct.[2] Ben & Jerry's signed a commitment to join the Milk with Dignity program in 2015, but so far has not followed through on this commitment.[3] On March 16, 2017, Migrant Justice announced a re-escalation of its Milk with Dignity campaign targeting Ben & Jerry's, including a multi-state speaking tour and culminating in a March for Dignity on May Day.[4]

Since April of 2016, Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP") have arrested at least seven prominent Migrant Justice members in what, to all appearances, is a campaign of retaliation for their outspoken advocacy for workers' human, labor, and civil rights. The first five of these are the subject of a pending FOIA request that was filed in April 2017.[5] This request seeks records related to the arrests and detentions of two additional individuals who have since been arrested by Customs and Border Protection ("CBP") and one individual who was previously stopped by local law enforcement and turned over to CBP.

On June 17, 2017, Migrant Justice organized a thirteen-mile march from the Vermont State House in Montpelier to the Ben & Jerry's factory in Waterbury, calling on the company to follow through on its two-year-old commitment to join the Milk with Dignity program.[6] Yesenia Hernández-Ramos and Esau Peche-Ventura are active Migrant Justice members, both participated in the march, and both were arrested after they were stopped by CBP on their way

---

[1] *See* Migrant Justice, *About Migrant Justice*, https://migrantjustice.net/about.

[2] *See* Migrant Justice, *Milk with Dignity!*, https://migrantjustice.net/milk-with-dignity.

[3] *Id.*

[4] Migrant Justice, *VT Dairy Workers Announce Northeast Milk with Dignity Speaking Tour*, Mar. 16, 2017, https://migrantjustice.net/news/vt-dairy-workers-announce-northeast-milk-with-dignity-speaking-tour.

[5] *See* Requests 2017-ICFO-25680; CBP-2017-054785. We have not received any acknowledgement or response from DHS, so there is not yet a request number associated with that request.

[6] *See* Migrant Justice, *Farmworkers and Allies March 13 Miles to Ben & Jerry's Calling for Milk with Dignity*, June 22, 2017, *available at* https://migrantjustice.net/news/farmworkers-and-allies-march-13-miles-to-ben-jerry%E2%80%99s-calling-for-milk-with-dignity.

home from the march.[7] Neither Hernández-Ramos nor Peche-Ventura has any criminal record. Their removal proceedings are ongoing.

On February 14, 2015, Lorenzo Alcudia was traveling as a passenger in a vehicle driven by a friend when the vehicle was pulled over for speeding by the Grand Isle County Sheriff's Department ("GICSD"). The two men were driving to Burlington to attend a Migrant Justice meeting. The sergeant directed a few questions to the (white) driver, and then began focusing almost exclusively on Mr. Alcudia, questioning him as to his immigration status and whether he was "supposed to be here." CBP arrived and took Mr. Alcudia into custody. The Vermont Human Rights Commission, following its investigation, found there were reasonable grounds to believe that the GICSD had discriminated against Mr. Alcudia on the basis of his national origin and color and had violated his rights against unreasonable search and seizure by detaining him without reasonable suspicion to believe he was involved in criminal activity.[8]

## REQUESTERS

The American Civil Liberties Union Foundation ("ACLU") is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes the ACLU's members to lobby their legislators. The ACLU is dedicated to holding the government accountable to principles of due process and of the U.S. Constitution in general. The ACLU is a national, non-partisan organization of more than 1.6 million members, countless additional activists and supporters, and fifty-three affiliates nationwide. The ACLU of Vermont is one of the ACLU's local affiliates.

---

[7] Alicia Freese, *Border Patrol Arrests Two Mexican Farm Workers in Vermont*, SEVEN DAYS, June 19, 2017, *available at* https://www.sevendaysvt.com/OffMessage/archives/2017/06/19/border-patrol-arrests-two-mexican-farm-workers-in-vermont; Kathleen Masterson, *Two Vermont Dairy Workers Arrested And Handed Over To Immigration*, VT. PUB. RADIO, June 19, 2017, http://digital.vpr.net/post/two-vermont-dairy-workers-arrested-and-handed-over-immigration#stream/0; Tyler Dumont, *Dairy workers detained following weekend protest*, WCAX NEWS, June 19, 2017, *available at* http://www.wcax.com/story/35696687/dairy-workers-detained-following-weekend-protest; Lisa Rathke, *Immigrant farmworkers arrested after march*, Associated Press, June 20, 2017, *available at* http://www.rutlandherald.com/articles/immigrant-farmworkers-arrested-after-march/.

[8] *See* Vt. Human Rights Comm'n, Investigative Report, *Lorenzo Alcudia v. Grand Isle County Sheriff's Dep't*, HRC Case PA15-0021, *available at* https://assets.documentcloud.org/documents/2648568/Alcudia-v-Grand-Isle-County-Sheriff-s-Department.pdf; Morgan True, *County Sheriff's Office Settles Discrimination Case for $30,000*, VTDIGGER, June 13, 2016, *available at* https://vtdigger.org/2015/12/18/discrimination-case-highlights-police-bias-toward-immigrants-advocates-say/; Kathleen Masterson, *Vermont Sheriff Department Pays To Settle Instance Of Immigration*, VT. PUB. RADIO, June 14, 2016, *available at* http://digital.vpr.net/post/vermont-sheriff-department-pays-settle-instance-discrimination#stream/0; WCAX News, *Grand Isle County Sheriff's Department settles discrimination case*, June 15, 2016, *available at* http://www.wcax.com/story/32231808/grand-isle-county-sheriffs-department-settles-discrimination-case; Morgan True, *Discrimination Case Highlights Police Bias Toward Immigrants, Advocates Say*, VTDIGGER, Dec. 18, 2015, *available at* https://vtdigger.org/2015/12/18/discrimination-case-highlights-police-bias-toward-immigrants-advocates-say/.

3

Migrant Justice is a community-based organization made up of dairy farm workers and their families across Vermont. It was founded in 2009 and is structured around a farmworker coordinating committee of leaders who are dairy workers or immediate family members thereof. Migrant Justice holds monthly membership assemblies. Through these assemblies and the coordinating committee, Migrant Justice sets priorities and designs campaigns. Migrant Justice's three highest profile campaigns to date have focused on winning Vermont driver's licenses for all Vermont residents, protecting Vermont communities by limiting state and local law enforcement officers' role in federal immigration enforcement, and securing binding agreements from large sellers of dairy products to require their supply chains to comply with human rights codes of conduct for dairy workers' housing and working conditions.

Matt Cameron is an attorney practicing immigration law in Boston, Massachusetts. He represents Hernández-Ramos and Peche-Ventura pro bono in their ongoing removal proceedings.

## DEFINITIONS

"Records"—all records or communications preserved in electronic or written form, including but not limited to: text communications between phones or other electronic devices (including but not limited to communications sent via SMS or other text, Blackberry Messenger, iMessage, WhatsApp, Facebook, Signal, Gchat, Twitter direct message, or similar form of communication), including those sent through personal devices or accounts; e-mails (including those in personal accounts); images, video, and audio, including that recorded on cell phones; voicemail messages; social-media posts; minutes or notes of meetings and phone calls; faxes; documents; data; correspondence; letters; messages; notes; contracts or agreements; memoranda of understanding; files; forms, including but not limited to I-205 forms, I-213 forms, and I-247 or I-247-related forms; logs; records; guidance; guidelines; formal and informal presentations; evaluations; audits; investigations; reviews; studies; reports; critiques; analyses; internal memoranda; legal opinions; orders; directives; instructions; training materials; criteria; standards; specifications; rules; instructions; manuals; advisories; bulletins; alerts; updates; reports; protocols; procedures; policies; or other communications.

"DHS" includes any sub-agency within the Department of Homeland Security, including Immigration and Customs Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Border Patrol.

## RECORDS REQUESTED

Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies, to include:

1. All Records mentioning, referencing, relating to, or referring to Lorenzo Alcudia, Yesenia Hernández-Ramos, or Esau Peche-Ventura.

4

2. All Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

3. All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request.

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records.

## FORMAT OF PRODUCTION

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that responsive documents be provided electronically in native format (i.e. Excel spreadsheets in Excel). We request that any responsive documents for which native format production is impossible be provided electronically in text-searchable, static-image format (PDF), in the best image quality in the agencies' possession. Please provide the requested documents in the following format:

- Saved on a CD, CD-ROM, or DVD;
- Each record in a separately saved file;
- Emails should include date and time stamps and author and recipient information, including BCC and any other hidden fields, and "parent-child" relationships should be maintained, meaning that the requester must be able to identify the attachments with emails;
- With any other metadata preserved.

## REQUEST FOR EXPEDITED PROCESSING

Requesters seek Track 1 expedited processing for this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E)(i) ("Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need . . . ."). A "compelling need" exists when, "with respect to a request made by a person primarily engaged in disseminating information," there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5 (d)(1)(ii).

Dissemination of information to the public about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes a continuously updated blog, newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials that are broadly disseminated to

the public.[9] Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee through the ACLU's public education department and website.

The ACLU's national website (www.aclu.org) and the site run by the ACLU of Vermont (www.acluvt.org) address civil rights and civil liberties issues in depth, provide features on civil rights and civil liberties issues in the news, and contain many thousands of documents relating to the issues on which the ACLU is focused. These websites also include features highlighting information obtained through the FOIA process.[10]

In addition, the ACLU publishes a magazine at least twice a year that reports on and analyzes civil liberties-related current events; this publication is distributed to more than one million people. The ACLU also disseminates electronic civil liberties bulletins to more than 1.5 million subscribers (both ACLU members and non-members) by e-mail. Both of these newsletters often include descriptions and analyses of information obtained from the government through FOIA, as well as information about cases, governmental policies, pending legislation, abuses of constitutional rights, and polling data. *Cf. Elec. Privacy Info. Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5, 13–14 (D.D.C. 2003) (finding the Electronic Privacy Information Center to be a representative of the news media under Department of Defense regulations because it published a "bi-weekly electronic newsletter that is distributed to over 15,000 readers" about "court cases and legal challenges, government policies, legislation, civil rights, surveys and polls, legislation, privacy abuses, international issues, and trends and technological advancements").

---

[9] *See, e.g.*, Dan Gillmor, *In Praise of the Almost-Journalists*, SLATE, Mar. 28, 2014, *available at* http://slate.me/1jg5YXx (describing ACLU's efforts to broadly disseminate important civil-rights-related news stories).

[10] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," https://www.thetorturedatabase.org, a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation. *See also, e.g.*, Targeted Killing FOIA Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database?f[0]=field_related_content%3A50449; FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process, https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; FBI Documents Reveal New Information on Baltimore Surveillance Flights, https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; ACLU v. DOJ – FOIA Case for Records Relating to Killing of Three U.S. Citizens, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; ACLU v. Department of Defense: Accountability for Torture, https://www.aclu.org/cases/aclu-v-department-defense; Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling, https://www.aclu.org/mappingthefbi; Bagram FOIA, https://www.aclu.org/cases/bagram-foia; CSRT FOIA, https://www.aclu.org/national-security/csrt-foia; ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request, http://www.aclu.org/safefree/nsaspying/30022res20060207.html; PATRIOT FOIA, https://www.aclu.org/other/patriot-foia?redirect=patriot-foia; NSL Documents Released by DOD, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

6

The ACLU also regularly publishes books, "Know Your Rights" publications, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and governmental policies that implicate civil rights and liberties. These materials are specifically designed to be educational and widely disseminated to the public. *See Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 11 (finding the Electronic Privacy Information Center to be a news-media requester because of its publication and distribution of seven books on privacy, technology, and civil liberties). The ACLU further disseminates information to the public via social media platforms such as Facebook and Twitter.

Migrant Justice similarly is primarily engaged in the dissemination of information to communities of workers, immigrants, and the public at large. This is accomplished through regular meetings of Migrant Justice's farmworker coordinating committee, monthly meetings of Migrant Justice's membership, the publication of an electronic newsletter and a printed newsletter, regular posts on Migrant Justice's blog and website (www.migrantjustice.net), and frequent communication with elected officials and with the news media.[11] The dissemination of information is fundamental to Migrant Justice's organizing model.[12] The members of Migrant Justice listed in this request currently face ongoing removal proceedings in Immigration Court and need access to their records to participate in their cases.

Depending on the results of this request, Requesters plan to disseminate the information they receive to the public through these kinds of publications in these kinds of channels. The ACLU and Migrant Justice therefore are organizations "primarily engaged in disseminating information" within the meaning of the statute and the relevant regulations—as has been previously recognized in FOIA litigation between the ACLU and the Department of Justice. *See, e.g., ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)).

Matt Cameron also needs the records urgently for his representation of Ms. Hernández-Ramos and Mr. Peche-Ventura. A full understanding of the records in their cases is essential to providing them with the representation to which they are legally entitled. Mr. Cameron is providing this representation pro bono.

There is no question that ICE immigration enforcement actions constitute federal government activity, and there is an urgent need for public transparency and information about how ICE is carrying out its activities in Vermont. Without expedited disclosure of the requested records, ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals, including labor organizers, in Vermont based on their political beliefs and

---

[11] *See, e.g.*, Migrant Justice, *In the News*, https://migrantjustice.net/node/135.

[12] *See, e.g.*, Migrant Justice, *About Migrant Justice*, https://migrantjustice.net/about ("We gather the farmworker community to discuss and analyze shared problems and to envision collective solutions. Through this ongoing investment in leadership development, members deepen their skills in community education and organizing for long-term systemic change.").

7

activities and collaborate with local law enforcement in unconstitutional and discriminatory seizures—all without Requesters being able to inform the public about these violations. As demonstrated by the many press reports cited above,[13] ICE's enforcement actions and collaboration with law enforcement agencies in Vermont are matters of critical importance and current exigency to Vermont residents. Additional evidence of the intense public interest in these immigration enforcement actions comes from the many hundreds of people who have attended marches, rallies, and vigils in support of those detained by ICE and CBP and against DHS agencies' tactics.[14] People are extremely anxious about and fearful of DHS immigration

[13] *See supra* nn. 7-8; *see also, e.g.*, Kathleen Masterson, *Despite Federal Guidelines, Indiscriminate Immigration Arrests Still Occur in Vermont*, VT. PUB. RADIO, Dec. 21, 2016, *available at* http://digital.vpr.net/post/despite-federal-guidelines-indiscriminate-immigration-arrests-still-occur-vermont#stream/0; Sarah Betancourt, *In Boston, Federal Judge Holds One Vermont Immigrant Activist, Releases Two Others*, LATINO USA, Mar. 28, 2017, *available at* http://latinousa.org/2017/03/28/boston-federal-judge-holds-vermont-immigrant-activist/; Kathleen Masterson & Rebecca Sananes, *Federal Judge Releases Two Vermont Migrant Activists, Third Remains Detained*, VT. PUB. RADIO, Mar. 27, 2017, *available at* http://digital.vpr.net/post/federal-judge-releases-two-vermont-migrant-activists-third-remains-detained#stream/0; Milton J. Valencia, *Vermont activists set to post bond on immigration charges*, BOS. GLOBE, Mar. 28, 2107, *available at* https://www.bostonglobe.com/metro/2017/03/27/vermont-activists-set-post-bond-immigration-charges/e1cbvNUSCoXJqI4SQDeU5I/story.html; Paul Heintz, *Fear on the Farm: Trump's Immigration Crackdown Threatens Vermont's Dairy Industry*, SEVEN DAYS, Feb. 15, 2017, *available at* http://www.sevendaysvt.com/vermont/fear-on-the-farm-trumps-immigration-crackdown-threatens-vermonts-dairy-industry/Content?oid=4031604; Kathleen Masterson, *ICE Agents Arrest Dairy Worker En Route To Burlington Courthouse*, VT. PUB. RADIO, Mar. 16, 2017, *available at* http://digital.vpr.net/post/ice-agents-arrest-dairy-worker-en-route-burlington-courthouse#stream/0; Mark Davis, *ICE Arrests Immigrant Worker Outside Burlington Courthouse*, SEVEN DAYS, Mar. 16, 2017, *available at* http://www.sevendaysvt.com/OffMessage/archives/2017/03/16/ice-arrests-migrant-worker-outside-burlington-courthouse; Morgan True, *ICE Detains Two More Migrant Justice Activists*, VTDIGGER, Mar. 17, 2017, *available at* https://vtdigger.org/2017/03/17/ice-detains-two-migrant-justice-activists/; Yara Simón, *Were These Vermont-Based Immigrants Detained by ICE as Retaliation for Their Activism?*, REMEZCLA (Mar. 24, 2017), http://remezcla.com/culture/vermont-based-immigrants-detained-ice-retaliation-activism/; Jess Aloe, *Dismissed charge. Still jailed. Here's why.*, BURLINGTON FREE PRESS, Mar. 30, 2017, *available at* http://www.burlingtonfreepress.com/story/news/2017/03/30/migrant-justice-activists-dui-arrest-scrutinized/99820244/; Alicia Freese, *After DUI, Deportation? What Awaits Migrant Justice Activist Victor Diaz*, SEVEN DAYS, May 11, 2016, *available at* http://www.sevendaysvt.com/vermont/after-a-dui-deportation-what-awaits-migrant-activist-victor-diaz/Content?oid=3349198; Joel Banner Baird, *Vermont migrant activist freed by judge*, BURLINGTON FREE PRESS, May 4, 2016, *available at* http://www.burlingtonfreepress.com/story/news/2016/05/04/vermont-migrant-activist-freed-judge/83933086/; Taylor Dobbs, *Advocacy Group Calls For Release Of Detained Migrant Activist*, VT. PUB. RADIO, Apr. 22, 2016, *available at* http://digital.vpr.net/post/advocacy-group-calls-release-detained-migrant-activist#stream/0; Elizabeth Hewitt, *DMV Changing Application Process After Discrimination Case*, VTDIGGER, Aug. 29, 2016, *available at* https://vtdigger.org/2016/08/29/dmv-changing-application-process-discrimination-case/; Mark Davis, *DMV Settled Jordanian National's Discrimination Complaint*, SEVEN DAYS, Aug. 30, 2016, *available at* http://www.sevendaysvt.com/OffMessage/archives/2016/08/30/dmv-settles-jordanian-nationals-discrimination-complaint; Paul Heintz, *Vermont DMV, State Police Play Nice With ICE*, SEVEN DAYS, Apr. 5, 2017, *available at* http://m.sevendaysvt.com/vermont/vermont-dmv-state-police-play-nice-with-ice/Content?oid=4953143; Elizabeth Hewitt, *Senate Panel Presses DMV on ICE Contacts*, VTDIGGER, Apr. 12, 2017, *available at* https://vtdigger.org/2017/04/12/dmv-contact-ice-ongoing-commissioner-says/; Kathleen Masterson, *As More Asylum-Seekers Flee To Canada, Taxi Rides To The Border Raise Red Flags*, VT. PUB. RADIO, Mar. 2, 2017, *available at* http://digital.vpr.net/post/more-asylum-seekers-flee-canada-taxi-rides-border-raise-red-flags#stream/0.

[14] *See* Mark Johnson, *Vermont Delegation, Protesters Decry Arrests of Undocumented Immigrants*, VTDIGGER, Mar. 21, 2017, *available at* https://vtdigger.org/2017/03/21/vermonts-delegation-weighs-arrests-undocumented-immigrants/ (describing March 18 rally in Burlington attended by "hundreds" and March 21 rally in Montpelier

8

enforcement activity in Vermont, and they—and their elected officials—have an urgent need to understand how that activity is being carried out and whether and how local law enforcement agencies have participated in it. There is thus a "compelling need" for the requested records.

Without expedited disclosure of the requested records, ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals, including labor organizers, in Vermont based on their political beliefs and activities and collaborate with local law enforcement agencies or other state entities in unconstitutional seizures. Further, the individuals listed above face ongoing removal proceedings and the current risk of deportation, and information about their targeting and arrests is needed to prepare for their defense and to permit them to fully exercise their due process rights in Immigration Court. There is thus a "compelling need" for the requested records.

For all of the foregoing reasons, expedited processing of this Request is warranted and should be granted.

Requesters hereby certify that the foregoing is true and correct to the best of their knowledge and belief. 5 U.S.C. § 552(a)(6)(E)(vi); 6 C.F.R. § 5.5(d)(3).

## REQUEST FOR A WAIVER OR LIMITATION OF SEARCH AND REVIEW FEES

Requesters further seek a waiver of processing (search and review) fees because disclosure of these records is in the public interest and because the ACLU qualifies as a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not

---

attended by "[m]ore than 150 Vermonters"); Claire Halverson, *Letter: Rallying for Migrant Justice*, BRATTLEBORO REFORMER, Apr. 19, 2017, *available at* http://www.reformer.com/stories/letter-rallying-for-migrant-justice,504816 (describing March 21 rally in Brattleboro attended by 200-250 people); Milton J. Valencia, *Vermont activists set to post bond on immigration charges*, BOS. GLOBE, Mar. 28, 2017, *available at* https://www.bostonglobe.com/metro/2017/03/27/vermont-activists-set-post-bond-immigration-charges/eIcbvNUSCoXJqI4SQDeU5l/story.html (describing March 28 protest attended by "hundreds of protesters" outside Boston courthouse during arrestees' bond hearings); Elizabeth Murray & Dan D'Ambrosio, *Released Migrant Justice organizers speak out at BTV rally*, BURLINGTON FREE PRESS, Mar. 28, 2017, *available at* http://www.burlingtonfreepress.com/story/news/local/2017/03/28/aclu-ice-arrests-jeff-sessions-defunding-threats-migrant-justice-rally-burlington/99704610/ (describing March 28 rally and candlelight vigil in Burlington); Masterson, *supra* note 7 (describing June 19 protests outside the facility where Hernández was being held and the ICE regional office in St. Albans, Vermont); Freese, supra note 7 (same); Abby Isaacs, *Dozens rally for freedom of 2 dairy farmers detained by ICE*, NBC5, June 23, 2017, *available at* http://www.mynbc5.com/article/dozens-rally-for-freedom-of-2-dairy-farmers-detained-by-ice/10216427 (describing June 23 rally at Vermont State House calling for release of Peche and Hernández); *see also* Katie Jickling, *Migrant Justice Cases Spark Protest at Boston Immigration Court*, SEVEN DAYS, Mar. 27, 2017, available at https://www.sevendaysvt.com/OffMessage/archives/2017/03/27/migrant-justice-cases-spark-protest-at-boston-immigration-court (noting that more than 200 letters were written in support of arrestees); Johnson, *supra* (noting that "Vermont's congressional delegation expressed "strong concerns" to federal immigration authorities over the recent arrests"); Valencia, *supra* (noting that more than 10,000 people signed a petition calling for arrestees' release).

primarily in the commercial interest of the requester."); 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged "for requests by educational institutions . . . or representatives of the news media"); *id.* § 5.11(k)(1) ("Records responsive to a request will be furnished without charge or at a charge reduced below that established under paragraph (c) of this section where a component determines, based on all available information, that the requester has demonstrated that (i) disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (ii) disclosure of the information is not primarily in the commercial interest of the requester."). As discussed below, federal agencies routinely grant such fee waivers for FOIA requests made by the ACLU for these reasons.

At a minimum, should a total fee waiver be denied, "fees should be limited to reasonable standard charges for document duplication" because the ACLU is a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

### A. Release of the requested records is in the public interest.

A fee waiver is appropriate if the records requested will contribute significantly to public understanding of the government's operations or activities and is not primarily in the Requesters' commercial interest. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "public understanding," that is, "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)–(iv). To determine whether disclosure of the requested information is in the requester's commercial interest, agencies consider: (i) whether the requester has a commercial interest that would be furthered by the requested disclosure; and (ii) whether the public interest is greater than any identified commercial interest in disclosure. All six of these considerations are satisfied here.

First, the records requested pertain directly to the operations and activities of the federal government (specifically, DHS and its sub-agencies, including ICE, CBP, and Border Patrol).

Second, this Request is "likely to contribute" to an understanding of government operations or activities, specifically by helping the public determine the nature and extent of DHS immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws. To the extent that agencies of the federal government are engaged in an effort to suppress the free speech of persons and organizations who advocate for fair and safe working conditions in agricultural industries, such information will be of great interest to the public. Finally, this information is not already in the public domain.

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject" of how DHS is conducting

10

immigration enforcement actions in Vermont. Among other things, Migrant Justice and the ACLU intend to publish responsive records and analyze specific documents to raise public awareness of DHS activities in Vermont. In addition, as representatives of the news media,[15] Requesters are entitled to the presumption that this consideration is satisfied. § 5.11(k)(2)(iii).

Finally, disclosure will contribute "significantly" to the public understanding of DHS activities in Vermont. As explained at length above,[16] the subject of DHS immigration enforcement activity in Vermont has garnered significant and sustained public and media attention, yet much remains unknown about this critical human rights issue. To Requesters' knowledge, the requested records are not already in the public domain. Requesters will ensure that disclosure will contribute significantly to the public understanding of these issues by reviewing and analyzing the records, and, depending on what the records reveal, synthesizing the information therein to make their import readily understandable to the public and making both the documents and the analyses publicly available on their web sites. In so doing, Requesters will help the public understand the nature and extent of DHS immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws. To the extent that agencies of the federal government are engaged in an effort to suppress the free speech of persons and organizations who advocate for fair and safe working conditions in agricultural industries, such information will be of great interest to the public.

Requesters have thus established, "with reasonable specificity[,] that [their] request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 107–109 (D.D.C. 2006).

**B. Disclosure of the information requested is not in Requesters' commercial interest.**
Disclosure of the information requested is not in the Requesters' commercial interest. 6 C.F.R. § 5.11(k)(3)(i)–(ii). Requesters are non-profit organizations, and any information obtained as a result of this FOIA request will be made available to the public at no cost. In addition, as representatives of the news media,[17] Requesters are entitled to the presumption that this consideration is satisfied. § 5.11(b)(6) ("A request for records that supports the news-dissemination function of [a representative of the news media] shall not be considered to be for a commercial use.").

Because the requested disclosure would not further *any* commercial interest of the Requesters, the disclosure is, by definition, not *primarily* in their commercial interest. In addition, because Requesters have satisfied the public interest standard and are representatives of

---

[15] *See infra* Part C.

[16] *See supra* nn. 13-14 and accompanying text.

[17] *See infra* Part C.

the news media, Requesters are entitled to the presumption that this factor is satisfied. *See* 6 C.F.R. § 5.11(k)(3)(ii).

For all these reasons, the Requesters are entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).

### C. The ACLU and Migrant Justice qualify as representatives of the news media.

The ACLU and Migrant Justice meet the statutory and regulatory definitions of a "representative of the news media" because each is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media"); *id.* § 522(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."); 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged "for requests by . . . representatives of the news media"); *see also, e.g.*, *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU and Migrant Justice are "representative[s] of the news media" for the same reasons that they are "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes); *ACLU v. Dep't of Justice*, 321 F. Supp. 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").[18] Various federal courts have held that the ACLU is a "representative of the news media." *See, e.g., Serv.*

---

[18] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU. In June 2011, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request submitted in December 2008. The Department of Justice granted a fee waiver to the ACLU with regard to the same FOIA request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The Department of Justice did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

12

*Women's Action Network v. Dep't of Defense*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011). Migrant Justice similarly gathers information and uses editorial and organizational skills to turn raw materials into informative presentations and written materials for its membership and allies and for the public at large. As discussed above, Migrant Justice disseminates an electronic newsletter, publishes regular informative posts to the public, and shares information with news media.

For the foregoing reasons, a fee waiver or limitation should be granted. A fee waiver would also fulfill Congress's legislative intent in amending FOIA, namely to ensure that the Act is liberally construed in favor of granting waivers for noncommercial requesters and to effectuate disclosure of documents of public importance. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act" (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992))).

At a minimum, should a total waiver be denied, fees should be "limited to reasonable standard charges for document duplication" because the ACLU and Migrant Justice are "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). In the event a fee waiver or reduction of costs is denied, please notify us in advance if the anticipated costs associated with this Request exceed $100.00.

***

Pursuant to the applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(d)(4).

We further expect your reply to the Request itself within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We reserve the right to appeal a decision to withhold any information or to deny expedited processing or a waiver of fees.

Please furnish all responsive records to:

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

13

lernst@acluvt.org
(802) 223-6304

Should you need to communicate with us regarding this request, please contact us by email at the addresses above.

Thank you in advance for your assistance.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont

14

# Exhibit C

Correspondence with Defendant
DHS regarding April FOIA
Request

# USPS Tracking® Results

FAQs › (http://faq.usps.com/?articleId=220900)

**Track Another Package +**

Remove ✕

**Tracking Number:** 70160910000161639017

▶        ▶        ▶        Delivered

**Updated Delivery Day:** Monday, May 1, 2017 ⓘ
## Product & Tracking Information

See Available Actions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **May 1, 2017, 7:42 am** | **Delivered, To Mail Room** ▲ | **WASHINGTON, DC 20528** |
| Your item has been delivered to the mail room at 7:42 am on May 1, 2017 in WASHINGTON, DC 20528. | | |
| April 30, 2017, 1:21 pm | Business Closed | WASHINGTON, DC 20528 |
| April 30, 2017, 10:38 am | Arrived at Hub | WASHINGTON, DC 20018 |
| April 26, 2017, 3:09 pm | USPS in possession of item | MONTPELIER, VT 05602 |

See More ⌄

## Available Actions

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**There's an easier way to track your packages.**

Why jump from page to page to track packages being sent to you? With My USPS™, you can easily track all your packages in one place. Sign up to:

- Set up automatic email and text alerts, so you'll never have to manually track a package again

- Provide delivery instructions, so your carrier knows where to leave packages

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

(https://www.usps.com/)

**HELPFUL LINKS**

Contact Us
(https://www.usps.com/help/welcome.htm)
Site Index (https://www.usps.com/globals/site-index.htm)
FAQs (http://faq.usps.com/)

**ON ABOUT.USPS.COM**

About USPS Home (http://about.usps.com/)
Newsroom
(http://about.usps.com/news/welcome.htm)
USPS Service Updates
(http://about.usps.com/news/service-alerts/welcome.htm)
Forms & Publications
(http://about.usps.com/forms-publications/welcome.htm)
Government Services
(https://www.usps.com/gov-services/gov-services.htm)
Careers
(http://about.usps.com/careers/welcome.htm)

**OTHER USPS SITES**

Business Customer Gateway
(https://gateway.usps.com/)
Postal Inspectors
(https://postalinspectors.uspis.gov/)
Inspector General (http://www.uspsoig.gov/)
Postal Explorer (http://pe.usps.gov/)
National Postal Museum
(http://www.postalmuseum.si.edu/)
Resources for Developers
(https://www.usps.com/webtools/welcome.htm)

**LEGAL INFORMATION**

Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm)
Terms of Use
(http://about.usps.com/termsofuse.htm)
FOIA (http://about.usps.com/who-we-are/foia/welcome.htm)
No FEAR Act EEO Data
(http://about.usps.com/who-we-are/no-fear-act/welcome.htm)

Copyright © 2017 USPS. All Rights Reserved.

 **(https://www.facebook.com/USPS?rf=108501355848630)**    **(https://twitter.com/usps)**

 **(http://www.pinterest.com/uspsstamps/)**    **(https://www.youtube.com/usps)**

# Exhibit D

Correspondence with Defendant DHS regarding July FOIA Request

8/2/2017                                    USPS.com® - USPS Tracking® Results

# USPS Tracking® Results

FAQs > (http://faq.usps.com/?articleId=220900)

**Track Another Package  +**

Remove ✕

**Tracking Number:** 70163010000017972329

▶            ▶            ▶      Delivered

**Updated Delivery Day:** Friday, July 21, 2017 ⓘ

## Product & Tracking Information

See Available Actions

**Postal Product:**                    **Features:**
First-Class Mail®                      Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **July 21, 2017, 10:41 am** | **Delivered, To Mail Room** ▲ | **WASHINGTON, DC 20528** |
| | Your item has been delivered to the mail room at 10:41 am on July 21, 2017 in WASHINGTON, DC 20528. | |
| July 21, 2017, 8:44 am | Arrived at Unit | WASHINGTON, DC 20018 |
| July 20, 2017, 9:04 am | In Transit to Destination | ON ITS WAY TO WASHINGTON, DC 20528 |
| July 18, 2017, 4:04 am | Departed USPS Regional Facility | BURLINGTON VT DISTRIBUTION CENTER |

See More ⌄

## Available Actions

| Text Updates | ⌄ |
|---|---|
| Email Updates | ⌄ |

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

001

**There's an easier way to track your packages.**

Why jump from page to page to track packages being sent to you? With My USPS™, you can easily track all your packages in one place. Sign up to:

- Set up automatic email and text alerts, so you'll never have to manually track a package again
- Provide delivery instructions, so your carrier knows where to leave packages

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

(https://www.usps.com/)

**HELPFUL LINKS**

Contact Us
(https://www.usps.com/help/welcome.htm)
Site Index (https://www.usps.com/globals/site-index.htm)
FAQs (http://faq.usps.com/)

**ON ABOUT.USPS.COM**

About USPS Home (http://about.usps.com/)
Newsroom
(http://about.usps.com/news/welcome.htm)
USPS Service Updates
(http://about.usps.com/news/service-alerts/welcome.htm)
Forms & Publications
(http://about.usps.com/forms-publications/welcome.htm)
Government Services
(https://www.usps.com/gov-services/gov-services.htm)
Careers
(http://about.usps.com/careers/welcome.htm)

**OTHER USPS SITES**

Business Customer Gateway
(https://gateway.usps.com/)
Postal Inspectors
(https://postalinspectors.uspis.gov/)
Inspector General (http://www.uspsoig.gov/)
Postal Explorer (http://pe.usps.gov/)
National Postal Museum
(http://www.postalmuseum.si.edu/)
Resources for Developers
(https://www.usps.com/webtools/welcome.htm)

**LEGAL INFORMATION**

Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm)
Terms of Use
(http://about.usps.com/termsofuse.htm)
FOIA (http://about.usps.com/who-we-are/foia/welcome.htm)
No FEAR Act EEO Data
(http://about.usps.com/who-we-are/no-fear-act/welcome.htm)

Copyright © 2017 USPS. All Rights Reserved.

 (https://www.facebook.com/USPS?rf=108501355848630)  (https://twitter.com/usps)

 (http://www.pinterest.com/uspsstamps/)  (https://www.youtube.com/usps)



**U.S. Department of Homeland Security**
Washington, DC 20528

# Homeland Security

*Privacy Office, Mail Stop 0655*

July 27, 2017

**SENT VIA E-MAIL TO: lernst@acluvt.org**

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

Re: **2017-HQFO-01065**

Dear Ms.Ernst:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated July 17, 2017, and seeking 1. all Records mentioning, referencing, relating to, or referring to Lorenzo Alcudia, Yesenia Hernández-Ramos, or Esau Peche-Ventura; 2. all Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign; 3. All Records created, sent, received, referenced, and/or used in fulfilling and/corresponding to any of the foregoing parts of this Request. Your request was received in this office on July 17, 2017.

After careful review of your FOIA request, we determined that your request is too broad in scope or did not specifically identify the records which you are seeking. Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency. For this reason, 6 C.F.R. Part 5 §5.3(b) of the DHS FOIA regulations require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort. Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the DHS component or office you believe created and/or controls the record. The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records.

Due to the subject matter of the request, since you submitted your request to ICE and CBP, our office defers to those components unless you can perfect your request with our office.

Please see attached link for information for the FOIA Offices here at DHS:
https://www.dhs.gov/foia-contact-information

Please resubmit your request containing a reasonable description of the records you are seeking. This is not a denial of your request. Upon receipt of a perfected request, you will be advised as to the status of your request. If we do not hear from you within 30 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.

Your request has been assigned reference number **2017-HQFO-01065**. Please refer to this identifier in any future correspondence. The status of your FOIA request is now available online and can be accessed at: https://www.dhs.gov/foia-status, by using this FOIA request number. Status information is updated daily. Alternatively, you can download the DHS eFOIA Mobile App, the free app is available for all Apple and Android devices. With the DHS eFOIA Mobile App, you can submit FOIA requests or check the status of requests, access all of the content on the FOIA website, and receive updates anyplace, anytime.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or at 202-343-1743.

Sincerely,
/s/

Maura Busch
FOIA Program Specialist



August 10, 2017

Department of Homeland Security
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
*Sent via email to foia@dhs.gov; foia@hq.dhs.gov*

**Re: DHS FOIA Reference Number 2017-HQFO-01065**

To Whom It May Concern:

On behalf of the American Civil Liberties Union Foundation of Vermont, Migrant Justice, and Matt Cameron, we write in response to an email dated July 27, 2017, regarding the above-referenced FOIA request to the Department of Homeland Security ("DHS"). That July 27 email states in relevant part that our FOIA request "is too broad in scope or did not specifically identify the records which [we] are seeking." The email goes on to state that, "[w]henever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the DHS component or office you believe created and/or controls the record" (emphasis in original). The email asks that we provide a "reasonable description" of the records sought "within 30 days from the date of this letter," lest DHS "assume" that we "are no longer interested in this FOIA request, and the case will be administratively closed." Although we believe that we already *have* reasonably described the records we seek, we write to provide additional specification in a good-faith attempt to avoid needless litigation.

As a threshold matter, we note that DHS's July 27 email failed to comply with the agency's own obligation under 6 C.F.R. § 5.3(b). That provision states in relevant part that, "[i]f after receiving a request, a component determines that it does not reasonably describe the records sought, the component should inform the requester what additional information is needed or why the request is otherwise insufficient." DHS's July 27 email informs us of neither "what additional information is needed," nor "why the request is otherwise insufficient." 6 C.F.R. § 5.3(b). Instead, the email states, in wholly conclusory fashion, that "[a]fter careful review of your FOIA request, we determined that your request is too broad in scope or did not specifically identify the records which you are seeking." The boilerplate nature of DHS's email—and the use of the

disjunctive "or," in particular—means that we can only speculate why DHS believes our request does not reasonably describe the records sought, and that DHS has failed to discharge its duty under 6 C.F.R. § 5.3(b). *See, e.g., Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995); *Immigrant Def. Project v. ICE*, 208 F. Supp. 3d 520, 532 (S.D.N.Y. 2016); *Hall v. EPA*, 83 F. Supp. 3d 92, 102-03 (D.D.C. 2015).

Notwithstanding the deficiencies in DHS's July 27 email and our belief that we have already reasonably described the records we seek, below we provide additional clarification regarding portions of our request.

**Item #1** of our request seeks "All Records mentioning, referencing, relating to, or referring to Lorenzo Alcudia, Yesenia Hernández-Ramos, or Esau Peche-Ventura."

> We believe this request reasonably describes the records we seek, but we nevertheless hereby limit the timeframe associated with this request to January 1, 2015, through the time DHS conducts an adequate search for the records sought.

**Item #2** of our request seeks "All Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign."

> We believe this request reasonably describes the records we seek, and we are unaware of how it could be more specific.

**Item #3** of our request seeks "All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request."

> We believe this request reasonably describes the records we seek, and we are unaware of how it could be more specific.

Finally, we clarify that we are requesting that DHS search for responsive records that are in the custody or control of, or were sent or received by, individuals at the Department level. As noted in DHS's July 27 email, we have already sent identical FOIA requests to the components most likely to also have responsive records, Immigration and Customs Enforcement and Customs and Border Patrol. We are not requesting that DHS query those or any other components.

We trust that the foregoing adequately addresses any questions DHS may have had regarding the records we seek, and that DHS will not further delay the processing of our request. At your earliest convenience, please let us know when we can expect to receive the requested records.

2

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
lernst@acluvt.org

3

## lernst@acluvt.org

| | |
|---|---|
| **From:** | Busch, Maura <Maura.Busch@HQ.DHS.GOV> |
| **Sent:** | Monday, August 14, 2017 8:45 |
| **To:** | lernst@acluvt.org |
| **Cc:** | Washington, Angela |
| **Subject:** | Department of Homeland Security FOIA 2017-HQFO-01065 Acknowledgment |
| **Attachments:** | 2017-08-10 DHS FOIA clarification letter.pdf |

Good morning Lisa,

Our office received your correspondence attached.

We do not have a central index to search for names here at HQ only the component offices have databases, including I & A.

Please let me know if you have any questions.

Thanks,

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
Main: 1.866.431.0486
Direct: (202) 570-2018
Fax: (202) 343-4011
Visit our  FOIA website

**From:** FOIA
**Sent:** Friday, August 11, 2017 10:02 AM
**To:** Busch, Maura <Maura.Busch@HQ.DHS.GOV>
**Subject:** FW: Department of Homeland Security FOIA 2017-HQFO-01065 Acknowledgment

Good Morning Maura,

Not sure if you are handling this one still, but this is their response to the ack Letter. L et me know

Harry

**From:** lernst@acluvt.org [mailto:lernst@acluvt.org]
**Sent:** Thursday, August 10, 2017 4:06 PM
**To:** FOIA <FOIA@HQ.DHS.GOV>; FOIA <FOIA@HQ.DHS.GOV>
**Subject:** RE: Department of Homeland Security FOIA 2017-HQFO-01065 Acknowledgment

Good afternoon,

Please find attached our response to your request for more information about FOIA request 2017-HQFO-01065.

Sincerely,

1

Lia Ernst

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304


**From:** US DHS Privacy Office [mailto:foia@hq.dhs.gov]
**Sent:** Thursday, July 27, 2017 11:25
**To:** lernst@acluvt.org
**Subject:** Department of Homeland Security FOIA 2017-HQFO-01065 Acknowledgment


Good Morning,

Attached is our acknowledgment of your DHS FOIA request.  If you need to contact this office again
concerning your request, please provide the DHS reference number. This will enable us to quickly retrieve the
information you are seeking and reduce our response time. This office can be reached at 866-431-0486.

Regards,

DHS Privacy Office
Disclosure & FOIA Program
STOP 0655
Department of Homeland Security
245 Murray Drive, SW
Washington, DC 20528-0655
Telephone:  1-866-431-0486 or 202-343-1743
Fax:  202-343-4011
Visit our FOIA website

**U.S. Department of Homeland Security**
Washington, DC 20528



# Homeland
# Security

*Privacy Office, Mail Stop 0655*

August 22, 2017

**SENT VIA E-MAIL TO:  lernst@acluvt.org**

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

Re: **2017-HQFO-01065**

Dear Ms. Ernst:

This is in further response to your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), dated July 17, 2017, and seeking 1. all Records
mentioning, referencing, relating to, or referring to Lorenzo Alcudia, Yesenia Hernández-Ramos,
or Esau Peche-Ventura; 2. all Records from September 1, 2011, to December 31, 2011, and from
January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to
Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or
mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS
or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the
Milk with Dignity campaign; 3. All Records created, sent, received, referenced, and/or used in
fulfilling and/corresponding to any of the foregoing parts of this Request.  Your request was
received in this office on July 17, 2017 and was submitted to ICE and CBP.

After careful review of your FOIA request, we determined that your request is too broad in scope
or did not specifically identify the records which you are seeking.  Records must be described in
reasonably sufficient detail to enable government employees who are familiar with the subject
area to locate records without placing an unreasonable burden upon the agency.  For this reason,
6 C.F.R. Part 5 §5.3(b) of the DHS FOIA regulations require that you describe the records you
are seeking with as much information as possible to ensure that our search can locate them with a
reasonable amount of effort.  Whenever possible, a request should include specific information
about each record sought, such as the date, title or name, author, recipients, and subject matter of
the records, if known, or the DHS component or office you believe created and/or controls the
record.  The FOIA does not require an agency to create new records, answer questions posed by
requesters, or attempt to interpret a request that does not identify specific records.

Due to the subject matter of the request, since you submitted your request to ICE and CBP, our
office defers to those components unless you can perfect your request with our office.

We received your letter of August 10, 2017. Please be advised that DHS does not maintain a central index of records about individuals. For this reason, § 5.21(b) of the DHS Privacy Act regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search of appropriate systems of records can find them with a reasonable amount of effort. The offices such as CBP and ICE have databases and are the proper components to search for information about individuals, unless you want immigration records which may be located at USCIS.

Please see attached link for information for the FOIA Offices here at DHS:
https://www.dhs.gov/foia-contact-information

Please resubmit your request containing a reasonable description of the records you are seeking. This is not a denial of your request. Upon receipt of a perfected request, you will be advised as to the status of your request. If we do not hear from you within 30 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.

Your request has been assigned reference number **2017-HQFO-01065**. Please refer to this identifier in any future correspondence. The status of your FOIA request is now available online and can be accessed at: https://www.dhs.gov/foia-status, by using this FOIA request number. Status information is updated daily. Alternatively, you can download the DHS eFOIA Mobile App, the free app is available for all Apple and Android devices. With the DHS eFOIA Mobile App, you can submit FOIA requests or check the status of requests, access all of the content on the FOIA website, and receive updates anyplace, anytime.

If you have any questions, or would like to discuss this matter, please feel free to contact this office at 1-866-431-0486 or at 202-343-1743.

Sincerely,
/s/

Maura Busch
FOIA Program Specialist

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | foia@hq.dhs.gov |
| **Sent:** | Tuesday, August 22, 2017 9:37 |
| **To:** | lernst@acluvt.org |
| **Subject:** | response |
| **Attachments:** | Still NMI1.Docx |



September 14, 2017

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
*Sent via email to Maura.Busch@hq.dhs.gov; carbon copy to angela.washington@hq.dhs.gov;*
*foia@dhs.gov; foia@hq.dhs.gov*

**Re: DHS FOIA Reference Number 2017-HQFO-01065**

Dear Ms. Busch:

On behalf of the American Civil Liberties Union Foundation of Vermont, Migrant Justice, and Matt Cameron, I write in response to your email dated August 14, 2017, and letter dated August 22, 2017. Our letter of August 10, 2017, clarified that, because we have also sent identical FOIA requests to ICE and CBP, we are not requesting that DHS conduct a duplicative query of those components and instead are requesting that DHS search for responsive records that are in the custody or control of, or were sent or received by, individuals at the Department level. In your August 22 letter, you stated:

> DHS does not maintain a central index of records about individuals. For this reason, § 5.21(b) of the DHS Privacy Act regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search of appropriate systems of records can find them with a reasonable amount of effort. The offices such as CBP and ICE have databases and are the proper components to search for information about individuals, unless you want immigration records which may be located at USCIS.

Your response misapprehends and ignores substantial portions of our FOIA request.

First, your references to "a central index of records about individuals" and "immigration records which may be located at USCIS" suggest that you understand our request to be for a limited search akin to what is performed when individuals request their own A-file. But Item #1 does not request simply a search within a centralized name database. Instead, it is a request for records in

any department-level custodian's possession or control that mention, refer to, relate to, or reference the three named individuals. That request cannot be satisfied by searches based on component-level names indexes.

Second, your response ignores entirely Items #2 and 3 in our request, which do not seek records relating or referring to specific, identified individuals. In part, Item #2 seeks records within a defined time period mentioning or referencing specific words or phrases, and Item #3 seeks all records created, referenced, or used in fulfilling or responding to our request. Records responsive to these requests would plainly not be confined to component-level central indexes of records about individuals, nor would a search only in such indexes constitute an adequate search.

As we stated in our August 10 clarification letter, we believe that our FOIA request reasonably described the records sought, but we nevertheless provided additional specification in a good-faith attempt to avoid needless litigation. We therefore consider our FOIA request to have been perfected, at the absolute latest, by August 10, 2017. We trust that the foregoing, along with our July FOIA request and August clarification letter, adequately address any questions DHS may have had regarding the records we seek, and that DHS will not further delay the processing of our request. At your earliest convenience, please let us know when we can expect to receive the requested records.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
lernst@acluvt.org

2

## lernst@acluvt.org

| From: | lernst@acluvt.org |
|---|---|
| Sent: | Thursday, September 14, 2017 11:13 |
| To: | 'maura.busch@hq.dhs.gov' |
| Cc: | 'foia@dhs.gov'; 'US DHS Privacy Office'; 'angela.washington@hq.dhs.gov' |
| Subject: | RE: response (2017-HQFO-01065) |
| Attachments: | 2017-09-14 DHS second clarification letter.pdf |

Good morning,

Please find attached our response to your letter of August 22, 2017, regarding FOIA request 2017-HQFO-01065.

Thank you,
Lia

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

**From:** foia@hq.dhs.gov [mailto:foia@hq.dhs.gov]
**Sent:** Tuesday, August 22, 2017 9:37
**To:** lernst@acluvt.org
**Subject:** response

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | Busch, Maura <Maura.Busch@HQ.DHS.GOV> |
| **Sent:** | Monday, September 18, 2017 12:16 |
| **To:** | lernst@acluvt.org |
| **Cc:** | Washington, Angela |
| **Subject:** | Reply to response (2017-HQFO-01065) |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Good morning Lia,

This confirms our receipt of your correspondence concerning your request.

Please advise if you are available to speak to me on the phone tomorrow at 1PM and if not tomorrow then we can look for a time on Weds. Afternoon.

Thanks and I look forward to speaking with you.

V/R,

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
Main: 1.866.431.0486
Direct: (202) 570-2018
Fax: (202) 343-4011
Visit our   FOIA website

**From:** lernst@acluvt.org [mailto:lernst@acluvt.org]
**Sent:** Thursday, September 14, 2017 11:13 AM
**To:** Busch, Maura <Maura.Busch@HQ.DHS.GOV>
**Cc:** FOIA <FOIA@HQ.DHS.GOV>; FOIA <FOIA@HQ.DHS.GOV>; Washington, Angela <angela.washington@HQ.DHS.GOV>
**Subject:** RE: response (2017-HQFO-01065)

Good morning,

Please find attached our response to your letter of August 22, 2017, regarding FOIA request 2017-HQFO-01065.

Thank you,
Lia

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

1

016

**From:** foia@hq.dhs.gov [mailto:foia@hq.dhs.gov]
**Sent:** Tuesday, August 22, 2017 9:37
**To:** lernst@acluvt.org
**Subject:** response

017

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | Busch, Maura <Maura.Busch@HQ.DHS.GOV> |
| **Sent:** | Wednesday, September 20, 2017 16:26 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Reach back on request (2017-HQFO-01065) |

Hello Lia,

Thank you for the call back yesterday.

Until I speak with our FOIA counterparts regarding your request for information cited in **item two** of your request, it is premature to draft any sort of CIO email search.

I reached out to ICE and our CRCL office today to find out if they are aware of any offices **here at HQ** had any involvement with that group or that campaign referenced in your request (the dates go back to 2011 and 2015) as well as whether any civil rights **complaints** were filed with the CRCL Compliance Office.

We will reach back as soon as we have input from these offices.

Thanks,

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
Main: 1.866.431.0486
Direct: (202) 570-2018
Fax: (202) 343-4011
Visit our  FOIA website

**From:** lernst@acluvt.org [mailto:lernst@acluvt.org]
**Sent:** Tuesday, September 19, 2017 9:50 AM
**To:** Busch, Maura <Maura.Busch@HQ.DHS.GOV>
**Cc:** Washington, Angela <angela.washington@HQ.DHS.GOV>
**Subject:** RE: Reply to response (2017-HQFO-01065)

Good morning, Maura,

Thank you for your message. I am not available for a call this afternoon, but would any time between noon and 2pm or 3pm and 4pm work for you tomorrow (Wednesday)? There will likely be a couple of other attorneys on the call; are you able to set up a phone conference?

Best,
Lia

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277

018

Montpelier, VT 05601
802-223-6304

*Not a member? Click here to join.*
*Like to donate? Do it now!*
*Follow us @ acluvt.org | facebook.com/ACLU-Vermont | twitter.com/ACLU_VT*

**From:** Busch, Maura [mailto:Maura.Busch@HQ.DHS.GOV]
**Sent:** Monday, September 18, 2017 12:16
**To:** lernst@acluvt.org
**Cc:** Washington, Angela
**Subject:** Reply to response (2017-HQFO-01065)

Good morning Lia,

This confirms our receipt of your correspondence concerning your request.

Please advise if you are available to speak to me on the phone tomorrow at 1PM and if not tomorrow then we can look for a time on Weds. Afternoon.

Thanks and I look forward to speaking with you.

V/R,

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
Main: 1.866.431.0486
Direct: (202) 570-2018
Fax: (202) 343-4011
Visit our  FOIA website

**From:** lernst@acluvt.org [mailto:lernst@acluvt.org]
**Sent:** Thursday, September 14, 2017 11:13 AM
**To:** Busch, Maura <Maura.Busch@HQ.DHS.GOV>
**Cc:** FOIA <FOIA@HQ.DHS.GOV>; FOIA <FOIA@HQ.DHS.GOV>; Washington, Angela <angela.washington@HQ.DHS.GOV>
**Subject:** RE: response (2017-HQFO-01065)

Good morning,

Please find attached our response to your letter of August 22, 2017, regarding FOIA request 2017-HQFO-01065.

Thank you,
Lia

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

**From:** foia@hq.dhs.gov [mailto:foia@hq.dhs.gov]
**Sent:** Tuesday, August 22, 2017 9:37
**To:** lernst@acluvt.org
**Subject:** response

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | Busch, Maura <Maura.Busch@HQ.DHS.GOV> |
| **Sent:** | Thursday, September 21, 2017 7:20 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Another request to PRIV about ICE and Vt |

Lia I came across this info below while working on another request ....maybe similar to your request not sure

On March 15, 2017, **Taylor Dobbs**, a reporter with *MuckRock* in Somerville, Massachusetts, requested the following from U.S. Immigration and Customs Enforcement (ICE): (1) documents recording expenses incurred since January 1, 2012 for Enforcement and Removal Operations taking place fully or partially in the state of Vermont; including but not limited to, estimates of spending for specific enforcement operations or removals, overtime payments to Immigrations and Customs Enforcement officers working in Vermont, and (2) annual and/or quarterly budget documents for the entire Enforcement and Removal Operations Boston Field Office. (Case Number ICE 2017-ICFO-27393)

Maura Busch
Government Information Specialist
Privacy Office
U.S. Department of Homeland Security
Main: 1.866.431.0486
Direct: (202) 570-2018
Fax: (202) 343-4011
Visit our  FOIA website

021

U.S. Department of Homeland Security
Washington, DC 20528



Homeland
Security

September 28, 2017

*Privacy Office. Mail Stop 0655*

**SENT VIA E-MAIL TO: lernst@acluvt.org**

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

Re: **2017-HQFO-01065**

Dear Ms. Ernst:

This is the electronic final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated July 17, 2017, and received by this office on July 17, 2017. You are seeking

1. All records mentioning, referencing, relating to, or referring to Lorenzo Alcudia, Yesenia Hernández-Ramos, or Esau Peche-Ventura;

2. All records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign; and

3. All records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this request.

You also submitted your request to CBP and ICE who are processing your requests.
In our letter to you dated July 27, 2017, we advised you that your request was unperfected for several reasons, and that we defer to ICE and CBP.

In our second letter dated August 22, 2017, we advised you that your request was still unperfected and due to the subject matter of the request, ICE and CBP are the proper offices at DHS to search for records. Our office defers to those components unless you can perfect your request with our office.

022

Although our office still deems your request as unperfected, as a courtesy, we conducted a comprehensive search of files within the Office of Civil Rights and Civil Liberties (CRCL) for records that would be responsive to your as they receive complaints relating to civil rights violations. We also conducted a search of the Enterprise Correspondence Tracking (ECT) system. Unfortunately, we were unable to locate or identify any responsive records.

While an adequate search was conducted, you have the right to appeal this determination that no records exist within CRCL and ECT that would be responsive to your request. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to: Privacy Office, Attn: FOIA Appeals, U.S. Department of Homeland Security, 245 Murray Lane, SW, Mail Stop 0655, Washington, D.C. 20528-0655, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.8. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS FOIA regulations are available at www.dhs.gov/foia.

If you need any further assistance or would like to discuss any aspect of your request, please contact the analyst below who processed your request and refer to **2017-HQFO-01065**. You may send an e-mail to foia@hq.dhs.gov, call 202-343-1743 or toll free 1-866-431-0486, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Provisions of FOIA allow DHS to charge for processing fees, up to $25, unless you seek a waiver of fees. In this instance, because the cost is below the $25 minimum, there is no charge.

Sincerely,
/s/

Maura Busch
Government Information Specialist

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | foia@hq.dhs.gov |
| **Sent:** | Thursday, September 28, 2017 12:02 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Department of Homeland Security FOIA 2017-HQFO-01065 Final Response |
| **Attachments:** | Final - Denial - No Records Response1.Docx |

Good Morning,

Attached is our final response to your request.  If you need to contact this office again concerning your request, please provide the DHS reference number. This will enable us to quickly retrieve the information you are seeking and reduce our response time. This office can be reached at 866-431-0486.

Regards,

DHS Privacy Office
Disclosure & FOIA Program
STOP 0655
Department of Homeland Security
245 Murray Drive, SW
Washington, DC 20528-0655
Telephone:  1-866-431-0486 or 202-343-1743
Fax:  202-343-4011
Visit our FOIA website

024



AMERICAN CIVIL LIBERTIES UNION
FOUNDATION of VERMONT

October 6, 2017

Privacy Office
Attn: FOIA Appeals
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0655
Washington, D.C. 20528-0655
*VIA CERTIFIED U.S. MAIL*

Re:    Freedom of Information Act Appeal
       Request 2017-HQFO-01065
       Migrant Justice, American Civil Liberties Union Foundation of Vermont, Matt Cameron

Dear FOIA Appeals Division of the Privacy Office:

        Pursuant to 5 U.S.C. § 552(a)(6) and 6 C.F.R. § 5.8(a)(1), this letter appeals the
September 28, 2017, response of the U.S. Department of Homeland Security to Freedom of
Information Act ("FOIA") request No. 2017-HQFO-01065. Copies of the original request and
related correspondence are attached to this letter.

        Migrant Justice, the American Civil Liberties Union Foundation of Vermont, and Matt
Cameron (collectively, "Requesters") submitted the original FOIA request on July 17, 2017, via
electronic and certified United States mail. *See* Ex. A ("July FOIA Request" or "FOIA
Request"). This FOIA Request sought records pertaining to DHS and its components'
immigration enforcement actions in the state of Vermont including, in summary: (a) records
relating to three Migrant Justice members who had been arrested by or were in the custody of
DHS or its components; (b) records from September 1, 2011, through December 31, 2011, and
from January 1, 2015, through March 31, 2015, relating to Migrant Justice or the Milk with
Dignity campaign, or individuals known or suspected by DHS or its sub-agencies of being
affiliated or associated with Migrant Justice or the Milk with Dignity campaign; and (c) records
related to the processing of the FOIA Request. Please see the attached FOIA Request for a
detailed description of the requested records. *See* Ex. A at 4-5.

        On July 27, 2017, Requesters received a letter acknowledging DHS's receipt of the FOIA
Request on July 17, 2017, assigning it Reference Number 2017-HQFO-01065, stating the DHS
had "determined that your request is too broad in scope or did not specifically identify the
records which you are seeking," and asking Requesters to resubmit their request "containing a

reasonable description of the records you are seeking." *See* Ex. B (correspondence with DHS) at 001-002. On August 10, 2017, Requesters timely sent their response to DHS's request for clarification. *See* Ex. B at 003-005. Requesters noted that the request reasonably described the records sought, but nevertheless limited the first item—records regarding three named individuals—to records between January 1, 2015, through the time DHS conducts an adequate search. Requesters also clarified that, because they had sent identical FOIA requests to CBP and ICE, they were not requesting that DHS conduct a duplicative query of those components and instead were requesting that DHS search for responsive records that were in the custody or control of, or were sent or received by, individuals at the Department level.

On August 14, 2017, Requesters received an email from DHS stating that DHS does "not have a central index to search for names here at HQ only the component offices have databases, including I & A." *See* Ex. B at 006-007. On August 22, 2017, Requesters received an additional letter from DHS reiterating that DHS does not maintain a central index of records about individuals and asking Requesters to resubmit the request with a reasonable description of the records sought. *See* Ex. B at 008-009. On September 14, 2017, Requesters responded by email to DHS correcting what they believed to be misapprehensions about the FOIA Request and stating that they believe that the FOIA Request reasonably described the records sought and that they considered the FOIA Request to have been perfected, at the latest, by August 10, 2017. *See* Ex. B at 010-011.

On September 19, 2017, Maura Busch, Government Information Specialist in the DHS Privacy Office, stated during a telephone conversation with counsel for the Requesters that DHS needed to know which offices or individuals at Headquarters would be most likely to have responsive records and that she would send a sample request showing how such a search could be constructed. On September 20, 2017, Requesters received an electronic message from Ms. Busch stating, "Until I speak with our FOIA counterparts regarding your request for information cited in **item two** of your request, it is premature to draft any sort of CIO email search," and "I reached out to ICE and our CRCL office today to find out if they are aware of any offices **here at HQ** had any involvement with that group or that campaign referenced in your request (the dates go back to 2011 and 2015) as well as whether any civil rights **complaints** were filed with the CRCL Compliance Office." *See* Ex. B at 012-014. On September 21, 2017, Requesters received an electronic message from Ms. Busch with a description of a request for records regarding ICE enforcement activities from a different requester. *See* Ex. B at 015.

On September 28, 2017, after more than thirty business days had elapsed, *see* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agencies to respond to FOIA requests and notify requesters whether or not they will comply with the request within 20 business days of receiving the request), § 552(a)(6)(B) (allowing, in "unusual circumstances," agencies to extend the time for making such a determination by up to ten working days), Requesters received a final response from DHS denying the July FOIA Request. In its denial letter, DHS stated that it conducted a search of files in the Office of Civil Rights and Civil Liberties (CRCL) and a search of the Enterprise Correspondence Tracking (ECT) system and did not locate any responsive records. *See* Ex. B at 016-017.

2

I.    **DHS Has Failed to Meet Its Burden to Show That It Fully Responded to the Request or Adequately Searched for Responsive Records**

Requesters appeal DHS's response as inadequate because DHS has failed to show that it has adequately searched for responsive documents. *See* 6 C.F.R. § 5.8(a)(1).

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation and internal quotation marks omitted). "'[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" 21 F. Supp. 3d 60, 70 (D.D.C. 2014) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

It appears from the response that DHS searched CRCL for responsive documents, but it is unclear which other DHS sub-agencies, if any, were searched. To the extent that the CRCL was the only sub-agency searched, such a search would be inadequate to respond to the FOIA Request. In addition, to the extent that the Enterprise Correspondence Tracking (ECT) system was the only source searched in response to the FOIA Request, such a search would be inadequate even as to CRCL. In addition, DHS did not explain how it performed its search or identify any search terms it employed. Finally, in its September 20 letter, DHS indicated that it had corresponded with other DHS officials and offices regarding the FOIA Request, yet DHS produced no records responsive to item 3 of the Request, which seeks "[a]ll Records created, sent, received, referenced, and/or used in fulfilling and/or responding to" the Request. For all of these reasons, DHS has not discharged its obligation to "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325.

DHS must reevaluate what offices, databases, and files it chose to search, conduct a thorough search within each office, and disclose responsive records it subsequently finds.

II.   **DHS Failed to Respond within the Statutory Time Limits and Failed to Respond to the Request for Expedited Processing**

DHS acknowledged that the agency received the FOIA Request on July 17, 2017. *See* Ex. B at 001. DHS did not respond to the FOIA Request until September 28, 2017, well in excess of the 20 days stipulated by 5 U.S.C. § 552(a)(6)(A)(i) or 10 additional days provided by 5 U.S.C. § 552(a)(6)(B). DHS failed to respond to the FOIA Request within the statutory time limits.

Requesters also sought expedited processing for their FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(E)(i), (v)(II), and 6 C.F.R. § 5.5(e)(1)(i)-(ii), which provide for expedited processing of requests in cases where a compelling need exists. Requesters explained that Requesters Migrant Justice and the American Civil Liberties Union Foundation of Vermont are primarily engaged in disseminating information and that the information was needed because there was an

urgency to inform the public about immigration enforcement activity that targeted individuals for their political activity and speech. Additionally, Requester Matt Cameron urgently needs the records to represent Ms. Hernández-Ramos and Mr. Peche-Ventura and fully protect their due process rights in their Immigration Court proceedings.

DHS failed to respond to the request for expedited processing, in violation of 5 U.S.C. § 552(a)(6)(E)(ii) and 6 C.F.R. § 5.5.(e)(4), which required that DHS notify Requesters of its decision whether to grant or deny expedited processing.

## III.  DHS Failed to Respond to the Request for a Fee Wavier

The FOIA Request also sought a fee waiver and a waiver of processing (search and review) fees on the grounds that disclosure of the records is in the public interest because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the Requesters' commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(iii); 6 C.F.R. § 5.11(d)(1), (k)(1), (k)(2).

Migrant Justice and the American Civil Liberties Union Foundation of Vermont are non-profit entities and have no commercial interest in the records requested, which are crucial to the public's understanding of DHS's operations. Migrant Justice and the American Civil Liberties Union Foundation of Vermont also qualify for a fee waiver as representatives of the news media.

DHS failed to respond to the request for a fee waiver, violating Requesters rights to a fee waiver and DHS's own regulations. *See* 5 U.S.C. § 5523(a)(4)(A)(iii); 6 C.F.R. § 5.11(k).

Requesters respectfully request that DHS conduct an adequate search, disclose all responsive records, and grant their fee waiver in an expeditious manner. In the event that DHS reaches an adverse determination regarding the FOIA Request or this appeal, Requesters request a complete list of documents covered by the FOIA Request and a specific indication of and a justification of any records withheld, the failure to respond to the request for expedited processing, and any denial of the fee waiver.

Requesters expect a response to this appeal within 20 working days, as required by 5 U.S.C. § 552(a)(6)(A)(ii).

Please contact Lia Ernst by email at lernst@acluvt.org on behalf of Requesters if you require any further information or if you have any questions related to this matter.

Sincerely,


Lia Ernst
Staff Attorney
ACLU Foundation of Vermont

4

## Tracking Number:

70170530000083667942

## Expected Delivery on

**MONDAY**
**16** OCTOBER 2017    by
**8:00pm**

### Delivered

October 16, 2017 at 8:02 am
DELIVERED, TO MAIL ROOM
WASHINGTON, DC 20528

## Tracking History

## Tracking History

**October 16, 2017, 8:02 am**
Delivered, To Mail Room
WASHINGTON, DC 20528
Your item has been delivered to the mail room at 8:02 am on October 16, 2017 in WASHINGTON, DC 20528.

**October 15, 2017, 1:03 pm**
Business Closed
WASHINGTON, DC 20528

**October 15, 2017, 12:58 pm**
Arrived at Hub
WASHINGTON, DC 20018

**October 13, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20528

**October 12, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20528

**October 11, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20528

**October 10, 2017, 10:08 pm**
Departed USPS Regional Origin Facility
BURLINGTON VT DISTRIBUTION CENTER

**October 10, 2017, 9:17 am**
In Transit to Destination
029

On its way to WASHINGTON, DC 20528

**October 9, 2017, 9:54 am**
In Transit to Destination
On its way to WASHINGTON, DC 20528

**October 8, 2017, 9:54 am**
In Transit to Destination
On its way to WASHINGTON, DC 20528

**October 6, 2017, 9:49 pm**
Arrived at USPS Regional Origin Facility
BURLINGTON VT DISTRIBUTION CENTER

**October 6, 2017, 6:49 pm**
Departed Post Office
MONTPELIER, VT 05602

**October 6, 2017, 4:22 pm**
USPS in possession of item
MONTPELIER, VT 05602

# Exhibit E

Correspondence with Defendant
ICE regarding April FOIA
Request

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | ICE-FOIA <ICE-FOIA@ice.dhs.gov> |
| **Sent:** | Wednesday, April 26, 2017 15:26 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Automatic reply: FOIA request |

ICE has received the information you submitted to the ICE-FOIA@dhs.gov mailbox.

If you are submitting a FOIA request, this courtesy reply does not replace the Acknowledgement Letter which will be sent to you once your request has been entered into our FOIA Request Tracking System.

If you are seeking the status of a pending FOIA request for which you have a FOIA case number, you may check the status of your request online at www.ice.gov/foia/status/.

Please visit the ICE FOIA Library at www.ice.gov/foia/library/.

As this reply is automatically generated, please do not respond to this notification.

## lernst@acluvt.org

| | |
|---|---|
| **From:** | US DHS Immigration and Customs Enforcement FOIA Office <ice-foia@dhs.gov> |
| **Sent:** | Thursday, April 27, 2017 16:57 |
| **To:** | lernst@acluvt.org |
| **Subject:** | ICE FOIA Request 2017-ICFO-25680 |

April 27, 2017

LIA ERNST
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

**RE:   ICE FOIA Case Number 2017-ICFO-25680**

Dear ERNST:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated April 26, 2017, and to your request for expedited treatment and a waiver of all assessable FOIA fees. Your request was received in this office on April 26, 2017. Specifically, you requested Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. See request for further details.

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii).  Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3).

**ADD ONE OF THE FOLLOWING REASONS**:
Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You have not established t lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual.  While you may be primarily engag in the dissemination of information, you have not detailed with specificity why you feel there is an urgency to inform the public about Vermont diary.  Qualifying urgency would need to exceed the public's right to know about government activity generally.  You also did not offer sufficient supporting evidence of an interest of the public t greater than the public's general interest in Vermont dairy.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

As it pertains to your request for a fee waiver, after thoroughly reviewing your letter, ICE has determined that you have not presented a convincing argument that ACLU Foundation of Vermont is entitled to a blanket waiver of applicable fees.

The DHS FOIA Regulations at 6 CFR § 5.11(k)(2) set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met.  We will consider these factors in our evaluation of your request for a fee waiver:

> (1) Whether the subject of the requested records concerns "the operations or activities of the government";
>
> (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
>
> (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons;
>
> (4) Whether the contribution to public understanding of government operations or activities will be "significant";

1

002

(5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

(6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under FOIA of showing that the fee waiver requirements have been met. Based on my review of your April 26, 2017 letter and for the reasons stated herein, I have determined that your fee waiver request is deficient because your request has failed to satisfy factors 4, 5, and 6. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the FOIA allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requesters. As a non-commercial requester, you will be charged 10 cents per page for duplication; the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher. We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

If you are not satisfied with the response to this request, you have the right to appeal following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter, to:

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, please contact FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Your request has been assigned reference number **2017-ICFO-25680**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number.

Regards,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia



May 23, 2017

U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
U.S. Department of Homeland Security
500 12th Street, S.W., Mail Stop 5900
Washington, D.C. 20536-5900
*VIA CERTIFIED U.S. MAIL*

> **Re:**   ***Freedom of Information Act Appeal of Denial of Expedited Processing and Fee
> Waiver; Case No. 2017-ICFO-25680***

To Whom This May Concern:

The American Civil Liberties Union Foundation of Vermont, Migrant Justice, and Matt
Cameron (collectively, "Requesters") appeal the determination of U.S. Immigration and Customs
Enforcement ("ICE") to deny both expedited processing and a fee waiver in connection with
FOIA request 2017-ICFO-25860.[1] Requesters filed the request on April 26, 2017, seeking
information about ICE and Border Patrol immigration enforcement operations in Vermont.
Specifically, Requesters seek to expose what appear to be targeted, retaliatory arrests of at least
five prominent members of Migrant Justice, a community-based organization, made up of
Vermont dairy farm workers and their families, that advocates for human rights and food justice.

On April 27, 2017, ICE denied our requests for expedited processing and a fee waiver.
The expedited processing denial contained no findings, but instead recited the requirements for
granting expedited processing and labeled our request "conclusory." Moreover, this denial
mistakenly stated that the purpose of our request was to inform the public about "Vermont diary"
[sic] or "Vermont dairy." In fact, as our request made clear, our purpose is to inform the public
about immigration enforcement actions that appear to be politically motivated retaliation against
advocacy for civil and human rights – a matter of pressing and urgent public concern. The fee
waiver denial recited the six requirements for granting a fee waiver and labeled our request
"deficient" for failing to satisfy three out of the six requirements without any analysis or
explanation. The fee waiver denial did not address our independent basis for a fee waiver as
representatives of the news media. Pursuant to the Freedom of Information Act, 5 U.S.C.
§ 552(a)(6), 6 C.F.R. § 5.8(a), the Requesters hereby appeal ICE's denial of our requests for
expedited processing and a fee waiver.

---

[1] This is the reference number provided by ICE in its denial letter (enclosed), but the online "check
status" tool does not recognize that number. Instead, it states that "[t]here is no FOIA request in the
system for that number."

1

**Expedited Processing**

Requesters are entitled to expedited processing because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when, "with respect to a request made by a person primarily engaged in disseminating information, [there is] urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii). The expedited processing denial stated:

> **ADD ONE OF THE FOLLOWING REASONS**:
> Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.
>
> Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You have not established that lack of expedited treatment in this case will pose an imminent threat to the life or physical safety of an individual. While you may be primarily engaged in the dissemination of information, you have not detailed with specificity why you feel there is an urgency to inform the public about Vermont diary [sic]. Qualifying urgency would need to exceed the public's right to know about government activity generally. You also did not offer sufficient supporting evidence of an interest of the public t [sic] greater than the public's general interest in Vermont dairy. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

On the contrary, Requesters have indeed demonstrated an urgency to inform the public about the operations of ICE and other Department of Homeland Security ("DHS") sub-agencies in Vermont—operations that have engendered widespread controversy and fear throughout the state.

As documented at length in the Request, Requesters are primarily engaged in disseminating information. *See* Request at 7-9 (enclosed). The expedited processing denial appears to concede that Requesters have met this prong of the analysis ("While you may be primarily engaged in the dissemination of information, you have not detailed with specificity why you feel there is an urgency to inform the public about Vermont diary [sic].").

There is no question that ICE immigration enforcement actions constitute federal government activity, and there is an urgent need for public transparency and information about how ICE is carrying out its activities in Vermont. Without expedited disclosure of the requested records, ICE and other DHS sub-agencies may continue to undertake enforcement actions targeting individuals in Vermont based on their political beliefs and activities, including labor organizers; collaborate with local law enforcement agencies or other state entities in

2

unconstitutional seizures; and threaten individuals with false or misleading information regarding those individuals' legal rights—all without Requesters being able to inform the public about these violations. As demonstrated by the many press reports cited in our Request,[2] ICE's actions in the state generally and with respect to the targeted individuals in particular are matters of critical importance to Vermonters. Additional evidence of the intense public interest in these immigration enforcement actions comes from the many hundreds of people who have attended marches, rallies, and vigils in support of the arrested Migrant Justice members and against ICE's tactics.[3] Vermonters are extremely anxious about and fearful of DHS immigration enforcement activity in Vermont, and they—and their elected officials—have an urgent need to understand how that activity is being carried out and whether and how local law enforcement agencies have participated in it.

The expedited processing denial's suggestion that our Request was motivated by a desire to inform the public about "Vermont dairy" (and the fact that, notwithstanding the accidentally-not-deleted instruction to select "one of the following reasons," the reviewer left in both paragraphs) demonstrates that the Request was not reviewed carefully and that the denial of expedited processing was issued essentially automatically, without consideration of the lengthy recitation of facts and legal authority supporting the request for expedited processing.

In sum, as our Request made clear, Requesters easily demonstrated that there is a compelling need for the information requested and that we are primarily engaged in the dissemination of information to the public. *See* 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(e)(1)(ii).

## Waiver or Limitation of Search and Review Fees

---

[2] *See* Request at 2-4 nn. 6-11, 9 n.16.

[3] *See* Mark Johnson, *Vermont Delegation, Protesters Decry Arrests of Undocumented Immigrants*, VTDIGGER, Mar. 21, 2017, *available at* https://vtdigger.org/2017/03/21/vermonts-delegation-weighs-arrests-undocumented-immigrants/ (describing March 18 rally in Burlington attended by "hundreds" and March 21 rally in Montpelier attended by "[m]ore than 150 Vermonters"); Claire Halverson, *Letter: Rallying for Migrant Justice*, BRATTLEBORO REFORMER, Apr. 19, 2017, *available at* http://www.reformer.com/stories/letter-rallying-for-migrant-justice,504816 (describing March 21 rally in Brattleboro attended by 200-250 people); Milton J. Valencia, *Vermont activists set to post bond on immigration charges*, BOS. GLOBE, Mar. 28, 2017, *available at* https://www.bostonglobe.com/metro/2017/03/27/vermont-activists-set-post-bond-immigration-charges/eIcbvNUSCoXJqI4SQDeU5I/story.html (describing March 28 protest attended by "hundreds of protesters" outside Boston courthouse during arrestees' bond hearings); Elizabeth Murray & Dan D'Ambrosio, *Released Migrant Justice organizers speak out at BTV rally*, BURLINGTON FREE PRESS, Mar. 28, 2017, *available at* http://www.burlingtonfreepress.com/story/news/local/2017/03/28/aclu-ice-arrests-jeff-sessions-defunding-threats-migrant-justice-rally-burlington/99704610/ (describing March 28 rally and candlelight vigil in Burlington); *see also* Katie Jickling, *Migrant Justice Cases Spark Protest at Boston Immigration Court*, SEVEN DAYS, Mar. 27, 2017, available at https://www.sevendaysvt.com/OffMessage/archives/2017/03/27/migrant-justice-cases-spark-protest-at-boston-immigration-court (noting that more than 200 letters were written in support of arrestees); Johnson, *supra* (noting that "Vermont's congressional delegation expressed 'strong concerns' to federal immigration authorities over the recent arrests"); Valencia, *supra* (noting that more than 10,000 people signed a petition calling for arrestees' release).

3

Requesters qualify for a fee waiver on the grounds that disclosure of the requested records "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The Department of Homeland Security has promulgated regulations setting forth six factors to be considered in determining whether the statutory criteria for a fee waiver are met. 6 C.F.R. § 5.11(k). Requesters meet the requirements of § 5.11(k) because the subject of the Request concerns the operations or activities of the government, particularly government retaliation for First Amendment protected activity and collaboration between federal immigration officials and local and state law enforcement agencies, and the disclosure of the information is likely to significantly contribute to a public understanding of government operations or activities due to the Requesters' expertise in government accountability and ability to convey the information to a "broad audience of persons." 6 C.F.R. § 5.11(k)(1)(i) & (2)(i)-(iv). Moreover, the Requesters' primary interest is in disclosure; Requesters have no commercial interest in the information. 6 C.F.R. § 5.11(k)(1)(ii) & (k)(3). The primary purpose of this FOIA request is to obtain information to further the public's understanding of immigration enforcement actions and policies in regards to retaliation for political speech. The Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost.

The fee waiver denial stated that Requesters had failed to satisfy three of the six factors "for the reasons stated herein" – but it did not in fact state any reasons. The purportedly unsatisfied factors were: (1) "[w]hether the contribution to public understanding of government operations or activities will be 'significant'"; (2) "[w]hether the requester has a commercial interest that would be furthered by the requested disclosure"; and (3) "[w]hether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor." Requesters satisfy each of these three factors.

As to the first factor, disclosure will contribute "significantly" to the public understanding of ICE activities in Vermont. As noted above,[4] immigration enforcement activity in Vermont has garnered significant and sustained public and media attention, yet much remains unknown about this critical human rights issue. Migrant Justice's membership and base of allies include many of the persons most significantly concerned about and interested in ICE activities in Vermont. To Requesters' knowledge, the requested records are not already in the public domain. Requesters will ensure that disclosure will contribute significantly to the public understanding of these issues by reviewing and analyzing the records, and, depending on what the records reveal, synthesizing the information therein to make their import readily understandable to the public and making both the documents and the analyses publicly available on their web sites. In so doing, Requesters will help the public understand the nature and extent of ICE immigration enforcement actions in Vermont and whether those actions are undertaken in a manner that comports with the U.S. Constitution and other federal laws. To the extent that agencies of the federal government are engaged in an effort to suppress the free speech of persons and organizations who advocate for fair and safe working conditions in agricultural industries, such information will be of great interest to the public.

---

[4] *See supra* nn. 2-3 and accompanying text.

4

As to the second factor, disclosure of the information requested is not in the Requesters' commercial interest. 6 C.F.R. § 5.11(k)(3)(i)–(ii). The fee waiver denial appears to recognize as much, as it states that Requesters are "a non-commercial requester" for purposes of determining the applicable charges. The ACLU and Migrant Justice are non-profit organizations, and any information obtained as a result of this FOIA request will be made available to the public at no cost. Moreover, the ACLU and Migrant Justice are representatives of the news media,[5] and "[a] request for records that supports the news-dissemination function of [a representative of the news media] shall not be considered to be for a commercial use," 6 C.F.R. § 5.11(b)(6).

Finally, because the requested disclosure would not further <u>any</u> commercial interest, the disclosure is, by definition, not <u>primarily</u> in the Requesters' commercial interest. In addition, as representatives of the news media, the ACLU and Migrant Justice are entitled to the presumption that this factor is satisfied. 6 C.F.R. § 5.11(k)(3)(ii).

For all these reasons, the Requesters are entitled to a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).

In addition, as discussed at length in the Request,[6] the ACLU and Migrant Justice are entitled to a fee waiver because the records are not sought for their commercial use and they qualify as representatives of the news media. *See* 5 U.S.C. § 522(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media"); *id.* § 522(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."); *see also* 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged "for requests by . . . representatives of the news media"). Each is "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* The fee waiver denial made no reference to this independent basis for a fee waiver or limitation.

A fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial Requester.'"). At a minimum, should a total fee waiver be denied, "fees should be limited to reasonable standard charges for document duplication" because the ACLU is a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). In the event a fee waiver or reduction of costs is denied, please notify us in advance if the anticipated costs associated with this Request exceed $100.00.

***

---

[5] *See infra.*
[6] *See* Request at 11-12; *see also* Request at 7-9 (explaining that Requesters are primarily engaged in the dissemination of information).

5

For all these reasons, the Requesters are entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i) and 6 C.F.R. § 5.5(e)(1)(ii), and a fee waiver under both 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II). If no fee waiver or reduction is granted and the fees exceed $100.00, please contact the Requesters to obtain consent to incur additional fees.

I certify that everything herein is true and correct to the best of my knowledge.

Thank you in advance for your assistance.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
lernst@acluvt.org

Jay Diaz
Staff Attorney
ACLU Foundation of Vermont
jdiaz@acluvt.org

Encl.: FOIA Request (April 26, 2017); Response from ICE (April 27, 2017)

6

ICE appeal — denial of expedited
processing / fee waiver

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

WASHINGTON, DC 20536

| Certified Mail Fee | | | |
|---|---|---|---|
| $3.35 | | | 0645 |
| $ | | $0.00 | 10 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | | |
| ☐ Return Receipt (hardcopy) | $ | $0.00 | |
| ☐ Return Receipt (electronic) | $ | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ | $0.00 | Here |
| ☐ Adult Signature Required | $ | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | | |
| Postage | | | |
| $ | $1.61 | | |
| Total Postage and Fees | | | 05/23/2017 |
| $ | $4.96 | | |
| Sent To | | | |
| Street and Apt. No., or PO Box No. | | | |
| City, State, ZIP+4® | | | |

7016 0910 0001 6163 9826

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

MONTPELIER
87 STATE ST
MONTPELIER
VT
05602-9998
5048160645
05/23/2017     (800)275-8777     4:31 PM

| Product Description | Sale Qty | Final Price |
|---|---|---|
| First-Class Mail Large Envelope (Domestic) (WASHINGTON, DC 20536) (Weight:0 Lb 4.00 Oz) (Expected Delivery Day) (Friday 05/26/2017) | 1 | $1.61 |
| Certified (@@USPS Certified Mail #) (70160910000161639826) | 1 | $3.35 |
| Total | | $4.96 |
| Cash | | $20.00 |
| Change | | ($15.04) |

**********************************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards available for purchase at select
Post Offices.
**********************************************

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
USPS Tracking or call 1-800-222-1811.

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to
usps.com/clicknship to print shipping
labels with postage. For other
information call 1-800-ASK-USPS.

**********************************************
Get your mail when and where you want
it with a secure Post Office Box. Sign
up for a box online at
usps.com/poboxes.
**********************************************

010

# USPS Tracking® Results

FAQs > (http://faq.usps.com/?articleId=220900)

**Track Another Package +**

Remove ✕

**Tracking Number:** 70160910000161639826

▶        ▶        ▮   Delivered

**Updated Delivery Day:** Tuesday, May 30, 2017 ⓘ

## Product & Tracking Information

See Available Actions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **May 30, 2017, 7:47 am** | **Delivered, To Mail Room** | **DHS, VA 20598** |
| | ▲ | |
| Your item has been delivered to the mail room at 7:47 am on May 30, 2017 in DHS, VA 20598. | | |
| May 28, 2017, 10:14 am | Business Closed | WASHINGTON, DC 20536 |
| May 28, 2017, 9:47 am | Arrived at Hub | WASHINGTON, DC 20018 |
| May 25, 2017, 3:26 am | In Transit to Destination | |
| May 24, 2017, 6:46 am | Departed USPS Facility | ESSEX JUNCTION, VT 05452 |
| May 23, 2017, 8:26 pm | Arrived at USPS Origin Facility | ESSEX JUNCTION, VT 05452 |
| May 23, 2017, 4:31 pm | Acceptance | MONTPELIER, VT 05602 |

See Less ∧

## Available Actions

| Text Updates | ∨ |
|---|---|
| Email Updates | ∨ |

See Less ∧

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

### There's an easier way to track your packages.

Why jump from page to page to track packages being sent to you? With My USPS™, you can easily track all your packages in one place. Sign up to:

- Set up automatic email and text alerts, so you'll never have to manually track a package again

- Provide delivery instructions, so your carrier knows where to leave packages

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

(https://www.usps.com/)

**HELPFUL LINKS**

Contact Us
(https://www.usps.com/help/welcome.htm)

Site Index (https://www.usps.com/globals/site-index.htm)

FAQs (http://faq.usps.com/)

**ON ABOUT.USPS.COM**

About USPS Home (http://about.usps.com/)

Newsroom
(http://about.usps.com/news/welcome.htm)

USPS Service Updates
(http://about.usps.com/news/service-alerts/welcome.htm)

Forms & Publications
(http://about.usps.com/forms-publications/welcome.htm)

Government Services
(https://www.usps.com/gov-services/gov-services.htm)

Careers
(http://about.usps.com/careers/welcome.htm)

**OTHER USPS SITES**

Business Customer Gateway
(https://gateway.usps.com/)

Postal Inspectors
(https://postalinspectors.uspis.gov/)

Inspector General (http://www.uspsoig.gov/)

Postal Explorer (http://pe.usps.gov/)

National Postal Museum
(http://www.postalmuseum.si.edu/)

Resources for Developers
(https://www.usps.com/webtools/welcome.htm)

**LEGAL INFORMATION**

Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm)

Terms of Use
(http://about.usps.com/termsofuse.htm)

FOIA (http://about.usps.com/who-we-are/foia/welcome.htm)

No FEAR Act EEO Data
(http://about.usps.com/who-we-are/no-fear-act/welcome.htm)

Copyright © 2017 USPS. All Rights Reserved.

012

5/31/2017 USPS.com® - USPS Tracking® Results

 (https://www.facebook.com/USPS?rf=108501355848630)    (https://twitter.com/usps)

 (http://www.pinterest.com/uspsstamps/)   (https://www.youtube.com/usps)

## lernst@acluvt.org

| | |
|---|---|
| **From:** | US DHS Immigration and Customs Enforcement FOIA Office <ice-foia@dhs.gov> |
| **Sent:** | Thursday, June 08, 2017 16:47 |
| **To:** | lernst@acluvt.org |
| **Subject:** | ICE FOIA Request 2017-ICFO-25680 |

June 08, 2017

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

**RE: ICE FOIA Case Number 2017-ICFO-25680**

Dear Ernst:

This acknowledges receipt of your April 26, 2017, Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), for Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. All Records mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign. 2. All Records mentioning, referencing, relating to, or referring to Miguel Alfredo Alcudia- Gamas, Jose Enrique "Kike" Balcazar Sanchez, Matthew "Matt" Cameron, Maria Gracia "Marita" Canedo, Cesar Alexis "Alex" Carrillo Sanchez, Jose Victor R. "Victor" Garcia Diaz, William "Will" Lambek, Abel Luna, Brendan O'Neill, Zully Victoria Palacios Rodriguez, or Arturo Ruiz. 3. All communications with, to, or from any Vermont state or local law enforcementagency—including but not limited to Vermont Department of Motor Vehicles and Vermont Department of Corrections—mentioning, referencing, or referring to immigration enforcement, or to the investigation, arrest, or detention of any individual named in (3) above, and all Records pertaining to any such communications. 4. All Records mentioning, referencing, relating to, or referring to any communications relating to immigration enforcement with Vermont dairy farms and other dairy/agricultural operations or their owners, including, but not limited to, Ben & Jerry's, the St. Albans Cooperative, and Cabot Creamery/Agrimark.All Records in the possession of DHS and its sub-agencies in Vermont containing one or more of the following words or terms: "organizer," "activist," "farm," "farmworker," "dairy," "milk," "union," "protest," "campaign," "sensitive location," "court,""courthouse," "school," "church," "hospital," "legislature," "governor," "S. 79," "sanctuary," "detainer," "executive order," "informant," or "concerned citizen."6. All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request. See request for further details.. Your request was received in this office on April 26, 2017.

After careful review of your FOIA request, we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency. Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency. For this reason, §5.3(b) of the DHS regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort. Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record. The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records.

Please resubmit your request containing a reasonable description of the records you are seeking. Upon receipt of a perfected request, you will be advised as to the status of your request.

If we do not hear from you within 10 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed. Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Your request has been assigned reference number **2017-ICFO-25680**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request),

014

you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,


ICE FOIA Office

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

015

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | lernst@acluvt.org |
| **Sent:** | Friday, June 16, 2017 15:38 |
| **To:** | 'US DHS Immigration and Customs Enforcement FOIA Office'; 'ice-foia@ice.dhs.gov' |
| **Subject:** | RE: ICE FOIA Request 2017-ICFO-25680 |

I received your June 8 email requesting clarification of or more information about FOIA Request 2017-ICFO-25680. Requesters are working on their response to your request and will submit it shortly—well within the time contemplated by DHS regulations. See 6 C.F.R. § 5.3(c) ("In order to be considered timely, responses to requests for additional information must be postmarked or received by electronic mail within 30 working days of the postmark date or date of the electronic mail request for additional information or received by electronic mail by 11:59:59 p.m. ET on the 30th working day. If the requester does not respond to a request for additional information within thirty (30) working days, the request may be administratively closed at DHS's discretion.").

Consistent with those regulations, we expect that our FOIA request will not be administratively closed for lack of a response until at least 30 business days have elapsed since the date of your request for clarification.

Sincerely,
Lia Ernst

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

**From:** US DHS Immigration and Customs Enforcement FOIA Office [mailto:ice-foia@dhs.gov]
**Sent:** Thursday, June 08, 2017 16:47
**To:** lernst@acluvt.org
**Subject:** ICE FOIA Request 2017-ICFO-25680

June 08, 2017

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

**RE:   ICE FOIA Case Number 2017-ICFO-25680**

Dear Ernst:

This acknowledges receipt of your April 26, 2017, Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), for Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. All Records mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign. 2. All Records mentioning, referencing, relating to, or referring to Miguel Alfredo Alcudia- Gamas, Jose Enrique "Kike" Balcazar Sanchez, Matthew "Matt" Cameron, Maria Gracia "Marita" Canedo, Cesar Alexis "Alex" Carrillo Sanchez, Jose Victor R. "Victor" Garcia Diaz, William "Will" Lambek, Abel Luna, Brendan O'Neill, Zully Victoria Palacios Rodriguez, or Arturo Ruiz. 3. All communications with, to, or from any Vermont state or local law enforcementagency—including but not limited to Vermont Department of Motor Vehicles and Vermont Department of Corrections—mentioning, referencing, or referring to immigration enforcement, or to the investigation, arrest, or detention of any individual named in (3) above, and all Records pertaining to any such communications. 4. All Records mentioning, referencing, relating to, or referring to any communications relating to

1

immigration enforcement with Vermont dairy farms and other dairy/agricultural operations or their owners, including, but not limited to, Ben & Jerry's, the St. Albans Cooperative, and Cabot Creamery/Agrimark.All Records in the possession of DHS and its sub-agencies in Vermont containing one or more of the following words or terms: "organizer," "activist," "farm," "farmworker," "dairy," "milk," "union," "protest," "campaign," "sensitive location," "court,""courthouse," "school," "church," "hospital," "legislature," "governor," "S. 79," "sanctuary," "detainer," "executive order," "informant," or "concerned citizen."6. All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request. See request for further details.. Your request was received in this office on April 26, 2017.

After careful review of your FOIA request, we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency. Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency. For this reason, §5.3(b) of the DHS regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort. Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record. The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records.

Please resubmit your request containing a reasonable description of the records you are seeking. Upon receipt of a perfected request, you will be advised as to the status of your request.

If we do not hear from you within 10 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed. Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Your request has been assigned reference number **2017-ICFO-25680**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

ICE FOIA Office

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | ICE-FOIA <ICE-FOIA@ice.dhs.gov> |
| **Sent:** | Friday, June 16, 2017 15:38 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Automatic reply: ICE FOIA Request 2017-ICFO-25680 |

ICE has received the information you submitted to the ICE-FOIA@dhs.gov mailbox.

If you are submitting a FOIA request, this courtesy reply does not replace the Acknowledgement Letter which will be sent to you once your request has been entered into our FOIA Request Tracking System.

If you are seeking the status of a pending FOIA request for which you have a FOIA case number, you may check the status of your request online at www.ice.gov/foia/status/.

Please visit the ICE FOIA Library at www.ice.gov/foia/library/.

As this reply is automatically generated, please do not respond to this notification.



June 23, 2017

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
*Sent via email to ice-foia@ice.dhs.gov*

      **Re: ICE FOIA Case No. 2017-ICFO-25680**

To Whom It May Concern:

On behalf of the American Civil Liberties Union Foundation of Vermont, Migrant Justice, and Matt Cameron (collectively, "Requesters,"), we write in response to an email dated June 8, 2017 regarding the above-referenced FOIA request to Immigration and Customs Enforcement ("ICE"). That June 8 email states in relevant part that our FOIA request "is too broad in scope, did not specifically identify the records which [we] are seeking, or only posed questions to the agency." The email asks that we provide a "reasonable description" of the records sought "within 10 days from the date of this letter," lest ICE "assume" that we "are no longer interested in this FOIA request, and the case will be administratively closed." Although we believe that we already *have* reasonably described the records we seek, we write to provide additional specification in a good-faith attempt to avoid needless litigation.

As an initial matter, and as we explained in an email we sent on June 16, 2017, ICE's demand for a response to its June 8 email "within 10 days" violates the very regulation cited in the email, which provides in relevant part as follows:

> If a request does not adequately describe the records sought, DHS may . . . seek additional information from the requester. Requests for clarification or more information will be made in writing (either via U.S. mail or electronic mail whenever possible). . . . In order to be considered timely, responses to requests for additional information must be postmarked or received by electronic mail within 30 working days of the postmark date or date of the electronic mail request for additional information or received by electronic mail by 11:59:59 p.m. ET on the 30th working day.

6 C.F.R. § 5.3(c). In light of this provision, we expect that this response to the June 8 request for additional information will be considered timely.

As an additional threshold matter, we note that ICE's June 8 email failed to comply with the agency's own obligation under 6 C.F.R. § 5.3(b). That provision states in relevant part that, "If after receiving a request, a component determines that it does not reasonably describe the records sought, the component should inform the requester what additional information is needed or why the request is otherwise insufficient." ICE's June 8 email informs us of neither "what additional information is needed," nor "why the request is otherwise insufficient." 6 C.F.R. § 5.3(b). Instead, the email states, in wholly conclusory fashion, that "[a]fter careful review of your FOIA request, we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency." The boilerplate nature of ICE's email—and the use of the disjunctive "or," in particular—means that we can only speculate why ICE believes our request does not reasonably describe the records sought, and that ICE has failed to discharge its duty under 6 C.F.R. § 5.3(b). *See, e.g.*, *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995); *Immigrant Def. Project v. ICE*, 208 F. Supp. 3d 520, 532 (S.D.N.Y. 2016); *Hall v. EPA*, 83 F. Supp. 3d 92, 102-03 (D.D.C. 2015).

Notwithstanding the deficiencies in ICE's June 8 email and our belief that we have already reasonably described the records we seek, below we provide additional clarification regarding portions of our request.

**Item #1** of our request seeks "All Records mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign."

> We believe this request reasonably describes the records we seek, and we are unaware of how it could be more specific.

**Item #2** of our request seeks "All Records mentioning, referencing, relating to, or referring to Miguel Alfredo Alcudia-Gamas, Jose Enrique 'Kike' Balcazar Sanchez, Matthew 'Matt' Cameron, Maria Gracia 'Marita' Canedo, Cesar Alexis 'Alex' Carrillo Sanchez, Jose Victor R. 'Victor' Garcia Diaz, William 'Will' Lambek, Abel Luna, Brendan O'Neill, Zully Victoria Palacios Rodriguez, or Arturo Ruiz."

> We believe this request reasonably describes the records we seek, and we are unaware of how it could be more specific.

**Item #3** of our request seeks "All communications with, to, or from any Vermont state or local law enforcement agency—including but not limited to Vermont Department of Motor Vehicles and Vermont Department of Corrections—mentioning, referencing, or referring to immigration enforcement, or to the investigation, arrest, or detention of any individual named in (3) above, and all Records pertaining to any such communications."

> We hereby withdraw Item #3 of our request.

2

**Item #4** of our request seeks "All Records mentioning, referencing, relating to, or referring to any communications relating to immigration enforcement with Vermont dairy farms and other dairy/agricultural operations or their owners, including, but not limited to, Ben & Jerry's, the St. Albans Cooperative, and Cabot Creamery/Agrimark."

> We hereby clarify that this Item of our request seeks records in the custody or control, or sent or received by, ICE offices and/or ICE officials in the State of Vermont or in the ICE ERO Boston Field Office. We additionally clarify that the adjective "Vermont" in this Item modifies "other dairy/agricultural operations" (in addition to "dairy farms").

**Item #5** of our request seeks "All Records in the possession of DHS and its sub-agencies in Vermont" that contain one or more specified words or terms.

> We hereby clarify that this Item of our request seeks records in the custody or control, or sent or received by, ICE offices and/or ICE officials in the State of Vermont or in the ICE ERO Boston Field Office. Additionally, we hereby withdraw the portions of this Item that seek records containing only one or more of the following words or term: "court," detainer," and "executive order."

**Item #6** of our request seeks "All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request."

> We believe this request reasonably describes the records we seek, and we are unaware of how it could be more specific.

Finally, the relevant timeframe for all Items of our request is from April 1, 2015 until the day and time when ICE conducts a reasonable search for the records sought. We believe this reasonably describes the relevant time period, and we are unaware of how we could define it with more specificity.

We trust that the foregoing adequately addresses any questions ICE may have had regarding the records we seek, and that ICE will not further delay the processing of our request. At your earliest convenience, please let us know when we can expect to receive the requested records.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont
lernst@acluvt.org

3

## lernst@acluvt.org

| | |
|---|---|
| **From:** | lernst@acluvt.org |
| **Sent:** | Friday, June 23, 2017 14:09 |
| **To:** | US DHS Immigration and Customs Enforcement FOIA Office; ice-foia@ice.dhs.gov |
| **Subject:** | Re: ICE FOIA Request 2017-ICFO-25680 |
| **Attachments:** | 2017-06-23 ICE FOIA clarification letter.pdf |

Good afternoon,

Please find attached our response to your request for more information about FOIA Request 2017-ICFO-25680.

Sincerely,
Lia Ernst

---

**From:** lernst@acluvt.org
**Sent:** Friday, June 16, 2017 3:37 PM
**To:** US DHS Immigration and Customs Enforcement FOIA Office; ice-foia@ice.dhs.gov
**Subject:** RE: ICE FOIA Request 2017-ICFO-25680

I received your June 8 email requesting clarification of or more information about FOIA Request 2017-ICFO-25680. Requesters are working on their response to your request and will submit it shortly—well within the time contemplated by DHS regulations. See 6 C.F.R. § 5.3(c) ("In order to be considered timely, responses to requests for additional information must be postmarked or received by electronic mail within 30 working days of the postmark date or date of the electronic mail request for additional information or received by electronic mail by 11:59:59 p.m. ET on the 30th working day. If the requester does not respond to a request for additional information within thirty (30) working days, the request may be administratively closed at DHS's discretion.").

Consistent with those regulations, we expect that our FOIA request will not be administratively closed for lack of a response until at least 30 business days have elapsed since the date of your request for clarification.

Sincerely,
Lia Ernst

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

**From:** US DHS Immigration and Customs Enforcement FOIA Office [mailto:ice-foia@dhs.gov]
**Sent:** Thursday, June 08, 2017 16:47
**To:** lernst@acluvt.org
**Subject:** ICE FOIA Request 2017-ICFO-25680

June 08, 2017

1

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

**RE:  ICE FOIA Case Number 2017-ICFO-25680**

Dear Ernst:

This acknowledges receipt of your April 26, 2017, Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), for Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. All Records mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign. 2. All Records mentioning, referencing, relating to, or referring to Miguel Alfredo Alcudia- Gamas, Jose Enrique "Kike" Balcazar Sanchez, Matthew "Matt" Cameron, Maria Gracia "Marita" Canedo, Cesar Alexis "Alex" Carrillo Sanchez, Jose Victor R. "Victor" Garcia Diaz, William "Will" Lambek, Abel Luna, Brendan O'Neill, Zully Victoria Palacios Rodriguez, or Arturo Ruiz. 3. All communications with, to, or from any Vermont state or local law enforcementagency— including but not limited to Vermont Department of Motor Vehicles and Vermont Department of Corrections—mentioning, referencing, or referring to immigration enforcement, or to the investigation, arrest, or detention of any individual named in (3) above, and all Records pertaining to any such communications. 4. All Records mentioning, referencing, relating to, or referring to any communications relating to immigration enforcement with Vermont dairy farms and other dairy/agricultural operations or their owners, including, but not limited to, Ben & Jerry's, the St. Albans Cooperative, and Cabot Creamery/Agrimark.All Records in the possession of DHS and its sub-agencies in Vermont containing one or more of the following words or terms: "organizer," "activist," "farm," "farmworker," "dairy," "milk," "union," "protest," "campaign," "sensitive location," "court,""courthouse," "school," "church," "hospital," "legislature," "governor," "S. 79," "sanctuary," "detainer," "executive order," "informant," or "concerned citizen."6. All Records created, sent, received, referenced, and/or used in fulfilling and/or responding to any of the foregoing parts of this Request. See request for further details.. Your request was received in this office on April 26, 2017.

After careful review of your FOIA request, we determined that your request is too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency.  Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency.  For this reason, §5.3(b) of the DHS regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort.  Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record.  The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records.

Please resubmit your request containing a reasonable description of the records you are seeking.  Upon receipt of a perfected request, you will be advised as to the status of your request.

If we do not hear from you within 10 days from the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.  Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Your request has been assigned reference number **2017-ICFO-25680**. Please refer to this identifier in any future correspondence. To check the status of an ICE FOIA/PA request, please visit http://www.dhs.gov/foia-status. Please note that to check the status of a request, you must enter the 2016-ICFO-XXXXX or 2017-ICFO-XXXXX tracking number. If you need any further assistance or would like to discuss any aspect of your request, please contact the FOIA office. You may send an e-mail to ice-foia@ice.dhs.gov, call toll free (866) 633-1182, or you may contact our FOIA Public Liaison in the same manner. Additionally, you have a right to right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

ICE FOIA Office

2

023

Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Telephone: 1-866-633-1182
Visit our FOIA website at www.ice.gov/foia

## lernst@acluvt.org

| | |
|---|---|
| **From:** | ICE-FOIA <ICE-FOIA@ice.dhs.gov> |
| **Sent:** | Friday, June 23, 2017 14:10 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Automatic reply: ICE FOIA Request 2017-ICFO-25680 |

ICE has received the information you submitted to the ICE-FOIA@dhs.gov mailbox.

If you are submitting a FOIA request, this courtesy reply does not replace the Acknowledgement Letter which will be sent to you once your request has been entered into our FOIA Request Tracking System.

If you are seeking the status of a pending FOIA request for which you have a FOIA case number, you may check the status of your request online at www.ice.gov/foia/status/.

Please visit the ICE FOIA Library at www.ice.gov/foia/library/.

As this reply is automatically generated, please do not respond to this notification.

# Exhibit F

Correspondence with Defendant
ICE regarding July FOIA
Request

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | ICE-FOIA <ICE-FOIA@ice.dhs.gov> |
| **Sent:** | Monday, July 17, 2017 16:05 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Automatic reply: FOIA request |

ICE has received the information you submitted to the ICE-FOIA@dhs.gov mailbox.

If you are submitting a FOIA request, this courtesy reply does not replace the Acknowledgement Letter which will be sent to you once your request has been entered into our FOIA Request Tracking System.

If you are seeking the status of a pending FOIA request for which you have a FOIA case number, you may check the status of your request online at www.ice.gov/foia/status/.

Please visit the ICE FOIA Library at www.ice.gov/foia/library/.

As this reply is automatically generated, please do not respond to this notification.

# Exhibit G

Correspondence with Defendant
CBP regarding April FOIA
Request

# USPS Tracking® Results

FAQs › (http://faq.usps.com/?articleId=220900)

Track Another Package +

Remove ✕

**Tracking Number:** 70160910000161639024

▶                    ▶                  ›       Delivered

**Updated Delivery Day:** Monday, May 1, 2017 ⓘ

## Product & Tracking Information

See Available Actions

**Postal Product:**                    **Features:**
First-Class Mail®                       Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **May 1, 2017, 7:43 am** | **Delivered, To Mail Room** | **WASHINGTON, DC 20229** |
| | ▲ | |
| Your item has been delivered to the mail room at 7:43 am on May 1, 2017 in WASHINGTON, DC 20229. | | |
| April 30, 2017, 1:22 pm | Business Closed | WASHINGTON, DC 20229 |
| April 30, 2017, 10:31 am | Arrived at Hub | WASHINGTON, DC 20018 |
| April 27, 2017, 4:40 am | Departed USPS Regional Facility | BURLINGTON VT DISTRIBUTION CENTER |

See More ⌄

## Available Actions

See Less ⌃

### Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**There's an easier way to track your packages.**

Why jump from page to page to track packages being sent to you? With My USPS™, you can easily track all your packages in one place. Sign up to:

- Set up automatic email and text alerts, so you'll never have to manually track a package again

- Provide delivery instructions, so your carrier knows where to leave packages

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

(https://www.usps.com/)

| **HELPFUL LINKS** | **ON ABOUT.USPS.COM** | **OTHER USPS SITES** | **LEGAL INFORMATION** |
|---|---|---|---|
| Contact Us (https://www.usps.com/help/welcome.htm) | About USPS Home (http://about.usps.com/) | Business Customer Gateway (https://gateway.usps.com/) | Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm) |
| Site Index (https://www.usps.com/globals/site-index.htm) | Newsroom (http://about.usps.com/news/welcome.htm) | Postal Inspectors (https://postalinspectors.uspis.gov/) | Terms of Use (http://about.usps.com/termsofuse.htm) |
| FAQs (http://faq.usps.com/) | USPS Service Updates (http://about.usps.com/news/service-alerts/welcome.htm) | Inspector General (http://www.uspsoig.gov/) | FOIA (http://about.usps.com/who-we-are/foia/welcome.htm) |
| | Forms & Publications (http://about.usps.com/forms-publications/welcome.htm) | Postal Explorer (http://pe.usps.gov/) | No FEAR Act EEO Data (http://about.usps.com/who-we-are/no-fear-act/welcome.htm) |
| | Government Services (https://www.usps.com/gov-services/gov-services.htm) | National Postal Museum (http://www.postalmuseum.si.edu/) | |
| | Careers (http://about.usps.com/careers/welcome.htm) | Resources for Developers (https://www.usps.com/webtools/welcome.htm) | |

Copyright © 2017 USPS. All Rights Reserved.



(https://www.facebook.com/USPS?rf=108501355848630)   (https://twitter.com/usps)

(http://www.pinterest.com/uspsstamps/)   (https://www.youtube.com/usps)

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Friday, May 05, 2017 8:49 |
| **To:** | lernst@acluvt.org |
| **Subject:** | FOIA Request CBP-2017-054785 Submitted |

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: CBP-2017-054785
- Requester Name: Lia Ernst
- Date Submitted: 05/02/2017
- Request Status: Submitted
- Description: Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. See attachment for more details.

1

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Monday, September 11, 2017 18:19 |
| **To:** | lernst@acluvt.org |
| **Subject:** | FOIA Request Tracking Number Change for Request CBP-2017-054785 (to CBP-OFO-2017-054785) |

The FOIA request CBP-2017-054785 has had its Tracking Number changed to CBP-OFO-2017-054785. This is normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it. Additional details for this request are as follows:

- Old Tracking Number: CBP-2017-054785
- New Tracking Number: CBP-OFO-2017-054785
- Requester Name: Lia Ernst
- Date Submitted: 05/02/2017
- Long Description: Requesters seek disclosure of Records pertaining to DHS immigration enforcement actions in the state of Vermont from April 1, 2015, up to such time as an adequate search for responsive Records has been conducted, including any such Records held by ICE, CBP, Border Patrol, or any other DHS component agencies. See attachment for more details.

## lernst@acluvt.org

| | |
|---|---|
| **From:** | FISHER, MARY ANN <MARY.ANN.FISHER@CBP.DHS.GOV> |
| **Sent:** | Wednesday, September 27, 2017 11:16 |
| **To:** | lernst@acluvt.org; jdiaz@acluvt.org |
| **Subject:** | RE: Your FOIA request, Filed May 2, 2017 |

One additional issue:

I have rechecked the attachments to your request, and I do not have ICE Forms 60-001 for Carrillo-Sanchez, Ruiz, or Cameron.
I cannot release any information relative to these individuals without their express consent.

Mary Ann Fisher
Fines, Penalties and Forfeitures Officer
U.S. Customs and Border Protection
50 South Main Street, Suite 100R
St. Albans, VT  05478
Tel:   802 527-3338
Fax:   802 527-1338

**From:** FISHER, MARY ANN
**Sent:** Wednesday, September 27, 2017 10:48 AM
**To:** 'lernst@acluvt.org' <lernst@acluvt.org>; 'jdiaz@acluvt.org' <jdiaz@acluvt.org>
**Subject:** Your FOIA request, Filed May 2, 2017

Good Morning Ms. Ernst and Mr. Diaz,

I handle FOIA requests for U.S. Customs and Border Protection [CBP] in the Area Port of St. Albans, VT.
On September 21, 2017 I was sent your FOIA request, filed on May 2, 2017 and pertaining to "the disclosure of records related to ICE and Border Patrol enforcement operations in Vermont."

I will tell you several things that you probably already know:

-CBP is a separate entity from U.S. Immigration and Customs Enforcement [ICE], the United States Border Patrol, the State of Vermont, and local law enforcement agencies.  For records maintained by those entities, you will need to go to their FOIA representatives.  You may already have done so.
-In this immediate area, CBP maintains a number of border ports and the airport in Burlington, VT.  **CBP does not do interior enforcement**.  There is little likelihood, therefore, that we have a great deal of information relevant to your request in our systems.

We will run checks, but in order to do so, I need some information from you.

1)   Technically, your ICE Forms 60-001 have expired.  I realize that this is through no fault of yours, but I do need you to notify me in writing that they are still valid.
2)   The name on one 60-001 is illegible; but I have retrieved it from the body of your narrative, and I believe the correct spelling is "Lambek"?
3)   Your narrative references 5 individuals and explains their relationship to your request [Garcia-Diaz, Carrillo-Sanchez, Balcazer-Sanchez, Palacios-Rodriguez, and Cameron].

1

Please explain why you need information on the following individuals:  Alcudia-Gamas, Canedo, Lambek, Luna, O'Neill, and Ruiz.


Thank you.



Mary Ann Fisher
Fines, Penalties and Forfeitures Officer/FOIA Officer
U.S. Customs and Border Protection
50 South Main Street, Suite 100R
St. Albans, VT  05478
Tel:   802 527-3338
Fax:   802 527-1338

## lernst@acluvt.org

| | |
|---|---|
| **From:** | lernst@acluvt.org |
| **Sent:** | Friday, September 29, 2017 15:25 |
| **To:** | 'FISHER, MARY ANN' |
| **Subject:** | RE: Your FOIA request, Filed May 2, 2017 |
| **Attachments:** | DHS privacy waiver Cameron.pdf |

Good afternoon,

Thank you for your emails. Here are the responses to your questions.

(1) Yes, the 60-001 forms are still valid.
(2) Yes, the correct spelling is "Lambek"
(3) Mr. Alcudia-Gamas is discussed in the first paragraph of page 3 of our FOIA request. Ms. Canedo, Mr. Lambek, Mr. Luna, and Mr. O'Neill are all Migrant Justice organizers and they have had contact with DHS officials in advocating for Migrant Justice members. Mr. Ruiz is a Migrant Justice member who was detained by DHS officials.
(4) Mr. Cameron's 60-001 is attached. We are working on getting the other two and will forward them once we get them.

Have a good weekend,
Lia

Lia Ernst
Staff Attorney
ACLU of Vermont
P.O. Box 277
Montpelier, VT 05601
802-223-6304

*Not a member? Click here to join.*
*Like to donate? Do it now!*
*Follow us @ acluvt.org | facebook.com/ACLU-Vermont | twitter.com/ACLU_VT*

**From:** FISHER, MARY ANN [mailto:MARY.ANN.FISHER@CBP.DHS.GOV]
**Sent:** Wednesday, September 27, 2017 11:16
**To:** lernst@acluvt.org; jdiaz@acluvt.org
**Subject:** RE: Your FOIA request, Filed May 2, 2017

One additional issue:

I have rechecked the attachments to your request, and I do not have ICE Forms 60-001 for Carrillo-Sanchez, Ruiz, or Cameron.
I cannot release any information relative to these individuals without their express consent.

Mary Ann Fisher
Fines, Penalties and Forfeitures Officer
U.S. Customs and Border Protection
50 South Main Street, Suite 100R

1

007

St. Albans, VT  05478
Tel:   802 527-3338
Fax:   802 527-1338

**From:** FISHER, MARY ANN
**Sent:** Wednesday, September 27, 2017 10:48 AM
**To:** 'lernst@acluvt.org' <lernst@acluvt.org>; 'jdiaz@acluvt.org' <jdiaz@acluvt.org>
**Subject:** Your FOIA request, Filed May 2, 2017

Good Morning Ms. Ernst and Mr. Diaz,

I handle FOIA requests for U.S. Customs and Border Protection [CBP] in the Area Port of St. Albans, VT.
On September 21, 2017 I was sent your FOIA request, filed on May 2, 2017 and pertaining to "the disclosure of records related to ICE and Border Patrol enforcement operations in Vermont."

I will tell you several things that you probably already know:

-CBP is a separate entity from U.S. Immigration and Customs Enforcement [ICE], the United States Border Patrol, the State of Vermont, and local law enforcement agencies.  For records maintained by those entities, you will need to go to their FOIA representatives.  You may already have done so.
-In this immediate area, CBP maintains a number of border ports and the airport in Burlington, VT.  **CBP does not do interior enforcement**.  There is little likelihood, therefore, that we have a great deal of information relevant to your request in our systems.

We will run checks, but in order to do so, I need some information from you.

1)   Technically, your ICE Forms 60-001 have expired.  I realize that this is through no fault of yours, but I do need you to notify me in writing that they are still valid.
2)   The name on one 60-001 is illegible; but I have retrieved it from the body of your narrative, and I believe the correct spelling is "Lambek"?
3)   Your narrative references 5 individuals and explains their relationship to your request [Garcia-Diaz, Carrillo-Sanchez, Balcazer-Sanchez, Palacios-Rodriguez, and Cameron].
     Please explain why you need information on the following individuals:  Alcudia-Gamas, Canedo, Lambek, Luna, O'Neill, and Ruiz.

Thank you.

Mary Ann Fisher
Fines, Penalties and Forfeitures Officer/FOIA Officer
U.S. Customs and Border Protection
50 South Main Street, Suite 100R
St. Albans, VT  05478
Tel:   802 527-3338
Fax:   802 527-1338

# Exhibit H

Correspondence with Defendant CBP regarding July FOIA Request

USPS.com® - USPS Tracking® Results

# USPS Tracking® Results

FAQs ❯ (http://faq.usps.com/?articleId=220900)

Track Another Package **+**

Remove ✕

**Tracking Number:** 70163010000017972305

Delivered

**Updated Delivery Day:** Friday, July 21, 2017 ⓘ

## Product & Tracking Information

See Available Actions

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **July 21, 2017, 10:38 am** | **Delivered, To Mail Room** | **WASHINGTON, DC 20229** |
| | ▲ | |
| Your item has been delivered to the mail room at 10:38 am on July 21, 2017 in WASHINGTON, DC 20229. | | |
| July 21, 2017, 8:15 am | Arrived at Unit | WASHINGTON, DC 20018 |
| July 20, 2017, 9:04 am | In Transit to Destination | ON ITS WAY TO WASHINGTON, DC 20229 |
| July 18, 2017, 4:04 am | Departed USPS Regional Facility | BURLINGTON VT DISTRIBUTION CENTER |

See More ⌄

## Available Actions

Text Updates ⌄

Email Updates ⌄

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

8/2/2017                                          USPS.com® - USPS Tracking® Results

**There's an easier way to track your packages.**

Why jump from page to page to track packages being sent to you? With My USPS™, you can easily track all your packages in one place. Sign up to:

- Set up automatic email and text alerts, so you'll never have to manually track a package again

- Provide delivery instructions, so your carrier knows where to leave packages

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

(https://www.usps.com/)

**HELPFUL LINKS**

Contact Us
(https://www.usps.com/help/welcome.htm)
Site Index (https://www.usps.com/globals/site-index.htm)
FAQs (http://faq.usps.com/)

**ON ABOUT.USPS.COM**

About USPS Home (http://about.usps.com/)
Newsroom
(http://about.usps.com/news/welcome.htm)
USPS Service Updates
(http://about.usps.com/news/service-alerts/welcome.htm)
Forms & Publications
(http://about.usps.com/forms-publications/welcome.htm)
Government Services
(https://www.usps.com/gov-services/gov-services.htm)
Careers
(http://about.usps.com/careers/welcome.htm)

**OTHER USPS SITES**

Business Customer Gateway
(https://gateway.usps.com/)
Postal Inspectors
(https://postalinspectors.uspis.gov/)
Inspector General (http://www.uspsoig.gov/)
Postal Explorer (http://pe.usps.gov/)
National Postal Museum
(http://www.postalmuseum.si.edu/)
Resources for Developers
(https://www.usps.com/webtools/welcome.htm)

**LEGAL INFORMATION**

Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm)
Terms of Use
(http://about.usps.com/termsofuse.htm)
FOIA (http://about.usps.com/who-we-are/foia/welcome.htm)
No FEAR Act EEO Data
(http://about.usps.com/who-we-are/no-fear-act/welcome.htm)

Copyright © 2017 USPS. All Rights Reserved.



(https://www.facebook.com/USPS?rf=108501355848630)    (https://twitter.com/usps)

(http://www.pinterest.com/uspsstamps/)    (https://www.youtube.com/usps)

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Wednesday, August 02, 2017 7:39 |
| **To:** | lernst@acluvt.org |
| **Subject:** | FOIA Request CBP-2017-077128 Submitted |

This message is to confirm your request submission to the FOIAonline application: <u>View Request</u>. Request information is as follows:

- Tracking Number: CBP-2017-077128
- Requester Name: Lia Ernst
- Date Submitted: 07/27/2017
- Request Status: Submitted
- Description: Requestor is seeking all Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Wednesday, August 02, 2017 11:47 |
| **To:** | lernst@acluvt.org |
| **Subject:** | FOIA Request Tracking Number Change for Request CBP-2017-077128 (to CBP-OIIL-2017-077128) |

The FOIA request CBP-2017-077128 has had its Tracking Number changed to CBP-OIIL-2017-077128. This is normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it. Additional details for this request are as follows:

- Old Tracking Number: CBP-2017-077128
- New Tracking Number: CBP-OIIL-2017-077128
- Requester Name: Lia Ernst
- Date Submitted: 07/27/2017
- Long Description: Requestor is seeking all Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

1300 Pennsylvania Ave
RRB 7.3D
Washington, DC 20229

Lia Ernst
ACLU Foundation of Vermont
PO Box 277
Montpelier, VT 05601

August 2, 2017

Dear Lia Ernst,

This automated notice acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) received on 07/27/2017.   Please use the following unique FOIA tracking number CBP-OIIL-2017-077128 to track the status of your request.  If you have not already done so, you must create a FOIAonline account at https://foiaonline.regulations.gov.  This is the only method available to check the status of your pending FOIA request.

Provisions of the Act allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations outlined on the DHS website, https://www.federalregister.gov/documents/2016/11/22/2016-28095/freedom-of-information-act-regulations. By submitting your request, you have agreed to pay up to $25.00 in applicable processing fees, if any fees associated with your request exceed this amount, CBP shall contact you; however, the first 100 pages are free.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. Part 5 §5.5(a) of the DHS FOIA regulations, CBP processes FOIA requests according to their order of receipt.  Although CBP's goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances pursuant to 6 C.F.R. Part 5 §5.5(c).

CBP's FOIA Division is working hard to reduce the amount of time necessary to respond to FOIA requests.  Currently, the average time to process a FOIA request related to "travel/border incidents" is a minimum of 3-6 months. We truly appreciate your continued patience.

For additional information please consult CBP FOIA website please click on FOIA Act Resources or visit http://www.cbp.gov/site-policy-notices/foia.

Sincerely,


Jodi Drengson
U.S. Customs and Border Protection

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Wednesday, August 02, 2017 11:50 |
| **To:** | lernst@acluvt.org |
| **Subject:** | CBP-OIIL-2017-077128 - Acknowledgement Letter |
| **Attachments:** | CBP-OIIL-2017-077128 - Acknowledgement Letter.pdf |

Lia Ernst
PO Box 277 Montpelier VT 05601

Dear Lia Ernst:

This automated notice acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) received on 07/27/2017.    Please use the following unique FOIA tracking number CBP-OIIL-2017-077128 to track the status of your request.  If you have not already done so, you must create a FOIAonline account at https://foiaonline.regulations.gov.  This is the only method available to check the status of your pending FOIA request.

Provisions of the Act allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations outlined on the DHS website, https://www.federalregister.gov/documents/2016/11/22/2016-28095/freedom-of-information-act-regulations. By submitting your request, you have agreed to pay up to $25.00 in applicable processing fees, if any fees associated with your request exceed this amount, CBP shall contact you; however, the first 100 pages are free.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. Part 5 § 5.5(a) of the DHS FOIA regulations, CBP processes FOIA requests according to their order of receipt.  Although CBP's goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances pursuant to 6 C.F.R. Part 5 § 5.5(c).

CBP's FOIA Division is working hard to reduce the amount of time necessary to respond to FOIA requests.  Currently, the average time to process a FOIA request related to "travel/border incidents" is a minimum of 3-6 months. We truly appreciate your continued patience.

For additional information please consult CBP FOIA website please click on FOIA Act Resources or visit http://www.cbp.gov/site-policy-notices/foia.

007

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Thursday, August 17, 2017 8:33 |
| **To:** | lernst@acluvt.org |
| **Subject:** | FOIA Request Tracking Number Change for Request CBP-OIIL-2017-077128 (to CBP-2017-077128) |

The FOIA request CBP-OIIL-2017-077128 has had its Tracking Number changed to CBP-2017-077128. This is normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it. Additional details for this request are as follows:

- Old Tracking Number: CBP-OIIL-2017-077128
- New Tracking Number: CBP-2017-077128
- Requester Name: Lia Ernst
- Date Submitted: 07/27/2017
- Long Description: Requestor is seeking all Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

008

**lernst@acluvt.org**

| | |
|---|---|
| **From:** | CBPFOIA@cbp.dhs.gov |
| **Sent:** | Tuesday, September 19, 2017 18:44 |
| **To:** | lernst@acluvt.org |
| **Subject:** | Final Disposition, Request CBP-2017-077128 |

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP) requesting all Records from September 1, 2011, to December 31, 2011, and from January 1, 2015, through March 31, 2015, mentioning, referencing, relating to, or referring to Justicia Migrante, Migrant Justice, Milk with Dignity, the Milk with Dignity campaign, or mentioning, referencing, relating to, or referring to any individuals known or suspected by DHS or its sub-agencies of being affiliated or associated with Justicia Migrante, Migrant Justice, or the Milk with Dignity campaign.

We conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request. We were unable to locate or identify any responsive records, based upon the information you provided in your request.

This completes the CBP response to your request. You may contact a FOIA Public Liaison by sending an email via your FOIAonline account, or call 202-325-0150. Please notate file number CBP-2017-077128 on any future correspondence to CBP related to this request.

If you are not satisfied with the response to this request, you have a right to appeal the final disposition. Should you wish to do so, you must file your appeal within 90 days of the date of this letter following the procedures outlined in the DHS regulations at Title 6 C.F.R. §5.9. Please include as much information as possible to help us understand the grounds for your appeal. You should submit your appeal via FOIAonline by clicking on the "Create Appeal" button that appears when you view your initial request. If you do not have computer access, you may send your appeal and a copy of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 90 K Street, NE, 10th Floor, Washington, DC 20229-1177. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia. Additional information can be found at the following link https://www.cbp.gov/document/guidance/exemption-definitions.

Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. You may contact OGIS as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

009



October 6, 2017


FOIA Appeals
Policy and Litigation Branch
U.S. Customs and Border Protection
90 K Street, NE
10th Floor
Washington, D.C. 20229-1177
*VIA CERTIFIED U.S. MAIL*


Re:   Freedom of Information Act Appeal
      Request CBP-2017-077128
      Migrant Justice, American Civil Liberties Union Foundation of Vermont, Matt Cameron

Dear FOIA Appeals Division of the Policy and Litigation Branch:

Pursuant to 5 U.S.C. § 552(a)(6) and 6 C.F.R. § 5.8(a)(1), this letter appeals the
September 19, 2017, response of U.S. Customs and Border Protection to Freedom of Information
Act ("FOIA") request No. CBP-2017-077128. Copies of the original request and related
correspondence are attached to this letter.

Migrant Justice, the American Civil Liberties Union Foundation of Vermont, and Matt
Cameron (collectively, "Requesters") submitted the original FOIA request on July 17, 2017, via
certified United States mail. *See* Ex. A ("July FOIA Request" or "FOIA Request"). This FOIA
Request sought records pertaining to DHS and its components' immigration enforcement actions
in the state of Vermont including, in summary: (a) records relating to three Migrant Justice
members who had been arrested by or were in the custody of CBP; (b) records from September
1, 2011, through December 31, 2011, and from January 1, 2015, through March 31, 2015,
relating to Migrant Justice or the Milk with Dignity campaign, or individuals known or suspected
by CBP of being affiliated or associated with Migrant Justice or the Milk with Dignity campaign;
and (c) records related to the processing of the FOIA Request. Please see the attached FOIA
Request for a detailed description of the requested records. *See* Ex. A, at pp. 4-5.

On August 2, 2017, Requesters received three emails from CBP. The first confirmed
receipt of the FOIA Request on July 27, 2017, and advised that the FOIA Request had been
assigned Tracking Number CBP-2017-077128. The second stated that CBP had changed the
Tracking Number of the FOIA Request to CBP-OIIL-2017-077128. The third acknowledged

receipt of the FOIA Request and indicated that "the average time to process a FOIA request related to 'travel/border incidents' is a minimum of 3-6 months." *See* Ex. B (August correspondence from CBP). In this message, CBP referred to, but did not expressly invoke, the statutory ten-day extension permitted in "unusual circumstances" by 5 U.S.C. § 552(a)(6)(B). On August 17, 2017, Requesters received an electronic message stating that CBP had changed the Tracking Number of the FOIA Request back to CBP-2017-077128. *See* Ex. B

On September 19, 2017, after more than thirty business days had elapsed, *see* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agencies to respond to FOIA requests and notify requesters whether or not they will comply with the request within 20 business days of receiving the request), § 552(a)(6)(B) (allowing, in "unusual circumstances," agencies to extend the time for making such a determination by up to ten working days), Requesters received a final response from CBP via email stating that CBP had "conducted a comprehensive search of files within the CBP databases for records that would be responsive to your request [and was] unable to locate or identify any responsive records, based upon the information you provided in your request." *See* Ex. C.

I. **CBP Has Failed to Meet Its Burden to Show That It Fully Responded to the Request or Adequately Searched for Responsive Records**

Requesters appeal CBP's response as inadequate because CBP has failed to show that it has fully responded to the FOIA Request or adequately searched for responsive documents. *See* 6 C.F.R. § 5.8(a)(1).

The July FOIA Request contained three separate parts. In its final disposition letter, CBP described the FOIA Request as requesting only records related to Migrant Justice and the Milk with Dignity Campaign and made no mention of the requests for records related to three Migrant Justice members who had been arrested or records related to the processing of the FOIA Request. It thus appears that CBP conducted no search at all for records responsive to items 1 and 3 of the FOIA Request.

CBP also failed to demonstrate that it conducted an adequate search in response to the one item in the FOIA Request to which it did respond. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation and internal quotation marks omitted). "'[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" 21 F. Supp. 3d 60, 70 (D.D.C. 2014) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

CBP did not identify what offices it queried for records, nor did it describe which databases it searched. In the absence of any information about how CBP conducted its search for records, it is impossible for Requesters to assess the adequacy of the search. CBP has not discharged its obligation to "demonstrate beyond material doubt that its search was reasonably

2

calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325. To the extent CBP searched for records responsive to all three parts of the FOIA Request, its search was plainly inadequate as CBP officials arrested or took custody of the three individuals named in part 1 of the FOIA Request and would without doubt possess records related to those arrests and/or custody.

CBP must reevaluate what offices, databases, and files it chose to search, conduct a thorough search within each office, and disclose responsive records it subsequently finds.

**II.    CBP Failed to Respond within the Statutory Time Limits and Failed to Respond to the Request for Expedited Processing**

CBP acknowledged that the agency received the FOIA Request on July 27, 2017. *See* Ex. B. CBP did not respond to the FOIA Request until September 19, 2017, well in excess of the 20 days stipulated by 5 U.S.C. § 552(a)(6)(A)(i) or 10 additional days provided by 5 U.S.C. § 552(a)(6)(B). CBP failed to respond to the FOIA Request within the statutory time limits.

Requesters also sought expedited processing for their FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(E)(i), (v)(II), and 6 C.F.R. § 5.5(e)(1)(i)-(ii), which provide for expedited processing of requests in cases where a compelling need exists. Requesters explained that Requesters Migrant Justice and the American Civil Liberties Union Foundation of Vermont are primarily engaged in disseminating information and that the information was needed because there was an urgency to inform the public about immigration enforcement activity that targeted individuals for their political activity and speech. Additionally, Requester Matt Cameron urgently needs the records to represent Ms. Hernández-Ramos and Mr. Peche-Ventura and fully protect their due process rights in their Immigration Court proceedings.

CBP failed to respond to the request for expedited processing, in violation of 5 U.S.C. § 552(a)(6)(E)(ii) and 6 C.F.R. § 5.5.(e)(4), which required that CBP notify Requesters of its decision whether to grant or deny expedited processing.

**III.   CBP Failed to Respond to the Request for a Fee Wavier**

The FOIA Request also sought a fee waiver and a waiver of processing (search and review) fees on the grounds that disclosure of the records is in the public interest because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the Requesters' commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(iii); 6 C.F.R. § 5.11(d)(1), (k)(1), (k)(2).

Migrant Justice and the American Civil Liberties Union Foundation of Vermont are non-profit entities and have no commercial interest in the records requested, which are crucial to the public's understanding of CBP's operations. Migrant Justice and the American Civil Liberties Union Foundation of Vermont also qualify for a fee waiver as representatives of the news media.

CBP failed to respond to the request for a fee waiver, violating Requesters rights to a fee waiver and CBP's own regulations. *See* 5 U.S.C. § 5523(a)(4)(A)(iii); 6 C.F.R. § 5.11(k).

Requesters respectfully request that CBP conduct an adequate search, disclose all responsive records, and grant their fee waiver in an expeditious manner. In the event that CBP reaches an adverse determination regarding the FOIA Request or this appeal, Requesters request a complete list of documents covered by the FOIA Request and a specific indication of and a justification of any records withheld, the failure to respond to the request for expedited processing, and any denial of the fee waiver.

Requesters expect a response to this appeal within 20 working days, as required by 5 U.S.C. § 552(a)(6)(A)(ii).

Please contact Lia Ernst by email at lernst@acluvt.org on behalf of Requesters if you require any further information or if you have any questions related to this matter.

Sincerely,

Lia Ernst
Staff Attorney
ACLU Foundation of Vermont

4

**Tracking Number:**
70170660000040730955

**Expected Delivery on**

**MONDAY**
**16** OCTOBER
2017
by
**8:00pm**

**Delivered**

October 16, 2017 at 8:01 am
DELIVERED, TO MAIL ROOM
WASHINGTON, DC 20229

---

## Tracking History

## Tracking History

**October 16, 2017, 8:01 am**
Delivered, To Mail Room
WASHINGTON, DC 20229
Your item has been delivered to the mail room at 8:01 am on October 16, 2017 in WASHINGTON, DC 20229.

**October 15, 2017, 12:39 pm**
Business Closed
WASHINGTON, DC 20229

**October 15, 2017, 12:37 pm**
Arrived at Hub
WASHINGTON, DC 20018

**October 13, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20229

**October 12, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20229

**October 11, 2017, 9:08 am**
In Transit to Destination
On its way to WASHINGTON, DC 20229

**October 10, 2017, 10:08 pm**
Departed USPS Regional Origin Facility
BURLINGTON VT DISTRIBUTION CENTER

**October 10, 2017, 9:17 am**
In Transit to Destination
014

Case 2:17-cv-00197-cr Document 11-10 Filed 12/19/17 Page 140 of 140

On its way to WASHINGTON, DC 20229

**October 9, 2017, 9:04 am**
In Transit to Destination
On its way to WASHINGTON, DC 20229

**October 8, 2017, 9:54 am**
In Transit to Destination
On its way to WASHINGTON, DC 20229

**October 6, 2017, 9:49 pm**
Arrived at USPS Regional Origin Facility
BURLINGTON VT DISTRIBUTION CENTER

**October 6, 2017, 6:49 pm**
Departed Post Office
MONTPELIER, VT 05602

**October 6, 2017, 4:22 pm**
USPS in possession of item
MONTPELIER, VT 05602

015